IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHARON L. NUSKEY,<br>2900 Connecticut Avenue, N.W., #126<br>Washington, D.C. 20008,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. LAMBRIGHT,<br>Chairman and President<br>Export-Import Bank of the United States<br>811 Vermont Avenue, N.W.<br>Room 1215<br>Washington, D.C. 20571-0002,<br><br>Defendant. | ) | Civil Action No: 1:06CV01573<br><br>Judge Paul L. Friedman<br><br>Dated: November 15, 2006 |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56(c) and L.Cv.R. 7(b), Plaintiff, Sharon L. Nuskey, by and through her undersigned counsel, hereby files her Memorandum of Points and Authorities in Opposition to the Defendant's Motion for Summary Judgment and Supporting Memorandum filed by Export-Import Bank of the United States ("Ex-Im," "Bank," or "agency"). For the reasons set forth below, the agency's motion should be denied.

## I. BACKGROUND

Plaintiff filed an EEO complaint alleging that she had been subjected to discrimination and harassment on the basis of her sex (female), age (then 45 years old), and reprisal (for both opposing unlawful discrimination and for engaging in prior protected EEO activity) with regard to various actions by her first-level supervisor, Mr. Craig O'Connor (Director, Southeast and

Central Europe Business Development), and second-level supervisor, Mr. Michael Forgione (International Business Development Vice President), which resulted in her removal from the agency on May 20, 2005. See Pl. Complaint at ¶¶ 5-6, 8. By letter dated April 10, 2006, Plaintiff submitted a request to the agency's EEO office for a final agency decision ("FAD") on her EEO complaint. See id. at ¶ 12. The agency thereafter issued a FAD, dated Wednesday, June 7, 2006. See Def. Motion, Ex. B to Dec. of Demetrice Bess (a copy of the FAD).

On that same day, Wednesday, June 7, 2006, the agency mailed a copy of the FAD via certified mail to Plaintiff's residence, a unit in a rental apartment building located at 2900 Connecticut Avenue, N.W., Apt. 216, Washington, D.C. 20008. See Pl. Opp. Ex. 1, a copy of the front of the original envelope[1] mailed to Plaintiff enclosing the FAD, which is postmarked on June 7, 2006. Although not specified by the agency in its motion, the article of certified mail was sent to Plaintiff's apartment building residence with a return receipt (or a "green card"), for the purpose of it being completed by the recipient and then returned to the agency by the U.S. Postal Service to show the date and to whom the certified mailing of the FAD was delivered. See Ex. A to Bess Declaration, a copy of the Return Receipt for Certified Mail showing payment of "Return Receipt Showing to Whom & Date Delivered"; see also Pl. Opp. Ex. 2, a copy of the back of the envelope enclosing the FAD, which shows that "Return Receipt for Merchandise" was selected by the agency.

[1] For the purposes of electronic case filing, a copy of the original size of the envelope was condensed to fit within an 8" x 11" inch page as an exhibit to this Opposition Memorandum.

## II. STATEMENT OF MATERIAL FACTS IN DISPUTE

The agency contends that the FAD was received by Plaintiff or by "someone at her residence" on Friday, June 9, 2006. See Def. Motion at 1. In support of this contention, the agency included with its motion a copy of a "Track and Confirm" printout from the U.S. Postal Service's web site, which includes the envelope's "Label/Receipt Number" and states that it was "delivered" (without specifying to whom or to what street address) at 4:05 p.m. on Friday, June 9, 2006. However, as described infra, this critical fact is disputed by Plaintiff since she contends that she did not personally receive the FAD until Monday, June 12, 2006. See Pl. Complaint at ¶ 13 ("On June 12, 2006, Plaintiff received a copy of the FAD"); Pl. Opp. Ex. 3, Declaration of Sharon L. Nuskey, at ¶ 3.

On Thursday, June 8, 2006, Plaintiff left her residence at approximately 8:00 a.m. to go to work. That evening, Plaintiff left work and directly (without returning to her apartment) traveled to the home of her sister and brother-in-law, Dawn and James Steinbauer, in Leesburg, Virginia. On the next morning, Friday, June 9, 2006, the three of them drove together to Montauk, New York. Plaintiff stayed at the "Driftwood on the Ocean" Hotel for two nights – Friday, June 9th and Saturday, June 10th – while attending a wedding and related activities. See Nuskey Dec. at ¶ 1; see also Pl. Opp. Ex. 4, a copy of the cashed check for the hotel stay.

Plaintiff checked-out of the hotel on Sunday morning, June 11th, and returned to her apartment in Washington, D.C. at approximately 8:00 p.m. on that same evening. She went to the general mail room in the lobby of her apartment building that evening to retrieve any mail that may have been delivered when she had been out of state because it is her general practice to check and/or retrieve mail sent to her residence on a daily basis, and this was only the second

weekend that she had traveled out of town in the past year. See Nuskey Dec. at ¶ 2. On the evening of Sunday, June 11, 2006, Plaintiff retrieved the mail in her individual mailbox. There was no certified mail enclosing the FAD from the agency with her mail. There was no notice left in her box that any certified mail had been sent to her or that any other packages had been held for her. Plaintiff did not see that any certified mail that was addressed to her was left for her to retrieve anywhere else in the general mail room. Because of this, Plaintiff had no knowledge of the existence of the FAD or that any certified mail had been sent to her by the agency which enclosed the FAD. Id.

Plaintiff went to work on the morning of Monday, June 12, 2006, and accessed the general mail room in the lobby of her apartment building when she returned from work later that evening. At that time, she saw and retrieved a large manila envelope from the Export-Import Bank that was addressed to her, which was lying on a table in the mail room. This was the first time that Plaintiff saw the certified mail envelope or was otherwise aware of its existence. Id. at 3.

The envelope indicated that it was sent via the U.S. Postal Service by certified mail, but did not include a delivery date, time or signature. There was no indication that anyone had "accepted the delivery" of the certified mail envelope. Furthermore, the Domestic Return Receipt (green card) postcard that was addressed to Plaintiff remained attached to the envelope, without being signed or dated by anyone. The other side of the attached postcard had a stamped return address for the agency.[2] See id. at ¶ 4; see also Pl. Opp. Exhibit 2, a copy of the back of

---

[2] Although visible upon inspection, Plaintiff was unable to make a copy of the other side of the postcard (the return address side) to include with this Opposition Memorandum because the postcard is still attached to the envelope and she did not want to tamper with the evidence. If

the certified mail envelope. No directions were left with the envelope instructing Plaintiff to complete and mail the "green card" to the agency or to otherwise return it to the U.S. Postal Service and, therefore, she did not complete and send in the card on her own. See Nuskey Dec. at ¶ 4.

Plaintiff has not given her apartment building management or anyone else authorization to sign for or receive packages that are sent to her, including articles of U.S. Postal Service certified mail. Plaintiff has a co-tenant on the lease for her unit, but neither she nor any other person other than Plaintiff has lived in the apartment unit from the spring 2005 to the present. Moreover, no one was in Plaintiff's apartment unit between Thursday, June 8th and Sunday, June 11th, the time frame that the agency purports that the FAD was "accepted by Plaintiff or by someone else at her residence." The agency did not provide Plaintiff or her counsel advance notice of when the FAD would be sent to her and, therefore, she had no expectation that the FAD would arrive at her residence while she was out of state for the long weekend. See Nuskey Dec. at ¶ 5.

On the evening of Monday, June 12, 2006, Plaintiff called her counsel and left a voice mail message stating that she received the FAD that same evening. Plaintiff confirmed this fact during a subsequent teleconference call with her counsel on the following day. See id. at ¶ 6; see also Pl. Opp. Exhibit 5, Declaration of Lisa A. Bernstein, at ¶ 2. Because Plaintiff's counsel did not receive her own copy of the FAD from the agency, she contacted the agency's EEO office and requested that a copy of the FAD be sent to her law firm, which was accomplished by

---

the Court should want to inspect the original envelope, Plaintiff can make it available upon request.

facsimile on Wednesday, June 20, 2006. See Bernstein Dec. at ¶ 3.

Based on 42 U.S.C. § 2000e-16(c)(1), 29 C.F.R. § 1614.407(a), and the date of Plaintiff's receipt of the FAD on Monday, June 12, 2006, she calculated the 90th calendar day to file her civil Complaint to be on September 10, 2006. Since that day was a Sunday, the deadline to file the civil Complaint fell on the following business day, Monday, September 11, 2006. See Bernstein Dec. at ¶ 4; see also Milam v. U.S. Postal Service, 674 F.2d 860, 862 (11th Cir. 1982) ("[I]ntent of Congress in passing Section 2000e-16(c) was to adopt the provisions of Rule 6(a) allowing a party to file suit on the day following the weekend or holiday if a time period for filing ends on a weekend or holiday."). On Friday, September 8, 2006, Plaintiff filed her civil Complaint in this Court, which was 87 calendar days after she received the FAD. See Pl. Complaint.

Plaintiff was not aware of any issue regarding when the FAD was allegedly "received" by her or the timeliness of the filing of her civil Complaint until after she received and reviewed the agency's Answer and Motion for Summary Judgment on Monday, November 6, 2006. At all pertinent times, Plaintiff has contended and continues to contend that it was her intent to abide by the applicable law and that she has timely filed her civil Complaint in this Court. Plaintiff does not know for a fact whether the FAD arrived at her apartment building on June 9, 2006 as the agency contends in its Motion. However, she can unequivocally state that she did not personally receive it until Monday, June 12, 2006. Also, there was no evidence on the FAD envelope that anyone signed for receipt of the FAD on an earlier date, and she has not authorized anyone to accept certified mail on her behalf. See Bernstein Dec. at ¶ 5; Nuskey Dec. at ¶ 7.

## III. ARGUMENT

The United States Supreme Court has held that summary judgment is appropriate only where a court determines that, given the substantive legal and evidentiary standards that apply to the case, there exists no genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, a court's function is not to weigh the evidence, but rather, is to determine whether there are genuine issues for trial. See id. at 249. The evidence of the non-moving party must be believed at the summary judgment stage and all justifiable inferences must be drawn in the non-moving party's favor. See id. at 255. An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). The non-moving party's opposition must consist of more than mere unsupported allegations or denials, and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Celotex Corp., 477 U.S. at 323. The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. See Laningham, 813 F.2d at 1242.

A defendant may raise the affirmative defense of statute of limitations via a dispositive motion when the facts that give rise to the defense are clear from the face of the complaint. Smith-Haynie v. District of Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998). Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint. Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996). Rather, the court should

grant a motion to dismiss only if the complaint on its face is conclusively time-barred. Id.; Doe v. Dep't of Justice, 753 F.2d 1092, 1115 (D.C. Cir. 1985). If "no reasonable person could disagree on the date" on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds. Smith v. Brown & Williamson Tobacco Corp., 3 F.Supp.2d 1473, 1475 (D.D.C. 1998) (citing Kuwait Airways Corp. v. Am. Sec. Bank, N.A., 890 F.2d 456, 463 n. 11 (D.C. Cir. 1989).

In this case, the Defendant's Motion should be denied because there is a question of fact regarding when Plaintiff actually received the FAD.

A. Defendant's Motion Should Be Denied Because There is a Question of Fact as to When Plaintiff Received the Final Agency Decision, and She Filed Her Civil Complaint Less Than 90 Days After Her Actual Receipt of the FAD.

Under Title VII, a plaintiff must file a civil complaint within 90 days of receipt of notice of a final administrative action. See 42 U.S.C. § 2000e-16(c)(1); Mondy v. Sec'y of the Army, 845 F.2d 1051 (D.C. Cir. 1998). The District of Columbia and other federal courts have applied the same limitations period to the ADEA even though the statute "makes no mention of a limitations period" for filing a civil complaint. See Price v. Greenspan, 374 F.Supp.2d 177, 185 (D.D.C. 2005); Tyler v. Henderson, No. 00-0060, 2001 WL 194930 (D.D.C. 2001), aff'd by order 21 Fed.Appx. 4 (D.C. Cir. 2001) (applying 90-day limitation period to ADEA claims); Simpkins v. Wash. Metro. Area Transit Auth., 2 F.Supp.2d 52, 53-54, n. 2 (D.D.C. 1998) (applying 90-day limitation period to ADEA and Rehabilitation Act claims); see also 29 C.F.R. 1614.407(a) (stating that a civil action under Title VII and the ADEA must be filed within "90 days of receipt of the final action on an individual or class complaint if no appeal has been filed").

Plaintiff disputes the agency's calculation of the conclusion of the limitations period for the filing of her civil Complaint. Plaintiff contends that she timely filed the Complaint on Friday, September 8, 2006, which was 87 calendar days from the date of her actual receipt of the FAD on Monday, June 12, 2006. As stated supra, Plaintiff did not receive the FAD until she first saw it in her apartment building's general mail room on Monday, June 12, 2006, after she returned from brief out of state travel and did not see it in her apartment building's mail room on Sunday, June 11, 2006. There is no indication that anyone from her residence "received" the FAD on her behalf on an earlier date since there were no markings on the envelope, the return receipt green card was still attached to the envelope after it was delivered, there was no other information provided to her that it had been signed for by anyone else on her behalf on an earlier day, and she did not give permission to anyone to receive certified mail on her behalf. If in fact the FAD was "delivered" as Defendant contends, this apparently is a result of an error by the U.S. Postal Office, which did not obtain the completed green return receipt card, did not leave any instructions for Plaintiff on completing and returning the green card on her own, and did not alternatively leave a notice of attempted delivery with Plaintiff so that she could retrieve the item when she returned from out of state travel. See, e.g. Pl. Opp. Ex. 6, a copy of PS Form 3849, U.S. Postal Service Delivery Notice/Reminder/Receipt for certified or other mail. The fact that the "green card" was left attached to the envelope when Ms. Nuskey receive it is a strong indicator that the U.S. Post Office did not consider the FAD as being accepted by Ms. Nuskey or someone else on her behalf since the package was not "signed for."[3] Consequently, the agency

---

[3] Moreover, if Ms. Nuskey had signed the "green card" and returned it in the mail on Monday, June 12, 2006 when she received the FAD, the Court would have to determine which piece of evidence was more accurate – the Postal Service Internet record or the actual "green

has not produced sufficient evidence to show that Plaintiff or anyone else at her residence "received" the FAD on her behalf before Monday, June 12, 2006, which was the date in which she was in actual receipt of it. Based upon this evidence, Plaintiff contends that her Civil Complaint was in fact timely filed.

The evidence produced by the agency to show when the FAD was purportedly "received by Plaintiff or by someone else at her residence" is not reliable and does not prove the date of her actual receipt of the FAD. The U.S. Postal Service delivery confirmation Internet print-out that was produced by the agency with its motion does not specify whom "received" the FAD or identify the specific location where delivery of the FAD was made, and the agency has not produced this evidence with its motion. Furthermore, even though the agency paid for a return receipt of the green card to provide proof of delivery, see Ex. A to Bess Declaration and Pl. Opp. Ex. 2, presumably so that both parties would agree on the date the FAD was actually received and by who, the return receipt green card was not signed and dated by anyone; indeed, the certified mail envelope enclosing the FAD still had this green card return to receipt attached to the envelope when Plaintiff received the FAD, and still does up to the present time.

Moreover, there is no contemporaneous evidence that the agency made any attempt on its own to confirm delivery of the FAD or to confirm when Plaintiff actually received the FAD. The only evidence that the agency checked-on the service of the FAD is the printout of the U.S. Postal Service "Track and Confirm" report included as an exhibit to the agency's motion. The

---

card." Because the cases suggest that the signed "green card" is controlling, Plaintiff should be given the benefit of the doubt in this case, since she has submitted sworn testimony that she received the FAD on Monday, June 12, 2006, and not on Friday, June 9, 2006 as the Postal Service entry shows.

report shows that it was accessed on the Internet by the agency on "11/6/06," almost five months after the date the FAD was mailed to Plaintiff, and one day before the motion for summary judgment was filed. See Ex. C to Bess Dec. Thus, the agency has not produced sufficient evidence to show that Plaintiff or any person acting on her behalf was in actual receipt of the FAD before Monday, June 12, 2006 to begin the running the limitations period to file her civil complaint. See Threadgill v. Moore U.S.A., Inc., 269 F.3d 848 (7th Cir. 2001), cert. denied, 535 U.S. 970 (2002) ("Two types of receipt of a right-to-sue notice can start running the 90-day limitation period, and each does so equally well; actual receipt by the plaintiff, and actual receipt by the plaintiff's attorney as such receipt constitutes constructive receipt by the plaintiff.").

This evidence relied upon as dispositive by the agency to prove the date when Plaintiff received the FAD is inconsistent with many of the prior decisions of this Court, which are cited by the agency in its motion with regard to showing when a plaintiff is untimely with filing an civil Complaint. In those cases, the defendant proved the date of plaintiff's and/or counsel's receipt of the final administrative action by producing a copy of something more than a vague and incomplete postal tracking report. Instead, a postal receipt signed and dated by plaintiff and/or his or her counsel was produced to confirm that the final order was received, the date when it was received, and that a particular person received it, a piece of evidence that is conspicuously absent in the instant case.

For example, in Smith v. Dalton, 971 F.Supp. 1 (D.D.C. 1997), the EEOC informed the employee of his right to file a civil action within 90 days of receipt of its final decision on his appeal of the agency's FAD. Plaintiff received the EEOC's final decision by certified mail, which was signed for on May 29, 1996. He filed his civil complaint on August 28, 1996, which

was 91 days after he received the EEOC's final decision. Smith, 971 F.Supp. at 2. The defendant filed its summary judgment motion on the basis of untimeliness and other grounds. In considering the agency's motion, the court noted that it was undisputed that the EEOC issued its final decision on May 23, 1996 and that plaintiff received notice of the decision on May 29, 1996, which is presumably because the notice was signed for by the plaintiff. The decision did not note that the Plaintiff disputed the date of his receipt of the FAD, but did state that he opposed the agency's motion on the ground that the date of the summons (August 27, 2006) and not the date of the complaint and filing fee receipt (date stamped by the court August 28, 2006, and docketed by the court on the same day) controlled when the complaint was filed in district court. This argument was rejected by the court based on concrete evidence showing the contrary. Id. at 2-3.

In Jackson v. Snow, No. 05-1266, 2006 WL 212136 (D.D.C. 2006), after the EEOC granted the agency's motion for summary judgment, the Department of the Treasury issued a Final Order on March 19, 2005 stating that the agency intended to implement the administrative decision and sent copies of the Order along with Notice of Appeal Rights to the employee and her attorney, by certified first-class mail. The Notice of Appeal Rights instructed the employee that she could file a civil action within 90 days of receiving the final order and, that if she was represented by an attorney, the time period began when the attorney received notice. Jackson, No. 05-1266, 2006 WL 212136, *1. The agency produced signed certified mail receipts to the court, which indicated that the employee's attorney received a copy of the Final Order on March 24, 2005, and that the employee received his copy on April 20, 2005. The employee did not file her civil complaint until June 23, 2005, which was 91 days after her attorney received the notice.

Id. at *2. The decision does not indicate that the employee or his counsel disputed the evidence provided by the agency regarding their dates of receipt of the FAD and, therefore, the court did not review that issue. The plaintiff instead argued that the limitations period should have been tolled based upon the date of the plaintiff's receipt of the FAD, rather than when her counsel received FAD, which was rejected by the court based on legal precedent. Id. at *3-*4.

In Colbert v. Potter, No. 04-996, 2005 WL 3273571 (D.D.C. 2005), the agency (the U.S. Postal Service) issued a FAD in March 2004, and notified the employee of her right to seek judicial review in federal district court. The employee then filed her civil complaint on June 18, 2004, and the agency filed a motion to dismiss the case because it contended that the complaint was filed 92 days after her attorney received the FAD. Colbert, No. 04-996, 2005 WL 3273571, *2-*3. Although the FAD was undated, the defendant produced a copy of a "U.S. Postal Service Certified Mail Receipt" to the court bearing a handwritten date of "3/8/04" with a tracking number "7099 3400 0009 5118 7201," which corresponded to the tracking number listed for the decision and notice sent to the employee's counsel. On the return receipt postcard, the name and signature of the employee's counsel clearly appeared above a postmark of "Mar 18 2004," and the attorney did not dispute that the return receipt card bore his signature and did not challenge the legitimacy of the postmark on the card. Id. at *4.

In Tyler v. Henderson, No. 00-0060, 2001 WL 194930 (D.D.C. 2001), aff'd 21 Fed.Appx. 4 (D.C. Cir. 2001), the EEOC granted summary judgment to the defendant on May 27, 1998, and on July 16, 1998, the Postal Service issued a FAD finding no discrimination. This decision was affirmed by the EEOC's Office of Federal Operations on September 17, 1999, at which point the employee was advised of his right to seek review in federal district court within

90 calendar days of receiving the notice. Tyler, No. 00-0060, 2001 WL 194930, *2. The employee acknowledged receipt of the notice on October 8, 1999, which the agency proved by producing a copy of the return receipt to the court, which had been affixed to the FAD that was mailed to the employee. The return receipt bore the plaintiff's signature and reflected a specific delivery date on which he received it. Id. at *2, *5. The 90 day limitations period ended on Thursday, January 6, 2000, and the employee filed his action in federal district court four days later on January 10, 2000. Id. at *2. The agency moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) because, inter alia, it was untimely filed based on the date of the employee's receipt of the notice. The court granted the agency's motion in part because the employee did not rebut the evidence showing when he received the FAD. He merely reiterated that the complaint was timely filed, and failed to challenge the date of receipt of the notice, the authenticity of his signature, if he acknowledged receipt of any package other than the notice, or that the FAD was received on any day other than October 8, 1999. Id. at *5.

In the instant case, the agency has not produced reliable evidence to prove when Plaintiff received the FAD. In contrast to the evidence provided by the agency in this case, Plaintiff has produced a sworn declaration and other corroborating evidence to show that she received the FAD on the evening of Monday, June 12, 2006, and called her counsel on that same evening to provide notice of her receipt of the FAD. Moreover, there is no other information that the FAD was received by anyone else on her behalf before that day. Accordingly, the agency cannot prove that Plaintiff received the FAD before Monday, June 12, 2006.

But, even accepting the agency's position as true, the instant case is much more analogous to Powell v. Washington Metropolitan Area Transit Authority, 238 F.Supp.2d 160,

163, n.4 (D.D.C. 2002), in which this Court denied, in part, the defendant's motion for summary judgment[4] brought on the basis of untimeliness. In that case, the Court's decision was based on the fact no proof existed as to when the plaintiff received the FAD, and therefore the Court allowed the 90 day limitations period to run from three days after the FAD was mailed to her.

More specifically, in the Powell case, the employee filed her first EEO complaint with the EEOC on April 8, 1997, and the EEOC thereafter issued a notice of right to sue letter, dated November 2, 1999. She then filed a civil suit in this Court on January 13, 2000. On February 2, 2000, the plaintiff amended her complaint to include separate allegations from a second EEOC complaint that she had filed with the EEOC on July 21, 1999. The plaintiff filed a motion to dismiss without prejudice all claims that were based solely on her first EEO complaint because she acknowledged that the required 180-day waiting period for filing suit had not been satisfied. Powell, 238 F.Supp.2d at 162. However, she sought to keep intact in her civil complaint the claims that she had filed in her second EEO complaint because they were timely. Id. at 164. In its motion, the defendant contended the plaintiff's claims based on her second EEO complaint were untimely because she filed suit 92 days after the EEOC issued its notice of right to sue. The Court disagreed and stated that the 90-day limitations period began to run only upon a plaintiff's receipt of a right-to-sue notice, not upon the issuance of the notice. The notice was sent to plaintiff via regular U.S. mail without a request for confirmation of delivery, and there was no evidence of the actual date of her receipt of the EEOC's right to sue notice. Consequently, the Court applied the presumption that the plaintiff received the notice three days

[4] The other part of the defendant's motion in that case, which was granted, was brought on the merits of the plaintiff's EEO complaint.

after it was issued by the EEOC. Id. at n. 4 citing Baldwin County Welcome Center v. Brown, 466 U.S. 147, 148, n. 1 (1984) (presumed date of receipt of notice is three days after issuance by EEOC) and Fed.R.Civ.P. 6(e) (adding three days to any prescribed period for action following notice by mail). The Court applied the three day presumption and determined that the plaintiff's filing fell within the 90-day period for filing suit by amending her civil complaint on February 2, 2000. Id.

Applying this precedent in this Court supports the conclusion in that Plaintiff's Complaint would be timely if it is determined that there is insufficient evidence to show when she was in actual receipt of the FAD.

B. Plaintiff's Complaint Should Alternatively Be Deemed Timely Because it Was Filed Within 90 Days of Her Presumed Date of Receipt of the Final Agency Decision.

Even if, despite the evidence produced by Plaintiff with this Opposition Motion, the Court concludes that the facts are in dispute as to when Plaintiff received the FAD so as to begin the running of the limitations period for filing her civil Complaint, this question may be resolved with a legal presumption. Moreover, applying this presumption will result in the conclusion that the Complaint was timely filed.

The Supreme Court and the District of Columbia have held that where there is no evidence of the actual date of receipt of a final action or order, the court is to assume that a plaintiff received the notice three days after it was issued. Baldwin County Welcome Center v. Brown, 466 U.S. 147, 148, n. 1 (1984) (presumed date of receipt of notice is three days after issuance by EEOC); see also El v. Belden, 360 F.Supp.2d 90, 93 n.1 (D.D.C. 2004) ("Courts presume that the [EEOC] notice to sue letter was received three days after mailing."); Powell v.

Washington Metropolitan Area Transit Authority, 238 F.Supp.2d 160, 163, n.4 (D.D.C. 2002) (where a EEOC notice of right to sue was sent to plaintiff via regular U.S. mail without a request for confirmation of delivery, and there was no evidence of the actual date of receipt of the notice, the Court assumed that plaintiff received the notice three days after it was issued by the EEOC); Sherlock v. Montefiore Medical Center, 84 F.3d 522, 525-26 (2nd Cir. 1996) (In the absence of contrary evidence, there is a presumption that the plaintiff received an EEOC right to sue letter three days after it was mailed, and that the date of the letter is the date of mailing.); see also Fed.R.Civ.P. 6(e) (adding three days to any prescribed period for action following notice by mail).

In this case, Plaintiff contends that her civil Complaint was timely in light of this precedent of allowing three days to be added after the date of service of the FAD. The FAD is dated Wednesday, June 7, 2006 and the agency contends that it was mailed on that same day. Absent any clear evidence on when Plaintiff was in receipt of the FAD, it should be presumed that it was received three days after it was issued, i.e., on Saturday, June 10, 2006. Ninety days after Saturday, June 10, 2006 was Friday, September 8, 2006, which was the same day that Plaintiff's civil Complaint was filed with this Court.

Therefore, on this alternative basis, Plaintiff's Complaint should be deemed to have been timely filed.

C. Alternatively, the Limitations Filing Period Should Be Equitably Tolled and Plaintiff's Complaint Should Be Deemed Timely Filed Based on the Extenuating Circumstances in Her Case.

The requirement of filing a timely EEO suit is like a statute of limitations that is "subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385,

392 (1982); Mondy v. Sec'y of the Army, 845 F.2d 1051, 1057 (D.C. Cir.1998). Courts typically allow equitable tolling when "a claimant has received inadequate notice, where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, where the court has led the plaintiff to believe that she had done everything required of her, or where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction." Wiley v. Johnson, 436 F.Supp.2d 91, 96 (D.D.C. 2006) (internal punctuation omitted). In particular, when an agency fails to afford proper notice of final agency action dismissing a Title VII complaint, "an employee can bring an action in district court within a reasonable time." See, e.g. Williams v. Hidalgo, 663 F.2d 183, 188 (D.C. Cir. 1980) (agency only issued notice of proposed disposition to the plaintiff and did not issue FAD). The plaintiff has "the burden of pleading and proving in the district court any equitable reasons for his failure to meet the [timely filing] requirement." Saltz v. Lehman, 672 F.2d 207, 209 (D.C. Cir. 1982).

As described in detail supra, Plaintiff did not receive notice of the FAD until she returned from brief out of state travel and retrieved it, green card still attached, from the general mail room in her apartment building on the evening of Monday, June 12, 2006. It was not in that mail room on the evening prior when she picked-up her mail on the same evening that she returned from her trip. Without having known about the FAD prior to that time or that it was purportedly "delivered" to her apartment building, she could not have determined that the limitations period began for the filing of a civil Complaint in federal court earlier than when she actually received the FAD on Monday, June 12, 2006. As soon as Plaintiff received the FAD, she notified her counsel and they determined that the deadline to file her civil Complaint was Monday,

September 11, 2006. And, although the green card was not returned to the agency due to an error by the U.S. Postal Service, there is no evidence that the agency made any attempt to confirm the delivery of the FAD and Plaintiff's receipt of it until one day before its Motion was filed. As such, if Plaintiff's civil Complaint is deemed to be untimely filed, it is only due to the fact that she received inadequate timely notice of the FAD and due to the mishandling of the mail by the Postal Service, which are circumstances beyond her control. To determine otherwise would be severely prejudicial to Plaintiff and would be an unjust ground to dismiss her Complaint.

Although the Court has "generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights," Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990), this is not the case with Plaintiff. As demonstrated by the facts set forth above, Plaintiff was diligent once she received actual notice of the FAD. This has been her pattern of conduct throughout the EEO proceedings, as she has been conscientious of all of the prior deadlines during the administrative processing of her EEO complaint, and the agency has not had cause to raise any objections as to timeliness during that stage of the proceedings. Plaintiff also fully cooperated during the during the administrative processing and completed all requirements that were imposed on her by the agency.[5] See

---

[5] Cf. DePippo v. Chertoff, No. 05-0681, ___ F.Supp.2d ___, 2006 WL 2686758, *4 (D.D.C. Sept. 20, 2006) (plaintiff's assertion that the deadline for filing his civil complaint should be tolled due his diligence was unsupported because he had a history of untimeliness, including the EEOC's dismissal of six of twelve of the charges in the original EEO charge for untimeliness; his motion to preserve the claims dismissed by the EEOC was eleven days late; and he filed his opposition to the defendant's motion to dismiss one day after the deadline requested by the plaintiff himself and after the court had already granted numerous extensions of time).

Bernstein Dec. at ¶ 6; Nuskey Dec. at ¶ 8. Moreover, Plaintiff's diligence since the issuance of the FAD is also evident and does not support a conclusion that she was dilatory regarding the filing of her civil Complaint. For example, after Plaintiff received the FAD, she immediately notified her counsel of this fact on Monday, June 12, 2006. In the interim and before preparing and filing her civil Complaint, Plaintiff actively pursued her EEO complaint when she attempted for a second time to negotiate settlement with the agency prior to preparing and filing the civil Complaint. Since, despite her best efforts, Plaintiff has not been able to obtain full-time, non-intermittent permanent employment since her termination from the agency, she also had to garner sufficient resources for this litigation prior to the filing of her civil Complaint. See Nuskey Dec. at ¶ 9; Bernstein Dec. at ¶ 6.

In summary, Plaintiff is not like the plaintiff in DePippo, who exhibited a pattern of untimeliness thereby justifying the court's decision not to toll the filing deadline. To the contrary, in Plaintiff's situation, equitable tolling would permit an unjust result.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion for Summary Judgment be denied in its entirety.

Respectfully submitted

/s/Diana J. Veilleux
D.C. Bar No. 418292
Dveilleux@shawbransford.com
/s/Lisa A. Bernstein
D.C. Bar No. 466215
lbernstein@shawbransford.com
Shaw, Bransford, Veilleux & Roth, P.C.
1100 Connecticut Avenue, N.W., Suite 900
Washington, D.C. 20036
Telephone: (202) 463-8400
Facsimile: (202) 833-8082

Counsel for Plaintiff