IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHARON L. NUSKEY,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. LAMBRIGHT,<br>CHAIRMAN AND PRESIDENT,<br>EXPORT-IMPORT BANK OF<br>THE UNITED STATES,<br><br>Defendant. | Civil Action No: 1:06CV01573<br><br>Judge Paul L. Friedman<br><br>Dated: June 15, 2007 |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE DEFENDANT'S MOTION TO REVISE THE DECISION DENYING ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Civil Rule 7(b), Plaintiff, Sharon L. Nuskey, by and through her undersigned counsel, hereby files her Memorandum of Points and Authorities in Opposition to the Motion to Revise the Decision Denying its Motion for Summary Judgment and Supporting Memorandum filed by Export-Import Bank of the United States ("Ex-Im," "Bank," or "agency"). For the reasons set forth below, and which were previously raised with the Court[1], the Defendant's motion should be denied and the Court should reaffirm its May 30, 2007 decision denying summary judgment to Defendant.

[1] In opposition to Defendant's pending Motion to Revise Decision, Plaintiff also hereby incorporates the arguments, exhibits and other evidence that she previously presented in her Memorandum of Points and Authorities in Opposition to the Defendant's Motion for Summary Judgment and Supporting Memorandum that was filed with this Court on November 15, 2007.

## I. STANDARD OF REVIEW

The Bank has filed its Motion to Revise Decision pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. A Rule 54(b) motion may only be granted "when the Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, [or] has made an error not of reasoning but of apprehension." Singh v. George Washington Univ., 383 F.Supp.2d 99, 101 (D.D.C. 2005) (internal quotation marks and citation omitted). "Errors of apprehension may include [the] Court's failure to consider controlling decisions or data that might reasonably be expected to alter the conclusion reached by the [C]ourt." Id. (internal quotation marks and citation omitted).

In order to demonstrate clear error, the party moving for reconsideration must do more than simply restate its prior arguments, and any arguments which the party inadvertently failed to raise earlier are deemed waived. Mateo v. M/S Kiso, 805 F.Supp. 761, 787 (N.D.Cal. 1991). A motion for reconsideration is not an opportunity for a party to improve upon its arguments or try out new arguments; nor is it properly a forum for a party to vent his dissatisfaction with the court's reasoning. The court should assume that in nearly every case at least one party will deem a decision to be based on flawed reasoning. However, for a court to reconsider a judgment, "there must be a reason why the court should reconsider its prior decision, and [the moving party] must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D.Fla. 1994).

Furthermore, the court's discretion to modify or reconsider its order under Rule 54(b) is "limited by the law of the case doctrine and subject to the caveat that, where litigants have once

battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Judicial Watch v. Dep't of Army, 466 F.Supp.2d 112, 123 (D.D.C. 2006) (internal quotation marks and citation omitted). "[L]aw of the case ... [a]s most commonly defined ... posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 619 (1983).

## II. ARGUMENT

The Bank's 54(b) motion should be denied because it fails to meet the required legal threshold set forth above. As described further below, Defendant has merely recycled the same arguments and the same scenarios on the issue of timeliness that were already raised before in its earlier motion and which were dismissed when the court issued its Memorandum Opinion and Order, but now they are being presented in a different package. Defendant has not proved that the Court either "patently misunderstood" one of the parties in this case, has made a decision "outside the adversarial issues presented" to the court by the parties, or has made an "error not of reasoning but of apprehension." Moreover, Defendant's motion has not set forth any "new facts or law of a strongly convincing nature" in order to justify altering the May 30, 2007 Memorandum Opinion and Order. Defendant's motion is instead more or less an airing of Defendant's dissatisfaction with the decision being issued in Plaintiff's favor, and with the fact that the case will now proceed through litigation on its strong merits.

Moreover, contrary to Defendant's assertions, the denial of summary judgment was proper in this case because there was a genuine issue of material fact among the parties as to the date when Plaintiff received the FAD, and that is precisely why the Court applied the three day

mailing rule in Fed.R.Civ.P. 6(e). The recent decision of Scott v. Harris, --- U.S. ---, 127 S. Ct. 1769, 1776 (2007) does not affect the court's ruling in this case, as Defendant claims. In that case, the Supreme Court stated that for purposes of considering summary judgment, a "[c]ourt should not adopt [a] version of the facts" that "is blatantly contradicted by the record." Id. This is not so in this case. As described below, the USPS "Track and Confirm" report does not contradict the other evidence that Plaintiff has submitted showing the date that she first received the final agency decision ("FAD") in this case and, therefore, Defendant's argument to the contrary fails.

A. The Controlling Date For the Start of the Limitations Period Runs From Plaintiff's Receipt of the FAD and Not From the Date of Delivery of the FAD.

A review of Defendant's motion makes it clear that it disagrees with the Court's interpretation of the unambiguous legal authority that the date of Plaintiff's receipt of the FAD, and not the date of the U.S. Postal Service's "delivery" of the FAD, controls when the statute of limitations began to run for Plaintiff to file her civil Complaint. As a result, Defendant has rehashed its same argument that her civil Complaint was untimely filed since the USPS "Track and Confirm" report shows that the FAD was "delivered" to her residence on Friday, June 9, 2007. See, e.g. Def. Motion at 1 (stating that "The Court's opinion denying summary judgment errs by rejecting Defendant's fully admissible, competent, and completely uncontested evidence of the date of delivery."). Putting aside the fact that the Postal Service's "Track and Confirm" report is an unreliable and untrustworthy piece of information (which is addressed supra), Defendant's apparent benchmark on when it believes the statute of limitations begins to run is a misapplication of the explicit controlling legal authority on this issue. As the Court's Memorandum Opinion and Order correctly noted, the applicable law in this matter in no

unequivocal terms states:

> [a]n employment discrimination action against the federal government may only be filed after the complainant has exhausted administrative remedies. Furthermore, under Title VII's time limitations, the complainant must file the civil action within 90 days of receipt of notice of the final agency action on his or her administrative complaint. 42 U.S.C. § 2000e-16(c) provides: "Within 90 days of receipt of notice of final action taken by a[n] . . . agency . . . an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action . . . ." 42 U.S.C § 2000e-16(c). The 90-day time limit is not jurisdictional, but is akin to an affirmative statute of limitations defense. See Colbert v. Potter, 471 F.3d 158, 165 (D.C. Cir. 2006).

May 30, 2007 Mem. Op. and Order at 1 (emphasis added); see also Pl. Opp. to Def. Motion for Summary Judgment at p. 8. Thus, it is clear that the controlling date for when the statute of limitations begins to run is from the date of "receipt."

To further its erroneous contention, Defendant again cites to the case of Irwin v. Dep't Veterans Affairs, 498 U.S. 89, 93 (1990) for the proposition that the date of "delivery" and not the date of "receipt" of the FAD controls when the statute of limitations period begins to run to file a civil complaint. See Def. Motion at 4. Defendant's interpretation of that Supreme Court case, however, is plain wrong. The seminal issue in Irwin was whether the time to file a civil action ran from when the employee or her attorney first "received" the FAD (which is not the issue in the instant case). The Court determined that whoever "received" the FAD the earliest (who happened to be the employee's attorney in that case) started the time clock. Irwin, 498 U.S. at 93. A secondary holding in Irwin was that an attorney was deemed to be in receipt of the FAD when someone in his office is in personal receipt of the FAD, even though the attorney might not be present at that time and even if he did not actually know that the FAD had arrived in his office during his absence.

Not only did the Court use the terminology of "receipt" as opposed to a "delivery" in this context, it suggested that personal receipt by an individual in the attorney's law firm was necessary. To illustrate that point, the Court stated:

> We also reject Irwin's contention that there is a material difference between receipt by an attorney and receipt by that attorney's office for purposes of § 2000e-16(c). The lower federal courts have consistently held that notice to an attorney's office which is acknowledged by a representative of that office qualifies as notice to the client. See Ringgold v. National Maintenance Corp., 796 F.2d 769 (CA5 1986); Josiah-Faeduwor v. Communications Satellite Corp., 251 U.S.App.D.C. 346, 785 F.2d 344 (1986).

See Irwin at 94 (Emphasis added). In this more complete context, it is clear that the holding in Irwin was focused on whose receipt of the FAD began the statute of limitations. The part of the Irwin decision regarding the "effect of limiting factual disputes" as to when actual notice was received, which is also referenced and misinterpreted in Defendant's motion, is clearly meant to apply to the scenario that an employee's attorney is deemed to have actual notice of the FAD when an agent in that attorney's office signs for receipt of it in his or her absence. Thus, Defendant has unreasonably and patently misinterpreted the meaning of the Irwin decision.

Moreover, other more recent cases have followed the same logic in the Irwin case in that actual receipt is required in order to begin tolling the statute of limitations for a Title VII plaintiff to file an action in civil court. For example, in McKay v. England, No. 01-2535, 2003 WL 1799247 (D.D.C. 2003), this District Court stated, "Two types of receipt of a right-to-sue notice can start running the 90-day limitation period, and each does so equally well; actual receipt by the plaintiff, and actual receipt by the plaintiff's attorney (as such receipt constitutes constructive receipt by the plaintiff)." McKay at *2 (Emphasis added). Proof of actual receipt in that case was the defendant's agency employer's submission of a postal receipt signed by the employee

"establishing that McKay personally received the final order on September 5, 2001." Id.

Other courts have also rendered similar decisions. See also Threadgill v. Moore U.S.A., Inc., 269 F.3d 848 (7th Cir. 2001), cert. denied, 535 U.S. 970 (2002) ("Two types of receipt of a right-to-sue notice can start running the 90-day limitation period, and each does so equally well; actual receipt by the plaintiff, and actual receipt by the plaintiff's attorney . . .") (Emphasis added); Carter v. U.S. Postal Service, No. 06-CR-3854, 2007 WL 879417 (E.D.N.Y. Mar. 22, 2007) (statute of limitations to file a formal EEO complaint ran from date of employee's actual receipt of the agency's formal EEO complaint filing notice once she returned home from vacation, and not from the date that the notice was delivered to her home when she was not there; although the formal EEO complaint was filed one day late, the court determined that it "obviously caused no prejudice to the agency" and the complaint was not dismissed on timeliness and was considered on its merits); Leonard v. Rumsfeld, 146 F.Supp.2d 1227, 1237 (M.D.Ala.) aff'd, No. 01-13847, 2001 WL 1690557 (11th Cir. 2001) ("Plaintiff's actual receipt of the final agency decision commenced the running of the ninety day period . . . despite the agency's failure to provide the notice to plaintiff's attorney.") (Emphasis added).

The merits of Defendant's argument of "delivery" versus "receipt" is further discounted by the fact that the FAD itself echoes the same applicable statutory provision and EEOC federal regulation quoted in the court's Memorandum Opinion and Order. The pertinent part of the FAD states that the time frame in which to file a civil action runs from Plaintiff's receipt of the FAD:

B. Filing a Civil Action

Additionally, you have the right to file suit in federal court:

1. Within ninety (90) days of your receipt of this Final Agency Decision if no appeal to the EEOC has been filed.

See Def. Motion for Summary Judgment, Ex. B to Bess Declaration, a copy of the Final Agency Decision, at pp. 24-25 (Emphasis added).

Moreover, applying Defendant's misplaced logic, the entire purpose of having a return receipt card with certified mail (a service for which Defendant paid for and for which it completed additional documentation), or having other similar confirmation services would be meaningless if the date of receipt did not control when the deadline began to run to file a civil action since the purpose of signing the "green card" is to establish when the person signing it has received the document. And, as stated below and as implicitly acknowledged by Defendant, the USPS "Track and Confirm" report only indicates the date when the FAD was purportedly delivered (although it does not specify the name of the recipient and address), and does not confirm when it was actually received by Plaintiff or anyone else on her behalf. The effect is that actual receipt of the FAD by Plaintiff starts the clock for filing the complaint, and mere "delivery" is not necessarily synonymous with "receipt," unless of course both acts coincide on the same day, which is not the case here. While it is unfortunate that the Postal Service committed error in this case by failing to properly deliver the FAD and by failing to obtain Plaintiff's signature upon the delivery of the FAD, whenever it may have been, this in no way should prejudice Plaintiff since she is not at fault.

Accordingly, based on the forgoing, the Court's decision that the date of "receipt" of the FAD controls the date by which the civil complaint should be filed was proper and Defendant's motion should be denied.

B. The USPS Track and Confirm Report is Unreliable and is Not Admissible Evidence in This Matter.

Notwithstanding the issue concerning "receipt" versus "delivery" of the FAD, Defendant claims that the printout from the U.S. Postal Service website should have been considered "admissible" as a business record under Federal Rule of Evidence 803(6), as a public record under Rule 803(8)(A), or under the "residual exception" of Rule 807. Defendant asserts that the Internet report is inherently "trustworthy" and "competent" and proves conclusively when the FAD was "delivered" to Plaintiff. See Def. Motion. at 2-3. Defendant states that this is likewise supported by the unpublished decision of Chapman v. San Francisco Newspaper Agency, No. 01-2305, 2002 WL 31119944 (N.D. Cal. 2002)[2], which held that the USPS "Track and Confirm" report in that case was admissible as a business record because it was considered to be a sufficiently reliable source to establish the date when the employee received a notice of right to sue letter from the EEOC.

Contrary to Defendant's assertions, the USPS "Track and Confirm" report on which it solely relies is an inherently unreliable and uncorroborated piece of information and it fails to prove when Plaintiff actually received the FAD. Thus, the report should not be considered to be "admissible evidence" for this purpose.

Significantly, the U.S. Postal Service itself has expressly disclaimed that it cannot guarantee the accuracy of the information contained on its Internet site, including the data contained in the "Track and Confirm" report. More specifically, on the very same website in which the "Track and Confirm" report was retrieved by Defendant, the U.S. Postal Service

[2] Of course, the Chapman case is not binding on this Court.

states:

> Any person accessing this site agrees to the following: . . .
>
> The materials in this site are provided "as is" and without warranties of any kind either express or implied. To the fullest extent permissible pursuant to applicable law, the postal service disclaims all warranties, express or implied, including, but not limited to, implied warranties of merchantability and fitness for a particular purpose. The postal service does not warrant or represent that the information is accurate or reliable or that the site will be free of errors or viruses.

See Pl. Opp. Ex. 1, print-out of "Terms of Use" page on USPS website. Ironically, although Defendant tacitly agreed to this disclaimer when it accessed the website, it is now arguing that the report is "guaranteed" to be trustworthy.[3] However, this is unsupported by the agency that compiled the very same data at issue on its website -- the U.S. Postal Service -- which also delivered the FAD to Plaintiff's apartment building on a date that is now still at dispute. Thus, the "Track and Confirm" report is not dispositive, has little or no evidentiary value in this case, and does not enable Defendant to meet its burden in its motion.

Notably, at least one other federal district court has stated that the U.S. Postal Service "Track and Confirm" report is insufficient to show service of process. See Pl. Opp. Ex. 2, U.S. District Court for the Eastern District of Michigan" CM/ECF E-News," Vol. V, p. 1, Oct. 2006 ed.[4] (including a sample copy of U.S. Postal Service "Track and Confirm" report). That court

---

[3] Defendant also has argued that, "In any event, it should be clear that the information in the printout is subject to verification at any time by anyone with access to the internet." Def. Motion at 6. However, as noted above, this contention is inconsistent with the disclaimer set forth on the U.S. Postal Service's website, which indicates that the information cannot be guaranteed to be accurate and free of error.

[4] Although the newsletter itself is not dated, a link from the court's ECF website page for the "October 2006 PDF" takes the visitor to this particular newsletter. See http://www.mied.uscourts.gov/ECF/ Also notable is that the photo image of the USPS "Track and Confirm" report in the newsletter indicates that it is for a mailing that was "delivered" on

further added that because the U.S. Postal Service's "Track and Confirm" report notices "do not show proper service of a summons and complaint," the responsible party must scan in the green return receipt card into their computer and make it part of their ECF filing with the court to show service of any summons. Id.

Although a similar USPS "Track and Confirm" report was deemed to be admissible evidence[5] in the unpublished Chapman decision for the purpose of determining when the plaintiff employee was in receipt of the EEOC notice, the facts and circumstances are different in the instant case. First, there is no indication that the express disclaimer on the USPS website was brought to the attention of the court by the pro se employee when deciding whether the site's report was an admissible piece of evidence. And, second, there is no indication in that decision that the employee provided evidence to dispute the accuracy of the report, as the Plaintiff does in this case.

Defendant tries to bolster its position by citing to three unpublished decisions from other federal district courts in which Internet data was considered to be self-authenticating, which is one of the prerequisites for admissibility of evidence. See Def. Motion at 4-5. Although those cases essentially state that material from government websites are generally admissible because

---

May 6, 2006. See Pl. Opp. Ex. 2.

[5] It is pertinent that the Chapman court refused to take judicial notice of the USPS "Track and Confirm" report because a "[r]easonable dispute could be raised concerning the accuracy of a single piece of data retrieved from a website, and no longer available, where no other source for the data exists. Since the accuracy of the USPS printout could be disputed, the information contained therein is not a fact that can be judicially noticed." Id. at *2 (emphasis added). Although the report was alternatively admitted as a business record, the court did not take the report at face value and still allowed rebuttal evidence from the plaintiff employee. Id. Thus, the same decision on which Defendant relies upon also supports that the USPS "Track and Confirm" report rises to a rebuttable presumption with regard to its accuracy generally, and

they are deemed to be inherently trustworthy, this is not the case with the U.S. Postal Service's website at issue in this case. As opposed to those other fact patterns, Plaintiff has produced evidence that the USPS website expressly states that the data is not guaranteed to be error-free. Nonetheless, simply because a record is self-authenticating does not mean that it is conclusive, nor does it mean that it is of sufficient probative value on the question when Plaintiff received the FAD in this case. Therefore, Defendant's arguments on this point should be rejected.

C. Even if the USPS Track and Confirm Report is Admitted As Evidence in This Case, it Still Does Not Prove When Plaintiff Was in Receipt of the FAD.

Even if the Court decides to admit the USPS "Track and Confirm" report produced by Defendant in this case, that does not end the Court's inquiry as to whether Plaintiff's civil Complaint was untimely filed, as Defendant argues because that piece of information alone does not prove when Plaintiff received the FAD to start the clock for her to file her civil action.

Although the USPS "Track and Confirm" report was admitted as business record in the Chapman case, it was not considered in a vacuum because it was subject to a rebuttable presumption in the context of any other relevant evidence. Other evidence was taken into consideration before a decision was reached on the issue of timeliness of the filing of the civil action, such as the employee's own sworn testimony on precisely when he received the EEOC's notice. Chapman at *3. The employee, however, ultimately failed in his case after he changed his testimony and stated that he "assumed" that he had actually received the notice on a later date (four days later on March 17th) than he originally purported in his civil complaint. The employee testified hat he could only "assume" that he received the EEOC's notice on the latter date because the notice was dated March 13th (the same day he initially indicated that he had received

---

specifically, when an employee receives notice by mail.

it) and he thought that mail from San Francisco could take four or five days to get to his home in Dale City, California. Id. Because the employee did not know when he had actually received the letter, and because no corroborative evidence was produced other than his pure speculation of how long it might have taken for the notice to arrive at his residence by mail, the court in that case determined that no reasonable jury could find that he received the notice beyond the date in the "Track and Confirm" report. Id. Therefore, the USPS "Track and Confirm" report was relied upon by the court only because Plaintiff was unable to provide any sufficient probative evidence to dispute it and there was no other evidence in the record to establish when he received the FAD

In contrast to the Chapman decision, Plaintiff has at all times asserted that she received the FAD on specific date of Monday, June 12, 2007. See Complaint at ¶ 13 ("On June 12, 2006, Plaintiff received a copy of the FAD"); Nuskey MSJ Opp. Dec. at ¶ 3. Also unlike Chapman, Plaintiff has provided evidence that she was not at her residence at the time that Defendant argues that the FAD was allegedly delivered there, so there is no way that she could have received the FAD on that particular date, and there is no evidence that anyone else received it on her behalf. See Nuskey MSJ Opp. Dec. at ¶¶ 1-7. She has also provided detailed sworn testimony as to precisely when and how she came into receipt of the FAD. See id. at ¶ 3. Moreover, Plaintiff's actual date of receipt of the FAD has been corroborated by other evidence, including the fact that she immediately and contemporaneously notified her counsel when she received the FAD. See id. at ¶ 6; Bernstein MSJ Opp. Dec. at ¶ 2. Defendant cannot disprove the date of Plaintiff's receipt of the FAD because the "green card" attached to the certified mail envelope which enclosed the FAD remained attached, unsigned, and undated upon her discovery

of it on Monday, June 12, 2007, a fact which is not controverted by Defendant, apparently because the Postal Service carrier failed to obtain a signature as required. See Nuskey MSJ Opp. Dec. at ¶ 4; Exs. 1-2 to Pl. Opp. to Def. Motion for Summary Judgment.

In its motion, however, Defendant attempts to try to place blame on Plaintiff for failing to take the initiative to visit the U.S. Postal Service's website to verify when the FAD was "delivered" to her residence. See Def. Motion at 4. It would be unreasonable that Plaintiff would suspect that she would need to resort to such a measure since there is no mention of the Postal Service's website or the "Track and Confirm" function on the "green card" that remained attached to the envelope that enclosed the FAD. See Exs. 1-2 to Plaintiff's Opp. to Def. Motion for Summary Judgment. Moreover, even if she had checked the Postal Service's website before she filed her civil Complaint, there would be no guarantee that the information for the date of "delivery" would be correct due to the express disclaimer on the website. We also know that the website also would not have revealed when Plaintiff or anyone else was in actual "receipt" of the FAD, the controlling fact for the issue of timeliness, since that data was not reported on the website, and because the "green card" acknowledging receipt remained attached to the envelope containing the FAD. And, if Plaintiff had signed the "green card" and returned it in the mail on Monday, June 12, 2006 when she received the FAD, the Court would have to determine which piece of evidence was more accurate – the Postal Service Internet record of the suspected date of "delivery," or the actual signed and dated "green card" showing that Plaintiff received the FAD.[6] Because the cases cited in Plaintiff's Opposition to Defendant's Motion for Summary Judgment

[6] Presumably, the agency paid for the service for requesting that the signed "green card" be returned to its office primarily so that the date of Plaintiff's receipt of the FAD could be established without question.

and in the Court's May 30, 2007 Memorandum Opinion and Order suggest that the signed "green card" is controlling, it was entirely reasonable to give Plaintiff the benefit of the doubt in this case, since she has submitted sworn and uncontested testimony that she received the FAD on Monday, June 12, 2006, and not on Friday, June 9, 2006, and there is no signed "green card" or any other evidence produced by Defendant showing otherwise.

The only "corroborative evidence" that the Defendant has produced to date to prove when it believes the FAD was "delivered" is the "Track and Confirm" Internet print-out report[7] and a declaration from one of the Bank's employees who states that she put the FAD in the mail stream to Plaintiff on June 7, 2006. See Ex. C. to Def. Motion for Summary Judgment. Defendant has produced no new evidence with its Motion to Revise the Decision, and the evidence that it has produced thus far does not rise to the level of "hard proof," let alone any proof, of when Plaintiff received the FAD. See May 30, 2007 Mem. Op. and Order at 3 citing Colbert v. Potter, 471 F.3d at 165 (requiring appellate record to be supplemented with the original signed post office Domestic Return Receipt with both the front and back sides of the form showing before affirming grant of summary judgment for defendant) and Woodruff v. Peters, 482 F.3d 521, 525 (D.C. Cir. 2007) (defendant's affirmative defense of untimely filing fails when defendant fails to submit "hard proof" of the date of receipt of notice) (Emphasis added). Neither of these two pieces of information produced by Defendant prove when Plaintiff was in receipt of the FAD, nor do they rebut that she received it any earlier than Monday, June

[7] The "Track and Confirm" printout from the U.S. Postal Service's website only includes the envelope's "Label/Receipt Number" and states that it was "delivered" (without specifying to whom or to what street address) at 4:05 p.m. on Friday, June 9, 2006. Thus, because this other critical information is missing, there is no assurance that it was even delivered to Plaintiff's residence on that particular day.

12, 2006. Therefore, Defendant's "evidence" is inconclusive and is far less probative than the evidence produced by Plaintiff in this case, including the sworn declaration that Plaintiff submitted with her Opposition to Defendant's Motion for Summary Judgment.

Defendant also contends in its motion that the Court misapplied Colbert because that Circuit Court decision "does not establish any requirement that a party using certified mail must produce the date-stamped green card in order to establish the date of delivery.[8] " See Def. Motion at 6. Defendant, however, misses the point of the Court's Memorandum Opinion and Order. The Court did not state that in order to prove when Plaintiff received the FAD, Defendant was required to produce the "green card." Rather, the Court accurately stated that Defendant did not produce any evidence to prove when Plaintiff received the FAD, which was its burden when it moved for summary judgment, and that the USPS "Track and Confirm" report had no evidentiary value. Since the agency had paid for certified mail, return receipt requested, when it mailed the FAD to Plaintiff, it would be reasonable to conclude that the signed "green card" would be the primary method of how Defendant could meet its burden to prove the date of receipt of the FAD. It is clear that Colbert was cited by the Court as illustration to show that the same question in that case was resolved by reviewing the available evidence showing the date that the plaintiff's attorney in that case received the FAD, which was a signed and dated "green card." Moreover, as stated in Plaintiff's Opposition to Defendant's Motion for Summary Judgment, this is a typical practice that is regularly utilized by the courts and federal agency defendants to ascertain the date of receipt of a FAD. See Pl. Opp. to Def. Motion for Summary Judgment at 11-14, and cases cited therein.

[8] Although Defendant still is focused on "delivery" versus "receipt" of the FAD in this

Interestingly, Defendant does not argue that the Court misapplied Woodruff v. Peters, 482 F.3d 521 (D.C. Cir. 2007) to determine that Defendant failed to meet its burden of proof for showing that the complaint was untimely filed. Woodruff is analogous to the instant case in that it also involved a federal employee who filed a Title VII civil action after she received a FAD on her EEO complaint from her federal agency employer. In that case, the agency mailed its FAD to the employee on June 12, 2001, "return receipt requested," but nothing in the record established when he received that notice and no receipt was introduced into evidence. Unlike the instant case, the employee in Woodruff could not pinpoint the precise day when he received the FAD, and stated that it was "on or about June 15, 2001." Because the agency did not produce any "hard proof" to refute the approximate date when the employee received the FAD, the agency's affirmative defense of untimeliness failed. In the instant case, Plaintiff has produced sworn testimony to prove the precise date that she received the FAD and, like Woodruff, Defendant is unable to produce any evidence other than possible speculation as to when it believes that she might have received it. Thus, the Woodruff case was correctly referenced by the Court in reaching its decision to deny Defendant's motion.

D. The Court Correctly Determined That Plaintiff's Complaint Was Timely Filed Because it Was Filed Within 90 Days of Her Presumed Date of Receipt of the Final Agency Decision.

Defendant claims that the court should have not applied Fed.R.Civ.P. Rule 6(e) in this case, the presumptive rule of delivery of mail after three days, "because that presumption applies only where there is no evidence on point" and because Plaintiff "has produced nothing" to dispute the supposed June 9, 2006 date of "delivery" in the USPS "Track and Confirm" report.

---

part of its argument, this is not relevant here and need not be addressed again.

See Def. Motion at 6.

First, as already addressed at great length above and in Plaintiff's Opposition to the Defendant's Motion for Summary Judgment, Plaintiff has produced evidence to show when she received the FAD, i.e., on Monday, June 12, 2007. Although the date of "delivery" for purposes of this proceeding is irrelevant, Plaintiff has provided a sworn declaration that states that she is not aware of the date of "delivery" of the FAD because it was not physically delivered to her (as opposed to Defendant's concrete belief that it was "delivered" on June 9, 2007 based solely on the "Track and Confirm" report), and this evidence shows that this particular issue of date of "delivery," albeit irrelevant, is still in dispute.

Nonetheless, as stated above, the relevant issue is when Plaintiff received the FAD, and not when it may have been "delivered" to her residence by the U.S. Postal Service. It appears that Defendant may contend that Plaintiff "received" the FAD on the same date on which it believes it was also "delivered," which is Friday, June 9, 2007 based on the USPS "Track and Confirm" report. In contrast, Plaintiff has at all times contended that she did not receive the FAD until Monday, June 12, 2007. See Complaint at ¶ 13; Nuskey MSJ Opp. Dec. at ¶ 3.

At the time of the Court's May 30, 2007 Memorandum Opinion and Order, and clearly still as of the time of the parties' most recent filings in this case, Defendant contests when Plaintiff received the FAD. As correctly noted by the Court, the law is clear that the Court should apply the three day presumption in these type of circumstances when the parties dispute the date of a plaintiff's receipt of a FAD. See Mem. Op. and Order at 3; Pl. Opp. to Def. Motion for Summary Judgment at 16-17 (and cases cited therein); see also Lozano v. Ashcroft, 258 F.3d 1160, 1165 (10th Cir. 2001) (applying presumption of receipt is appropriate whenever the actual

receipt date of EEOC decision is unknown or disputed).

The Court's application of this law can no way be construed as giving "sympathy" to Plaintiff, as Defendant seems to assert in its motion, see Def. Motion at 6-7, but was rather a neutral application of the Federal Rules of Civil Procedure. Furthermore, the weight of the case law requires application of this rule where the date of receipt of a mailing is unknown or is in dispute.[9] Moreover, Defendant seems to suggest in its Motion that the Court's decision to apply the three day mailing rule in Fed.R.Civ.P. Rule 6(e) constituted "equitable tolling," see Def. Motion at 6-7, but it is clear from the Court's decision that it did not reach the question of whether equitable tolling (a completely different mechanism and standard from Fed.R.Civ.P. Rule 6(e)) was appropriate in this case. See Mem. Op. and Order at 2, n.2. Thus, the Court's decision to apply Fed.R.Civ.P. Rule 6(e) and determine that Plaintiff timely filed her civil Complaint was consistent with controlling legal authority, was not committed in error, and was fairly applied to both parties in this case.[10]

---

[9] See Baldwin County Welcome Center v. Brown, 466 U.S. 147, 148, n. 1 (1984) (presumed date of receipt of notice is three days after issuance by EEOC where there is no evidence of actual date of receipt of the final action); see also El v. Belden, 360 F.Supp.2d 90, 93 n.1 (D.D.C. 2004) ("Courts presume that the [EEOC] notice to sue letter was received three days after mailing."); Powell v. Washington Metropolitan Area Transit Authority, 238 F.Supp.2d 160, 163, n.4 (D.D.C. 2002) (where a EEOC notice of right to sue was sent to plaintiff via regular U.S. mail without a request for confirmation of delivery, and there was no evidence of the actual date of receipt of the notice, the Court assumed that plaintiff received the notice three days after it was issued by the EEOC); Sherlock v. Montefiore Medical Center, 84 F.3d 522, 525-26 (2nd Cir. 1996) (In the absence of contrary evidence, there is a presumption that the plaintiff received an EEOC right to sue letter three days after it was mailed, and that the date of the letter is the date of mailing.).

[10] Plaintiff does note, however, that she believes her civil Complaint was timely filed within the statutory deadline based on her receipt of the FAD on Monday, June 12, 2007. See Pl. Opp. to Def. Motion for Summary Judgment at pp. 8-16. Thus, when she filed her civil Complaint with this Court on Friday, September 8, 2007, it was 87 calendar days after she

E. Alternatively, the Limitations Filing Period Should Be Equitably Tolled and Plaintiff's Complaint Should Be Deemed Timely Filed Based on the Extenuating Circumstances in Her Case.

As stated in her Opposition to the Defendant's Motion for Summary Judgment, the Court could also cure the instant issue by applying equitable tolling to this case. The requirement of filing a timely EEO suit is like a statute of limitations that is "subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 392 (1982); Mondy v. Sec'y of the Army, 845 F.2d 1051, 1057 (D.C. Cir.1998). Courts typically allow equitable tolling when "a claimant has received inadequate notice, where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, where the court has led the plaintiff to believe that she had done everything required of her, or where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction." Wiley v. Johnson, 436 F.Supp.2d 91, 96 (D.D.C. 2006) (internal punctuation omitted). In particular, when an agency fails to afford proper notice of final agency action dismissing a Title VII complaint, "an employee can bring an action in district court within a reasonable time." See, e.g. Williams v. Hidalgo, 663 F.2d 183, 188 (D.C. Cir. 1980) (agency only issued notice of proposed disposition to the plaintiff and did not issue FAD). The plaintiff has "the burden of pleading and proving in the district court any equitable reasons for his failure to meet the [timely filing] requirement." Saltz v. Lehman, 672 F.2d 207, 209 (D.C. Cir. 1982).

---

received the FAD. Because Defendant cannot prove when Plaintiff received the FAD, and it has only focused on date of the "delivery" without expressly controverting the date of Plaintiff's receipt, the Court could conclude that this particular fact is not in dispute and determine that her Complaint was filed within the 90 day time frame without applying Fed.R.Civ.P. Rule 6(e). The Court instead decided to apply the three day mailing presumption in its May 30, 2007 Memorandum Opinion and Order, which still resulted in the Complaint being timely filed, but in other circumstances the outcome could have been different. Therefore, it is clear that the Court's

Although Plaintiff previously raised the possibility of applying equitable tolling in this case (see Pl. Opp. to Def. Motion for Summary Judgment at 17-20) and the Court did not reach a decision on whether it was appropriate, it can still be considered in the event that the Court might ultimately deem that her Complaint was untimely filed in this case (which Plaintiff disputes). Therefore, for the same reasons described in Plaintiff's Opposition to Defendant's Motion for Summary Judgment, she contends that equitable tolling of the filing would be just based on the underlying circumstances in this case should the Court determine it is necessary.

F. No Evidentiary Hearing is Needed in This Case to Determine When Plaintiff Was in Receipt of the FAD.

In its motion, Defendant urges the court to conduct "appropriately tailored proceedings necessary to resolve the narrow factual question of the date of delivery of the FAD" if the court does not adopt Defendant's position that the USPS "Track and Confirm" report is admissible and conclusively proves that Complainant received the FAD on Friday, June 9, 2007. See Def. Motion at 7. Although Defendant argued that the case of Colbert v. Potter, 471 F.3d 158 (D.C. Cir. 2006) should not have been applied to this case for the purpose of being able to meet its burden of proof on the timeliness argument, Defendant nonetheless points to proceedings on appeal in Colbert to illustrate why it believes such a collateral proceeding might be necessary in this case.

The facts and circumstances in Colbert differ significantly from this case, and do not necessitate an evidentiary hearing in order to determine when Plaintiff was in receipt of the FAD. As noted by Defendant in its memorandum in support of its motion, the D.C. Circuit in Colbert reviewed additional information (the front part of a "green card" since the reverse side had been

---

application of Rule 6(e) was neutral to both parties.

already submitted to the District Court) for the first time on appeal to firmly ascertain when the plaintiff's attorney received the FAD. See Colbert at 161. What Defendant fails to mention is that the agency (the U.S. Postal Service) could have submitted that evidence to the District Court, especially since it had custody and possession of the "green card" during the lower court proceedings, but allegedly failed to do so because of supposed "time constraints." Id. at 164. Additionally, the plaintiff's attorney in that case failed to submit a sworn affidavit at any time during the proceedings to support her contention regarding her date of receipt of the FAD. Id. at 163. Nonetheless, the submission of the additional evidence of the "green card" on appeal did not disturb the holding of the lower court that the plaintiff's attorney received the FAD on the same specific date as deemed by the District Court, and that the civil complaint was still untimely filed. Id. at 167.

In the instant case, Defendant does not reference any other evidence that it has or that will develop in order to prove when Plaintiff was in receipt of the FAD. Rather, Defendant has consistently asserted that the USPS "Track and Confirm" report conclusively shows when the FAD was delivered. Moreover, Defendant does not dispute that the "green card" is unsigned and undated. See Def. Motion to Revise Decision at pp. 3 & 5. Thus, all of the pertinent evidence on this issue has already been developed and nothing new will be added by holding a limited evidentiary proceeding. For example, Plaintiff has produced a copy of both sides of the envelope in which the FAD was contained and which shows that the "green card" is still attached and unsigned; she has provided a very detailed sworn declaration that describes how and when she was in receipt of the FAD; she has produced a sworn declaration from one of her attorneys which corroborates when she received the FAD; and she has produced other documentation to show

that she was not at home to receive the FAD on the date of delivery indicated on the USPS "Track and Confirm" report produced by Defendant. Defendant does not contest any of these facts or Plaintiff's credibility in any of its submissions, but its sole focus is on the date the FAD was "delivered" to Plaintiff's residence, a fact which is not conclusive for the purposes of determining her actual receipt of the FAD or for the deadline on which the Complaint in this case should have been filed.

Thus, there is no "ministerial task" to be taken in this case of reviewing any other "dispositive evidence" (See Def. Motion at 7) in order to determine when Plaintiff received the FAD, since it already is included the record and because Defendant has now had two opportunities to meet its burden to produce evidence to prove when Plaintiff received the FAD, and to counter Plaintiff's evidence, which it has failed to do. Therefore, holding a collateral evidentiary proceeding at this juncture will be a waste of judicial resources and will only serve the interests of Defendant by further delaying the adjudication on the strong merits of Plaintiff's Complaint.[11]

---

[11] If, however, the Court believes there is still a need to develop any other potential information on the issue of when Plaintiff received the FAD, then she requests that a ruling on Defendant's motion be deferred pursuant to Fed.R.Civ.P. Rule 56(f) and that she be given the opportunity to obtain whatever additional information that may be possessed by Defendant on this issue through the normal channels of discovery on the merits of her Complaint.

## III. CONCLUSION

For all of the foregoing reasons, Plaintiff contends that Defendant's Motion to Revise the Court's Summary Judgment Decision should be denied in its entirety and that the May 30, 2007 Memorandum Opinion and Order should be reaffirmed.

Respectfully submitted

/s/ Diana J. Veilleux
D.C. Bar No. 418292
Dveilleux@shawbransford.com
/s/ Lisa A. Bernstein
D.C. Bar No. 466215
lbernstein@shawbransford.com
Shaw, Bransford, Veilleux & Roth, P.C.
1100 Connecticut Avenue, N.W., Suite 900
Washington, D.C. 20036
Telephone: (202) 463-8400
Facsimile: (202) 833-8082

Counsel for Plaintiff