UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHARON L. NUSKEY,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. LAMBRIGHT,<br>CHAIRMAN AND PRESIDENT,<br>EXPORT-IMPORT BANK OF<br><br>THE UNITED STATES,<br><br>Defendant. | Civil Action No.: 06-1573<br><br>Judge Paul L. Friedman/<br>Magistrate Judge John M. Facciola<br><br>Dated: January 23, 2008 |

PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S DISCOVERY RESPONSES AND TWO DEPOSITIONS IN THIS CASE

Pursuant to Fed. R. Civ. Pro. R. 37(a), Plaintiff, Sharon L. Nuskey, by and through her undersigned counsel, hereby moves the Court to compel Defendant, James H. Lambright, Chairman and President of the Export-Import Bank of the United States ("Bank," or "agency"), to respond in full to all of her written discovery requests in the attached Interrogatories and Requests for Production of Documents, which were timely served on Defendant on Friday, August 24, 2007. Additionally, Plaintiff files this Motion to compel Defendant to produce the former Vice Chair of the Bank (April Conlin) and former Director and Current Vice Chair of the Bank (Linda Conlin) each for a deposition in this case, to which Defendant has objected. Prior to filing this Motion, pursuant to Fed. R. Civ. Pro. R. 37(a)(1), LCvR 7(m), and the Court's July 9, 2007 Scheduling Order[1] in this case, Plaintiff discussed the matters in dispute at length, both in writing and

[1] The Scheduling Order issued by Judge Friedman requires the parties to arrange a teleconference with the Court for any outstanding discovery disputes prior to filing a motion to compel. On Tuesday, January 8, 2008, Plaintiff's counsel called Magistrate Judge Facciola's

by telephone, on a number of occasions with counsel for the government, Alan Burch, Esq., in a good faith effort to resolve or narrow the areas of disagreement of Defendant's responses. While those good faith efforts yielded the resolution of some of those disputes, other areas of disagreement remain in dispute and require the intervention of the Court with Plaintiff's Motion, which is opposed by Defendant. See Motion Ex. 1, Declaration of Lisa A. Bernstein, at ¶ 23. For the following reasons, which constitute good cause, Plaintiff's Motion should be granted.

## I. BACKGROUND

On Friday, June 22, 2007, on behalf of the parties, Alan Burch, Esq., counsel for Defendant, filed the parties' Joint Report Of The Local Rule 16.3 Conference. Because counsel for both parties had commenced discussions about Electronically Stored Information ("ESI") as it applied to discovery in this case shortly before the report was filed (the parties had already conferred about the other items in the joint report by that time), they notified the Court in this filing that they intended to supplement the report with the ESI provision. However, by the time of the Local Rule 16.3 conference held on Monday, July 9, 2007, the parties had not finalized their discussions regarding the ESI language. During the conference with the Court that was held on that same day, the parties advised Judge Friedman that they would continue their discussions about ESI after the conference and would prepare and file a supplemental Local 16.3 report.

---

chambers and spoke to one of his law clerks, Mr. Jared Hosid, to advise him that while the parties have resolved some of their discovery disputes, other disputes still remained outstanding. Plaintiff's counsel told Mr. Hosid that she intended to prepare and file a motion to compel unless Magistrate Judge Facciola directed otherwise. Mr. Hosid stated that Plaintiff could proceed directly by preparing and filing her motion without the need of holding a discovery conference with the Judge in advance of the filing. See Motion Exhibit 1, Declaration of Lisa A. Bernstein, at ¶ 24.

Plaintiff prepared and served her written discovery requests, consisting of Interrogatories and Requests for the Production of Documents, on Defendant on Friday, August 24, 2007.[2] Motion Ex. 2 & 3. Pursuant to Fed. R. Civ. Pro. Rules 33(b)(2) and 34(b)(2), Defendant was required to serve its discovery responses on Plaintiff on or before Monday, September 24, 2007. Id. at 1, fn. 1, of each set of requests.

By email on Wednesday, September 19, 2007, Mr. Burch asked if Plaintiff would object to an extension until Thursday, October 11, 2007 for Defendant to respond to Plaintiff's written discovery requests because the Bank's counsel needed time to review the responses that he received from various agency personnel. By email on Friday, September 21, 2007, Plaintiff's counsel informed Mr. Burch that Plaintiff did not object to his request, but noted that she would appreciate it if Defendant could in any way get its discovery responses to her sooner because of the approaching date for the close of discovery, which at that time was Tuesday, November 6, 2007. Bernstein Dec. at ¶ 2.

On Wednesday, September 26, 2007, Plaintiff faxed and emailed a letter to Mr. Burch providing notice of her intent to take depositions of 10 witnesses in this case and requesting that he provide us with their dates of availability. Motion Ex. 4. Mr. Burch sent Plaintiff a reply letter on Monday, October 1, 2007 stating, inter alia, Defendant's objection to the depositions of two of those witnesses, former Vice Chair of the Bank, April Foley, and former Director and current Vice Chair

---

[2] Pursuant to Fed. R. Civ. Pro. Rules 33(b)(2) and 34(b)(2), Defendant was required to serve its responses to Plaintiff's written discovery requests within 30 calendar of receipt of her written discovery requests. Since Plaintiff's written discovery requests were served on Defendant by regular mail and by email, Defendant's written answers to Plaintiff's written discovery requests were due on or before Sunday, September 23, 2007. Since that day fell on a weekend (see Fed. R. Civ. Pro. 6(a)), the following business day when they were due was on Monday, September 24, 2007.

Linda Conlin. Mr. Burch stated that Defendant objected to their depositions because the two women are high-ranking government officials, were not decision-makers, and do not "have any personal knowledge about the matters in this case." Mr. Burch also objected to the deposition of Ms. Foley on the ground that she currently is the U.S. Ambassador to Hungary. Motion Ex. 5.

On Thursday, October 4, 2007, Plaintiff faxed and mailed a reply to Mr. Burch's letter regarding the depositions that Plaintiff had noticed. Among other things, Plaintiff expressed disagreement with Defendant's position on Ms. Conlin and Ambassador Foley and contended that Defendant should make them both available for depositions in Plaintiff's case. Motion Ex. 6.

On Wednesday, October 10, 2007, Mr. Burch faxed and emailed a letter to Plaintiff regarding the various discovery issues in her case. Specifically, he affirmed Defendant's objection to the depositions of Ambassador Foley and Ms. Conlin. In addition, Mr. Burch declared that the parties were at an impasse over the ESI language for the supplemental Local Rule 16.3 joint report, particularly because Defendant refused to expand the search for ESI beyond one month after Plaintiff was terminated from her employment with the Bank on May 20, 2005. Motion Ex. 7.

On Thursday, October 11, 2007, Plaintiff received Defendant's initial discovery responses by courier. Motion Ex. 8 & 9; Bernstein Dec. at ¶ 3.

On Monday, October 15, 2007, Defendant filed a Joint Motion for Extension of Time to Complete Discovery in this case primarily because the parties had encountered several disputes that needed to be resolved before the completion of discovery. Specifically, between July and October 2007, counsel for the parties exchanged numerous proposed drafts of the supplemental Local 16.3 report as it pertained to ESI. Within that same time frame, counsel for both parties discussed various issues relating to the ESI supplemental report by email and telephone. However, the parties reached

an impasse with regard to certain key terms of the ESI language, particularly relating to the duration of the time period of the ESI at issue to be produced this case. Bernstein Dec. at ¶ 4. While Plaintiff seeks and believes that she is entitled to ESI from the date of her hire at the U.S. Export-Import Bank (Wednesday, August 9, 2004) through the present time, Defendant believes that the ESI period should end one month after her termination on Friday, May 20, 2005 (i.e., Defendant will not produce any documents post-dating June 2005). Additionally, the parties reached an impasse as it pertained to the depositions of Ambassador Foley and Ms. Conlin, and the parties required the intervention of the Court to resolve that particular issue as well. Id. at ¶¶ 4-5.

Between Friday, October 12 and Tuesday, October 16, 2007, the parties called Judge Friedman's chambers to schedule a discovery conference with him because of the aforementioned discovery disputes and pursuant to the Court's July 9, 2007 Scheduling Order. One of the Judge's law clerks, Caroline Platt, took the messages from the parties' counsel. Bernstein Dec. at ¶ 7. By Order issued on Tuesday, October 16, 2007, Judge Friedman referred all discovery matters in this case to Magistrate Judge John Facciola. Judge Facciola granted the parties' joint discovery enlargement motion on Tuesday, October 23, 2007, and discovery in this case was extended through Friday, December 21, 2007.

On Tuesday, October 23, 2007, counsel for Plaintiff and Defendant called Judge Facciola's chambers to bring the unresolved discovery disputes to his attention pursuant to the Court's July 9, 2007 Scheduling Order. One of his law clerks that they spoke to asked for a summary of those issues, which counsel for both parties provided to her. The law clerk indicated that she would brief Judge Facciola on the issues so a determination could be made on how to proceed. Bernstein Dec. at ¶ 8.

On Tuesday, October 30, 2007, on behalf of both parties, counsel for Defendant filed a Joint Motion For A Protective Order relating to the discovery sought by both parties in this case. The primary purpose of the motion was to expeditiously facilitate the agency's release of information that Plaintiff sought on the similarly situated younger males in this case. The motion was granted by Judge Facciola on October 31, 2007.

On Wednesday, November 7, 2007, Defendant served its additional documentary discovery responses that were being withheld subject to the Protective Order. Those discovery responses were received by Plaintiff on November 8, 2007. Motion Ex. 10; Bernstein Dec. at ¶ 9.

Upon receipt of Defendant's two batches of discovery responses, Plaintiff and her counsel reviewed them to determine whether or not they were complete and fully responsive to her written discovery requests. This was not only necessary for that particular purpose, but also because Plaintiff wanted to ensure that she had all of the responsive discovery that she would need to assist with preparing for and taking the ten depositions that she noticed in this case. Bernstein Dec. at ¶ 10.

Plaintiff ultimately determined that a number of Defendant's discovery responses were deficient and that a variety of its objections were unsupported. Consequently, she prepared and served a 31 page letter on Defendant's counsel, AUSA Alan Burch, on Tuesday, November 27, 2007 that described in detail why Plaintiff believed that Defendant's written responses may have been or were in fact deficient and why Defendant's objections were unsupported. Id. at ¶ 11; Motion Ex. 11.

On Monday, December 10, 2007, Plaintiff received Defendant's written response to Plaintiff's November 27th letter. Motion Ex. 12; Bernstein Dec. at ¶ 12. Defendant maintained its objections with regard to Plaintiff's various requests requesting the production of documents for: (a) various records in her written requests from 2004 through the present time; and (b) relevant information

maintained on the responsible management officials and others in their supervisory chain of command. Defendant also addressed a number of other issues raised in Plaintiff's November 27th letter, but they still were not resolved to Plaintiff's satisfaction. Motion Ex. 12.

Because the large majority of disputes still remained after the parties' exchange of correspondence over discovery in this matter, Plaintiff scheduled a discovery teleconference with Mr. Burch in another effort to resolve the outstanding issues pursuant to LCvR 7(m). Mr. Burch was amenable to the conference, which was scheduled by telephone on the afternoon of Thursday, December 20, 2007. Bernstein Dec. at ¶ 13.

The said telephone conference was held, as scheduled, on the afternoon of Thursday, December 20, 2007. During the telephone call, Plaintiff's counsel addressed a number of items addressed in Mr. Burch's letter of December 10, 2007.[3] Bernstein Dec. at ¶ 14.

With regard to Defendant's continuing objection to the subject time frame of Plaintiff's discovery requests (page one of Mr. Burch's letter), Plaintiff's counsel reasoned that Plaintiff was employed by the Bank for a total of 10 months (not the eight months cited in his letter) and that the time frame at issue for the discovery requested in many of her requests is only for approximately 2 ½ years after she was terminated, which is not an unreasonable length of time as Defendant claimed. Id. at ¶ 15. Plaintiff's counsel also reiterated that the discovery sought during that time period was relevant because: (1) there could be information that is responsive to Plaintiffs discovery requests through the present time regarding her employment at the Bank, such as emails and other communications about Plaintiff that were exchanged between management, the EEO office, the

[3] Some of the issues raised during this call by Plaintiff's counsel were resolved at a later time, but for the purposes of this Motion, those other issues are not described herein.

Human Resources office, etc. about the removal action after she was terminated and up to the present time; any issues about her alleged performance and conduct leading up to the removal action, but which were documented or communicated about more than one month after she was removed; and discussions about her EEO activity, gender, age, EEO complaint and/or civil Complaint more than one month after she left the Bank, etc.; (2) Plaintiff understood that the younger male comparators (Charles Barnett, William Hess and Brian Sant Angelo) continued to work at the Bank for a while after Plaintiff was removed, and a fourth younger male comparator (Ricardo Michel) was hired to replace Plaintiff, and, therefore, their performance and conduct and how management treated them after she left is relevant for a showing of pretext; (3) since Plaintiff is claiming damages, especially in the form of backpay and frontpay, the complete records in younger male comparators' Official Personnel Folders through the present time are relevant for the purposes of making that showing, and Plaintiff's retained expert will be unable to prepare and submit a comprehensive report to Defendant on her estimated calculation of front pay without receiving information on the career progression of Plaintiff's comparators. Id.

In response, Mr. Burch reiterated that the Bank conducted a computer search only through June 2005 (even though Plaintiff's requests were for information through the present time), and that it would be an undue burden for the Bank to conduct a second search for July 2005 to the present. He offered for the Bank to conduct the computerized search as long Plaintiff beared the costs. Plaintiff's counsel told him that she was unwilling to do that because the scope of her request was reasonable and was initially made at the time of her written requests, even though Defendant chose on its own volition to conduct a search for a shorter period of time. Id. at ¶ 16.

In response to Defendant's objection to Plaintiff's request for information on the performance and conduct of the younger comparator males (page two of Defense counsel's letter), Plaintiff's counsel told Mr. Burch that Plaintiff's "need for post-termination discovery on Plaintiff's male colleagues' performance" was relevant because the two responsible management officials in this case (C. Michael Forgione and Craig O'Conner) indicated in their EEO affidavits that several issues allegedly arose about her performance during her employment, such as her work on the Bucharest, Romania conference held in 2004. Additionally, those same issues are noted in Defendant's response to Interrogatory No. 8. Therefore, this could support that the Bank has provided shifting reasons for her termination, which could support a showing of pretext. Mr. Burch stated that he would look into that and would get back to Plaintiff's counsel. Bernstein Dec. at ¶ 17.

With regard to Defendant's specific objection to Plaintiff's various requests that sought information on the performance and conduct (including any complaints filed) of the four managers in her supervisory chain of command, Plaintiff's counsel told Mr. Burch that the information sought is relevant to her claims because it may show a pattern of discrimination against present or former Bank employees who are female, over the age of 40 years old, and/or who may have engaged in protected EEO activity or opposed discrimination in order to support her own claims. Mr. Burch expressed his disagreement during the discovery teleconference and said that Defendant's position remained unchanged. Id. at ¶ 18.

Also during the parties' discovery teleconference, Plaintiff's counsel raised the issue of the Local Rule 16.3 Joint Report on ESI that has been in draft form for many months because negotiations have failed and the parties have been unable to come to an agreement on those

provisions. One of the primary disputes[4] involving ESI is also at issue with Defendant's discovery responses, i.e., that Defendant contends that the time frame that is the subject of Plaintiff's discovery requests is overly broad. Mr. Burch and Plaintiff's counsel agreed that this particular issue overlapped with Defendant's objections to Plaintiff's written discovery requests and, therefore, we deferred to our other communications. The parties' positions on this issue remained the same and could not be resolved. Bernstein Dec. at ¶ 19.

Also discussed during the telephone call was Defendant's prior objection to the depositions that Plaintiff noticed for Ambassador Foley and Ms. Conlin. Plaintiff noticed their depositions because each of them provided affidavits with relevant personal information about her EEO complaint during the agency's EEO investigation and they were included in the Bank's report of investigation on Plaintiff's EEO complaint. Plaintiff did not have the right to cross-examine these two witnesses during their EEO interviews. Even though they provided relevant evidence with their personal experience working with Plaintiff that corroborated her claims of discrimination and reprisal that bolstered her formal EEO complaint, because Ambassador Foley and Ms. Conlin are considered to serve in high level managerial positions, Plaintiff thought it was appropriate to notice their

---

[4] The other primary dispute regarding the ESI supplemental 16.3 report concerns the claw-back provision that Defendant has proposed for inclusion in the report. This relates to any documents that Defendant has produced, but later requests that they be returned because it decides that they are covered by a privilege. It is Plaintiff's position that this particular provision should mirror Fed. R. Civ. Pro. Rule 26, while Defendant contends that the provision should alter that Rule by eliminating her ability to object to any of its requests for the return of any documents in her possession and eliminating the ability for the Court to intervene to resolve any dispute. By following Defendant's logic, not only would she give up such a reasonable right to object provided by the Rule, but it could also potentially interfere with Plaintiff counsel's ethical obligations under the D.C. Rules of Professional Conduct. Because this additional dispute has not been resolved, the parties have been unable to finalize and file their supplemental LCvR 16.3 report with the Court. Bernstein Dec. at ¶ 5.

depositions rather than to contact them directly herself. During our discovery teleconference, Mr. Burch stated that Defendant's objection to the two depositions continued based on its reasons provided in its previous written correspondence, but that Defendant might be willing to consider an alternative method to elicit evidence, such as written interrogatories directed to the two witnesses. Counsel for Plaintiff responded that Plaintiff would consider this option, but it would be likely unfeasible because the two witnesses' responses would likely be filtered and/or edited by Defendant and its counsel and would not be productive for Plaintiff. Additionally, Plaintiff's counsel stated that written discovery requests would likely only serve to delay the discovery process and case proceedings if any follow-up questions were necessary. Bernstein Dec. at ¶ 20.

At the conclusion of the discovery teleconference, Mr. Burch said that he would follow-up with the Bank's counsel about the various issues that were discussed, and that he would contact Plaintiff's counsel on Friday, December 22, 2007 about any response that he had. Because he would be on leave from work through Thursday, January 3, 2007 and the Bank's counsel would also be on leave during that same time frame, Mr. Burch stated that he planned to provide Plaintiff with any supplemental response by Friday, January 5, 2007. Id. at ¶ 21.

Mr. Burch emailed Plaintiff's counsel on Thursday, December 21, 2007 to provide a preliminary response to some of issues concerning Defendant's responses that we discussed during our discovery conference. Mr. Burch indicated that a more complete response would follow at a later time. Bernstein Dec. at ¶ 22.

On Thursday, January 3, 2008, Defendant served additional discovery responses on Plaintiff, which it considered to be the remainder of its responses to her Requests for the Production of Documents. See, e.g. Motion Ex. 13. After having an opportunity to review those additional

discovery responses, Plaintiff's counsel emailed Mr. Burch on Monday, January 7, 2008 to follow-up on a number of items relating to Defendant's document responses that still appeared to be outstanding. Mr. Burch replied to the email on January 8, 2008, and noted that responsive non-privileged documents in response to those particular requests had already been produced, and that other documents were being withheld pursuant to the Defendant's objections to Plaintiff's discovery requests. Bernstein Dec. at ¶ 23.

After exchanging additional emails about a number of other outstanding issues regarding Defendant's discovery responses, Plaintiff arranged a teleconference call with Mr. Burch on the morning of Wednesday, January 23, 2008 in a last chance effort to resolve several of the global discovery disputes. Plaintiff's counsel advised Mr. Burch that while she was conducting legal research for Plaintiff's Motion to Compel, she had found a number of Court decisions that supported Plaintiff's position on Defendant's general objections to Plaintiff's discovery requests and to Plaintiff's notice of the depositions of Ambassador Foley and Ms. Conlin. Plaintiff's counsel provided Mr. Burch with a sampling of the seminal cases that supported her position, and asked if Defendant would reconsider its objections prior to the filing of her Motion by the close of business on that same day. Mr. Burch stated that he would look into those cases and would try to get back to Plaintiff's counsel by the close of business on that same day. Bernstein Dec. at ¶ 25.

As of the finalization of this Motion (after 5:30 p.m. on Wednesday, January 23, 2008), Plaintiff's counsel did not hear back from Mr. Burch regarding the issues that she raised for his consideration in our call earlier today. This motion then was necessary to be filed because Plaintiff's attempts to resolve all of the outstanding discovery disputes were not fully accomplished. Id. at ¶ 26.

## II. ARGUMENT

### A. DEPOSITIONS OF APRIL FOLEY AND LINDA CONLIN

In general, "a party is entitled to depose a witness on all relevant issues to which the witness has knowledge." Alexander v. F.B.I., 186 F.R.D. 1, 3 (D.D.C. 1998). "There is substantial case law standing for the proposition that high-ranking government officials[5] are generally not subject to depositions unless they have some personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." Alexander, 186 F.R.D. at 4 (citations omitted).

Although Defendant has not yet sought a protective order in this case as it pertains to the depositions of Ambassador Foley and Ms. Conlin, the relevant case law is instructive for the purposes of this motion. Any party seeking to limit discovery under Rule 26(c) must demonstrate that, on balance, the harm to it outweighs its opponent's interest in discovering the facts:

> To do so, the movant must articulate specific facts to support its request and cannot rely on speculative or conclusory statements . . . Moreover, in the case of a protective order related to deposition testimony, courts regard the complete prohibition of a deposition as an "extraordinary measures [ ] which should be resorted to only in rare occasions" . . . Accordingly, courts apply a balancing test weighing the movant's proffer of harm against the adversary's "significant interest" in preparing for trial.

---

[5] As well, when discussing the nature of "high-ranking government officials," the District Court has consistently viewed such officials as heads of agencies, Cabinet-level officials, and / or the Mayor of the District of Columbia. Neither of the two proposed deponents fit into the above categories. See generally, Alliance for Global Justice v. District of Columbia , 2005 WL 1799553 at *1 (D.D.C. July 29, 2005) (unpublished) (referencing agency heads and Cabinet-level officials in analysis of whether Mayor of the District of Columbia should be deposed); Capitol Vending Co. v. Baker, 36 F.R.D. 45, 46 (D.D.C. 1964) (referring to executive department heads and Cabinet officials as "high-ranking" officials).

Jennings v. Family Management, 201 F.R.D. 272, 275 (D.D.C. 2001) (citations omitted). Furthermore, a party seeking a protective order prohibiting deposition testimony must establish a specific need for protection, as opposed to simply making conclusory or speculative statements. Alexander, 186 F.R.D. at 75 (citations omitted).

Ambassador Foley and Ms. Conlin have relevant personal knowledge regarding the claims and issues in Plaintiff's EEO complaint. This is largely evident by the affidavits that they provided during the agency investigation of Ms. Nuskey's formal EEO complaint and which are included as part of the Bank's report of investigation. Motion Exs. 15 & 16. Moreover, Plaintiff's position description required her to "[m]ake presentations to senior management and advisory committee meetings on marketing activities, and prepares senior management for congressional testimony on issues relevant to business development."[6] Motion Ex. 17. Additionally, information has been provided by Defendant in discovery (under a protective order) which demonstrates that some of the comparator males have traveled with members of the Board of Directors as part of their job duties. Defendant has raised Plaintiff's performance (albeit in a shifting fashion) as one of the reasons for Plaintiff's termination from her employment with the Bank and, therefore, any information obtained on her performance, and in comparison to the younger males, is relevant in this case.

---

[6] In her civil Complaint and EEO complaint, Plaintiff contends that she had been subjected to discrimination and harassment on the basis of her sex (female), age (then 45 years old), and reprisal (for both opposing unlawful discrimination and for engaging in prior protected EEO activity) in part when her first level supervisor, Mr. Craig O'Connor (Director, Southeast and Central Europe Business Development ("SECE")), and/or second level supervisor, Mr. Michael Forgione (IBD Vice President) "Limited Plaintiff exposure to the Bank's Directors." See Complaint at ¶ 5(d). Plaintiff also elevated this and other issues to Mr. Forgione's direct attention nine days prior to her termination on May 11, 2005, as part of her complaint that she was being subjected to disparate discriminatory treatment from her three younger probationary male colleagues. Complaint at ¶ 20.

Ms. Foley stated in her EEO affidavit that she worked directly both with Plaintiff and three of the other similarly situated younger males in this case. Motion Ex. 15 at 1. In pertinent part, Ms. Foley stated:

> Ms. Sharon Nuskey worked on the staff of the Export-Import Bank in International Business Development and provided briefings and input on matters related to the part of the world for which she has responsibility. Her performance was excellent and I communicated positive feedback to Ms. Nuskey regarding my assessment of her performance. I let her know that I appreciated her efforts and felt she did a good job.
>
> I also interacted with Ms. Nuskey's probationary colleagues: Mr. Charles Barnett, Mr. William Hess and Mr. Brian Sant Angelo. They provided similar services to me with relation to the parts of the world for which they had responsibility. Based on my limited experience and exposure, Ms. Nuskey's performance was equal to or better than theirs in terms of the content of the work product. I felt she was better educated and better informed, and she is more sophisticated and a more developed and confident professional. My experiences with Ms. Nuskey were very limited.

Id. at 1-2. Ms. Conlin stated in her EEO affidavit that

> I am not aware of Ms. Nuskey's performance or interactions in her division. Though I cannot recall the exact number of times we met or spoke to one another, I interacted with her approximately six-eight times during the period she was at the Export-Import Bank. Based on those interactions, I found her to be articulate, motivated and willing to support business development activities in the central and southeastern region of Europe. I verbally communicated this assessment to her. . . . Depending upon the issue, I similarly interacted with different employees in IBD. My interaction with Ms. Nuskey was the same as that with any staff members in IBD involved with regard to regional business development activities, regardless of their sex or age. I do not feel that Ms. Nuskey's sex impacted upon her capability to perform her job.

See Motion Ex. 16 at 2. Similarly, both the EEO affidavits of Ambassador Foley and Ms. Conlin demonstrate that they both have knowledge about the travel of Plaintiff in comparison to the similarly situated males. Motion Ex. 15 at 2 (Foley); Motion Ex. 16 at 2 (Conlin).

Plaintiff, however, did not have the opportunity to cross-examine these two witnesses during the EEO investigation and, therefore, they may have personal knowledge of other more specific

information, other relevant topics for her EEO complaint, and any communications with other managers, including the two responsible management officials, all of which is reasonably calculated to lead to the discovery of evidence relating to the claims and issues in Plaintiff's EEO complaint.

Although Defendant has objected to their depositions on the ground of undue hardship because of the senior management level of Ambassador Foley and Ms. Conlin, Plaintiff has been willing to provide an accommodation to both of them in this case. Plaintiff expects that both of their depositions will not go beyond a few hours and has advised Defendant that their depositions could be stacked with others on the same day. Moreover, Plaintiff has notified Defendant that she is willing to take Ambassador Foley's deposition via telephone because she is physically located in Hungary. Therefore, any hardship that may be imposed on Ambassador Foley or Ms. Conlin will be fairly minimal in this case and will not outweigh the potential benefit to Plaintiff.

Accordingly, the deposition of Ambassador Foley and Ms. Conlin are reasonably calculated to lead to the discovery of admissible evidence and should be ordered in this case.

B. <u>DEFENDANT'S DISCOVERY RESPONSES IN DISPUTE</u>

Pursuant to LCvR 26.2(d), the particular discovery responses by Defendan8 and the corresponding discovery requests propounded by Plaintiff are set forth in Exhibit 16 to this Motion because they are substantial in length. Additionally, Defendant's general objections to Plaintiff's written discovery requests, which are also the subject of this Motion, are reproduced in Exhibit 18 to this Motion. The information in Exhibit 18 is incorporated herein.

Defendant's objections at issue in response to Plaintiff's discovery requests generally fall into the following four categories: (1) the time frame of the requests are over broad and Defendant will only produce information dating from August 1, 2004 to June 2005 (one month after her termination),

instead of from August 1, 2004 (for most request, and from August 1, 2002 for several requests concerning information on her managers) through the present time as Plaintiff has requested; (2) the information sought on the performance and conduct of her managers in her supervisory chain of command as it relates to her performance and conduct, Plaintiff's EEO complaint, and complaints and grievances by other Bank employees irrelevant, whereas Plaintiff contends that such information is relevant because it may support her claims in her EEO complaint, evidence a pattern of disparate treatment towards females and older employees, and serve as potential impeachment material; (3) relevancy on other grounds or that the requests were vague; and (4) attorney-client privilege and work product for various information sought on communications by and/or between Bank management, Human Resources, the EEO office, and other non-legal staff. Additionally, to date, Defendant has not produced all of the responsive information on her four male comparators through the present time, to include information from any supervisory files or human resources files. Plaintiff contends that Defendant's objections are not supported for the following reasons.

Rule 26 entitles a party to discover information if the information sought appears "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pro. Rule 26(b)(1). Additionally, a party may discover only information that is not privileged and "is relevant to the claim or defense of any party." Id.; Krieger v. Fadely, 199 F.R.D. 10, 13 (D.D.C. 2001) holding that the nature of the claims asserted defines relevancy). Relevance for discovery purposes is broadly construed. See, e.g., Burlington Ins. Co. v. Okie Dokie, Inc., 368 F.Supp.2d 83, 86 (D.D.C. 2005) (citing Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union, 103 F.3d 1007, 1012 (D.C. Cir. 1997); see also Smith v. Schlesinger, 513 F.2d 462, 473 n. 37 (D.C. Cir. 1975)); Peskoff v. Faber, Civil Action No. 04-526, 2006 WL 1933483, at *2 (D.D.C. 2006) (finding that a party's discovery

request was not overly broad where it was relevant, meaning that it was reasonably calculated to lead to the discovery of evidence relating to plaintiff's claim). Moreover, "[a]s Title VII cases are particularly hard to prove . . ., discovery in these cases is necessarily broad." Mitchell v. Nat'l R.R. Passenger Corp., 208 F.R.D. 455, 459 (D.D.C. 2002).

Once a party has established relevance, if the other party wishes to object to discovery, the objecting party bears the burden of showing why discovery should not be allowed. See Alexander v. FBI, 194 F.R.D. 299, 302 (D.D.C. 2000) (citations omitted). The Court has held that it will not consider "boilerplate" objections by the party opposing the discovery request. "Instead, the party opposing discovery must make a specific showing, supported by declaration, as to why the production sought would be unreasonably burdensome." Mitchell v. Nat'l R.R. Passenger Corp., 208 F.R.D. 455, 458 (D.D.C. 2002) citing Pro-Football, Inc. v. Harjo, 191 F.Supp.2d 77, 80 (D.D.C. 2002); Natural Resources Defense Council v. Curtis, 189 F.R.D. 4, 13 (D.D.C. 1999); Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. 181, 191 (D.D.C. 1998).

For the following reasons, Plaintiff contends that Defendant's boilerplate objections to her requests are not supported and that Defendant should be compelled to answer in full to each of her requests.

1. Defendant's Objections That The Time Frame Of Plaintiff's Discovery Requests Are Overly Broad Are Unsupported.

Defendant has objected to virtually all of Plaintiff's discovery requests on the ground that they are overly broad in seeking records from two years preceding Plaintiff's employment[7] to over two

[7] With the exception of several of Plaintiff's written discovery requests as it pertains to information specifically relating to the conduct and performance and complaints filed against the four managers in her chain of command, the rest of the requests seek information from eight days prior to the commencement of her employment at the Bank on August 9, 2004.

years after her termination. Consequently, Defendant has agreed only to produce information that dates Plaintiff's full employment with the Bank (August 9, 2004 to May 20, 2005) through one month after her termination (through June 2005). For the reasons below, Plaintiff contends that Defendant's objections are not supported and Defendant should be compelled to search for and produce all of the information requested during the reasonable time period of Plaintiff's requests, the majority of requests which are from August 1, 2004 to the present.

This Court has stated that it "loathe[s] to create automatic limits on a party's right to seek discovery in Title VII cases." Mitchell v. Nat'l R.R. Passenger Corp., 208 F.R.D. 455, 458-59 (D.D.C. 2002); see also Pleasants v. Allbaugh, 208 F.R.D. 7, 9-10 (D.D.C. 2002). Furthermore,

> As Title VII cases are particularly hard to prove in the absence of a proverbial smoking gun, such as a discriminatory comment made by a hiring official, discovery in these cases is necessarily broad. Limits on discovery as to scope, time, and geography must be carefully constructed and premised on the notion that plaintiffs have a right to seek discovery on similarly motivated discriminatory acts if it is likely that a finder of fact would conclude that those other acts are probative of the intention or motivation of which the plaintiff has complained. Johnson v. The Washington Times Corp., 208 F.R.D. 16, 19-20 (D.D.C.2002); see also White v. U.S. Catholic Conference, No. CIV.A.97-1253, 1998 WL 429842, at *5 (D.D.C. May 22, 1998) ("[E]vidence of other acts of discrimination or retaliation charged have been admitted to show, for example, motive or intent."). If it is determined by the finder of fact that an individual once acted in a discriminatory fashion, the finder of fact may infer that the individual acted in the same fashion, with the same motive, when presented with a similar situation. Johnson v. The Washington Times Corp., 208 F.R.D. at 19-20 (citing Miller v. Poretsky, 595 F.2d 780, 788 (D.C. Cir. 1978)); Morgan v. Fed. Home Loan Mortgage Corp., 197 F.R.D. 12, 16 (D.D.C. 2000).

Pleasants v. Allbaugh, 208 F.R.D. at 9. In cases involving racial discrimination, where such claims, by necessity, require discovery on how others are treated, discovery "should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged

discriminatory conduct and the individuals who are allegedly involved in that conduct." Hardrick v. Legal Services Corp., 96 F.R.D. 617, 618-19 (D.D.C. 1983).

This Court has stated that, "The proper scope of discovery in any case is a function of the nature of that case." Pleasants v. Allbaugh, 208 F.R.D. 7, 9 (D.D.C. 2002). Especially where the agency is "relatively small and self contained" and where the data at issue is not significant, a search for a six year period has been deemed to "strike[] a fair balance between plaintiff's need for comparative information and the burden upon the defendant to find the information I am ordering it to produce." Id. Thus, Plaintiff's request for information for records in this case before and after the discriminatory and retaliatory events, which consist of a complete three and a half year time frame, is reasonable. See, e.g. Dorchy v. Washington Metropolitan Area Transit Authority, 45 F.Supp.2d 5, 16 (D.D.C. 1999) citing Onwuka v. Federal Express Corp., 178 F.R.D. 508, 516-17 (D. Minn. 1997) (citations omitted).

Although Defendant has claimed thus far that it will be unduly burdensome if it is required to search for and produce any responsive documents beyond one month after Plaintiff's termination on May 20, 2005, this argument is not outweighed by likely benefit in this case. See Fed. R. Civ. Pro. Rule 26(b)(2)(C)(iii) (stating that discovery should be limited by the court if "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."). "An undue burden is identified by looking at factors such as relevance , the need for the documents, the breadth of the document request, the time period covered by such request, the particularity with which the documents are described, and the burden imposed." Moore v. Chertoff, 2007 WL 1378465, *2

(D.D.C. 2007) citing Wyoming v. USDA, 208 F.R.D. 449, 452-53 (D.D.C. 2002) (citing Flatow v. Islamic Rep. of Iran, 196 F.R.D. 203, 206-07 (D.D.C. 2000)).

In this case, the information that Plaintiff seeks through the present time is relevant for the purposes of showing disparate treatment of her in comparison to the four younger similarly situated males in this case (three males who served a probationary period in the same position as Plaintiff, and the fourth male who replaced her and was required to serve a probationary period).[8] Moreover, the information sought for the period following Plaintiff's termination through the present time may yield evidence about the claims in her EEO complaint and any evidence on motive for gender or age bias or EEO retaliation by her management. For example, there could be emails and other communications about Plaintiff that were exchanged between management, the EEO office, the Human Resources office, etc. about the removal action after she was terminated and up to the present time; any issues about her alleged performance and conduct leading up to the removal action, but which were documented or communicated about more than one month after she was removed; and discussions

[8] In Title VII cases, plaintiffs have been permitted a very broad scope of discovery, extending to documents and information pertaining to so-called workforce data, i.e., information regarding non-party employees in plaintiff's workplace. See Minority Employees at NASA (MEAN) v. Beggs, 723 F.2d 958, 962 (D.C. Cir. 1983) ("It is well established that statistical data and comparative information concerning an employer's treatment of minorities is relevant evidence in an individual discrimination claim against that employer."); see also Forman v. Small, 271 F.3d 285 (D.C. Cir. 2001) (citing MEAN); Miller v. Poretsky, 595 F.2d 780, 790-91 (D.C. Cir. 1978) (recognizing that acts of discrimination against non-party tenants may be admissible to show a pattern of discrimination by landlord); White v. U.S. Catholic Conference, 1998 WL 429842 (D.D.C. May 22, 1998); Planells v. Howard Univ., 1983 WL 30372 (D.D.C. Jan. 25, 1983). In cases involving discrimination, where such claims, by necessity, require discovery on how others are treated, discovery "should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct." Hardrick v. Legal Services Corp., 96 F.R.D. 617, 618-19 (D.D.C. 1983).

about her EEO activity, gender, age, EEO complaint and/or civil Complaint more than one month after she left the Bank, etc. All of that information is entirely relevant and discoverable in this case.

Moreover, the younger male comparators (Charles Barnett, William Hess and Brian Sant Angelo) continued to work at the Bank for a while after Plaintiff was removed and, therefore, their performance and conduct and how management treated them after she left is relevant for a showing of pretext. Additionally, Plaintiff contends that a fourth male (Ricardo Michel) was hired to replace her position at the Bank.

Given the fact that there is not a significant period of time between the date Plaintiff was removed from the Bank through the present time (i.e., a two and a half year period) and the period at issue has been deemed to be reasonable if not a shorter amount of time in other precedent in this Court, her requests for responsive information through the present time are entirely reasonable and all of the responsive information from the Bank should be provided to her. Moreover, Defendant has already provided some limited piecemeal documentation with dates through 2006. Defendant should not be able to pick and choose which records it wants to release for information sought through the present time. Accordingly, Defendant should be ordered to search for and produce all of the information in response to Plaintiff's requests through the present date without any further delay.

2. Defendant's Objections That The Information Sought On The Managers In Her Supervisory Chain of Command Are Unsupported.

Defendant has refused to provide any information in response to Interrogatory No. 3 and Document Requests Nos. 22 and 23 (complaints and grievances, etc. filed by other employees against four managers in her chain of command, to include the two responsible management officials). Defendant also refused to provide any responsive information with regard to the request for other

records maintained on those managers, such as their personnel files (Document Request Nos. 9, 20-21).

The primary grounds of the Defendant's objections are that: the information sought is not relevant to the claims and defenses in this case because the conduct of the managers in Plaintiff's supervisory chain of command are not at issue; disclosure of such information would violate the privacy of those individuals; and some of those requests were "vague, ambiguous and overly broad with regard to "pertaining to their performance and/or conduct." Plaintiff contends that Defendant's objections are not supported and the information requested on the four identified managers in her supervisory chain of command are relevant and discoverable in this case.

It is well-established that other acts of discrimination or retaliation by an employer similar to the discrimination or retaliation charged are admissible to show an employer's motive or intent in a separate case. See Fredrick v. District of Columbia, 254 F.3d 156, 158-59 (D.C. Cir. 2001) (evidence that a supervisor had conducted other duties in a racially biased fashion was probative of whether supervisor's present action was motivated by racial discrimination); Miller v. Poretsky, 595 F.2d 780, 784-85, 788-96 (D.C. Cir. 1978) ("past acts of racial discrimination [are] relevant to prove [defendant's] motive in his actions towards [a different complainant]," notwithstanding "the risk of time-consuming collateral inquiries"); Coles v. Perry, 217 F.R.D. 1, 9-10 & n. 5 (D.D.C. 2003) (applying this same principle to retaliation cases).

As Title VII cases are considered by the Court to be particularly hard to prove in the absence of a proverbial smoking gun, such as a discriminatory comment made by a hiring official, discovery in these cases is necessarily broad. Mitchell v. National R.R. Passenger Corp., 208 F.R.D. 455, 459 (D.D.C. 2002). Limits on discovery as to scope, time, and geography must be carefully constructed

and premised on the notion that plaintiffs have a right to seek discovery on similarly motivated discriminatory acts if it is likely that a finder of fact would conclude that those other acts are probative of the intention or motivation of which the plaintiff has complained. Id. citing Johnson v. The Washington Times Corp., 208 F.R.D. 16, 19-20 (D.D.C. 2002); see also White v. U.S. Catholic Conference, No. CIV.A. 97-1253, 1998 WL 429842, at *5 (D.D.C. May 22, 1998) ("[E]vidence of other acts of discrimination or retaliation charged have been admitted to show, for example, motive or intent."). If it is determined by the finder of fact that an individual once acted in a discriminatory fashion, the finder of fact may infer that the individual acted in the same fashion, with the same motive, when presented with a similar situation. Johnson v. The Washington Times Corp., 208 F.R.D. at 19-20 (citing Miller v. Poretsky, 595 F.2d 780, 788 (D.C. Cir. 1978)); Morgan v. Fed. Home Loan Mortgage Corp., 197 F.R.D. 12, 16 (D.D.C. 2000).

Furthermore, the information on the performance and conduct of responsible management officials and others in their supervisory chain of command in particular is considered relevant and discoverable for the purposes of impeaching the credibility of those witnesses. Witnesses can be impeached by prior bad acts that bear on their honesty. Fed. R. Evid. Rule 608(b). Additionally, prior bad acts indicating a discriminatory or retaliatory intent may be admissible in Plaintiff's direct case. Waters v. U.S. Capitol Police Board, Civil Action No. 01-920 (RMC/JMF) (D.D.C. May 6, 2003) (ordering Defendant to produce from the managers' personnel files any information suggesting that the person acted in a dishonest manner, gave an untruthful statement, or engaged in racially discriminatory or retaliatory behavior, and any documents that shows a pay raise, bonus, or promotion within six months of those people giving a statement to anyone about the events at issue in that case).

Defendant's objections to Plaintiff's discovery requests at issue in this case are not valid. It was the conduct of the Bank's management that led her to file an EEO complaint. If those Bank managers were counseled or disciplined for their treatment of other employees who are female or older or who engaged in EEO activity or opposed discrimination, this could demonstrate motive, as well as a pattern of disparate treatment to support the theories of her case. Moreover, if members of her management were recognized for their performance on projects that Plaintiff also provided support, this would be relevant to support her claims of harassment,[9] as well as to rebut the government's non-discriminatory explanation for its actions.

Defendant's objection based on the privacy interests of the four Bank managers is unsupported because the parties entered into a stipulated protective order, which allows for the release of any sensitive information about them and others in this case.

Defendant claims that the terms "performance and/or conduct" is overly vague, ambiguous and overly broad so that it is unable to provide any responsive information to the Request. In order to make the requests more specific, Plaintiff notified Defendant that she is seeking information in which any or all of those four managers were complimented or rewarded about their performance, or were counseled or disciplined for any misconduct. See Motion Ex. 11. Therefore, Defendant's objection on that separate ground is likewise unsupported.

With regard to other complaints and grievances filed against the four managers in Plaintiff's supervisory chain of command (Document Requests Nos. 22-23), this Court has held that other claims of discrimination against a defendant are discoverable if limited to the same form of discrimination claimed by the plaintiff, if limited to the same department or agency where the plaintiff

---

[9] See, e.g. Complaint at ¶¶ 5, 20, 41-43, 46.

worked, and if limited to a reasonable time before and after the discrimination complained of. Mitchell v. Nat'l R.R. Passenger Corp., 208 F.R.D. 455, 460-61(D.D.C. 2002); Pleasants, 208 F.R.D. at 12-13; Childers v. Slater, 1998 WL 429849, at *3-4 (D.D.C. May 15, 1998); White v. U.S. Catholic Conference, 1998 WL 429842, at * 5 (D.D.C. May 22, 1998). Plaintiff has confined the scope of her requests in this case by specifying the specific managers who may be the subject of any complaints or grievances; narrowed the time frame of the large majority of her requests from August 1, 2004 to the present; and narrowed the subject of the complaints to "basis of discrimination on the basis of gender, age or reprisal." Accordingly, Plaintiff's requests for information on other complaints and grievances is reasonable and relevant.

For all of these reasons, Defendant should be compelled to answer, in full, to the discovery requests noted above.

3. Defendant's Objections On The Ground That Plaintiff's Requests Seek Information Unrelated To the Subject Matter Of This Action and Are Irrelevant Is Also Not Supported.

Defendant raises its objections on the grounds of relevance or the vagueness of the requests in response to a number of Plaintiff's written discovery requests. Plaintiff contends that the relevancy objection by Defendant is unwarranted because all of the information she has requested pertains to or concerns the various claims in her EEO complaint and in her civil court Complaint. Moreover, since Plaintiff's civil Complaint includes a separate basis of harassment for the treatment that she was subjected to and which culminated in her removal (see ¶¶ 40-58 of her civil Complaint), her requests for various information related thereto are reasonably calculated to lead to admissible evidence in support of her claims. In order to deal with Defendant's objections on the basis of the requests being overly vague, Plaintiff clarified those particular requests for Defendant. See Motion Ex. 11. Still,

despite the fact that these two issues were brought to Defendant's attention several months ago, no additional responses were provided.

In response to Interrogatory #24 (seeking information on communications that the two responsible management officials had with other specific people or offices at the Bank regarding locating and/or selecting a Business Development Specialist/Officer(s) at any time after Plaintiff's removal), Defendant objected that the information sought was not relevant to the claims or defenses of either party. However, Plaintiff disputes this objection because the subject of the Interrogatory supports her claims of disparate treatment and retaliation. If any male business development specialists were hired after she was removed (specifically, Ricardo Michel, who was indeed hired to replace Plaintiff, as evidenced by at least one of the documents that Defendant provided to Plaintiff during discovery), this may support a showing of discriminatory and/or retaliatory animus and motive to replace her with a younger male. As such, if there is any other responsive information that is being withheld because of the objections, Plaintiff believes that she is entitled to receive it.

In response to Document Request #10 (information by and/or between various specified people and offices from August 1, 2004 to the present pertaining or relating to Plaintiff's contact with the agency's EEO office, her initiation of EEO counseling, her formal EEO complaint, the investigation of her EEO complaint, and/or her civil Complaint and litigation in federal district court), Defendant objected in part on the grounds that the request was "overly vague." Plaintiff contends that Defendant's objection is unsupported because Plaintiff's complaints of discrimination have been described in detail in her formal EEO complaint, two EEO affidavits, in the agency's report of investigation, and in her civil Complaint. As such, Defendant has been on notice of what those

specific complaints were and how they were made in order to search for and produce responsive information, and this should not serve as the basis for refusing to answer this Request in whole.

In response to Document Request #24 (requesting various records by and/or between specified people and offices pertaining to any alleged complaints, criticisms, problems or accolades about Plaintiff's job performance and/or conduct while she was employed by the agency), Defendant objected in part on the ground that the request was "overly vague." However, the Request is clear on its face in that it seeks any information that managers, human resources, the EEO office and others created and/or exchanged about her EEO activity for the purposes of supporting her claims of gender and age discrimination and especially reprisal.

In response to Document Request #30 (requesting various records by and/or between specified people and offices in which any and all work and other opportunities to support of any of the Bank's Directors on the Board of Directors and/or their staff were proposed or assigned to Plaintiff, Mr. Barnett, Mr. Hess, Mr. Sant Angelo, and/or any other Business Development Specialist/Officer at any time from August 1, 2004 to the present), Defendant objected on the ground that the Request is "overly vague." However, in November 2007, Plaintiff clarified the Request and informed Defendant that the intent of Plaintiff's request was to solicit documents regarding any assignments or other opportunities that were proposed for or assigned to Plaintiff and the others identified above to provide direct services to the members of the Banks' Directors on the Board of Directors and/or the Directors' immediate staff. Accordingly, although this should have served as adequate clarification of the information sought in order to render a more complete response, no additional information was furnished to Plaintiff.

Accordingly, for the forgoing reasons, Plaintiff contends that Defendant should provide any responsive information that may have been withheld because of those two specific objections raised by Defendant.

D. If Any Information Is Being Improperly Withheld Pursuant To the Attorney-Client Privilege or Work Product, Then It Should Be Produced to Plaintiff.

In a number of Defendant's responses to Plaintiff's discovery requests, Defendant objected to the requests on the basis of attorney-client privilege and work product. At issue in this Motion, specifically, is Defendant's responses to Interrogatory No. 22 (communications by and/or between various specified people and offices about the decision to terminate Plaintiff's employment with the Bank); Interrogatory No. 23 (communications by and/or between various specified people and offices announcing and/or commenting upon Ms. Plaintiff's proposed or actual departure from the agency); Document Request No. 6 (produce the complete file and any and all other records that various specified people and offices created and/or maintained on Plaintiff's initial contact with the EEO office, her informal EEO complaint, her formal EEO complaint, the investigation of her formal EEO complaint, and/or her civil court complaint); Document Request No. 14 (produce a complete copy of any and all information, documents, communications, and/or complaints by and/or between various people and offices relating to Plaintiff's performance and/or conduct); Document Request No. 24 (produce a complete copy of any and all information, documents, communications, and other records made to or from, by and/or between various specified people and offices relating or pertaining to any alleged complaints, criticisms, problems or accolades about Plaintiff's job performance and/or conduct while she was employed by the agency); and Document Request No. 48 (produce a copy of any and all additional witness statements, documents and/or other records relating to any of the

allegations or claims in Plaintiff's EEO complaint that are not included in the Bank's EEO report of investigation, including but not limited to, any witness statements that were produced from any other inquires or investigations that have been conducted by any agency office relating to any of the allegations or claims in Plaintiff's EEO complaint and any and all other documents or records collected from any witnesses that has not been included in the report of investigation). Defendant did not provide any privilege log in support of its objections to those Requests on the grounds of attorney-privilege and work product.

Plaintiff followed-up with Defendant on those particular requests and advised that "We remind the government that if any communications were made by and/or between any of the individuals identified above without the inclusion of the government's counsel, then they are not protected by the attorney-client privilege or work product and Plaintiff is entitled to that information. As such, that responsive information should be provided to Plaintiff in response to her request." See Motion Ex. 11. In the same vein, Plaintiff stated her observation that:

> One particular thing we noticed is that there is little in the way of any responsive information provided with regard to any emails, memoranda, and other documents that were prepared by and/or exchanged between Plaintiff's immediate supervisor (Mr. O'Connor) and second level supervisor (Mr. Forgione) regarding the various alleged concerns that they had about her alleged performance and/or conduct. The same equally applies to any responsive documents that were exchanged by Mr. Forgione, Mr. O'Connor and any other person in their management chain, the EEO office, Human Resources, and/or anyone else about Ms. Nuskey's performance, conduct and/or complaints against her management. All of this information would be responsive to many of the requests above and if there are any such documents in existence, it should be provided to Plaintiff.

Id. at p. 31.

To date, Defendant has produced no additional information in response to those requests and has continued to rely upon the attorney-client privilege and work product objections and has not provided a privilege log as requested. Moreover, because Defendant has not indicated that any such information identified by Plaintiff is not available, Plaintiff continues to believe that Defendant may be withholding relevant information that is responsive to her discovery requests.

Asserting the attorney-client privilege and work product does not exempt Defendant from complying with the request in its entirety. Defendant was required to submit a privilege log itemizing these documents to Plaintiff, which was not done in this case. Fed. R. Civ. Pro. 26(b)(5); First Am. Corp. v. Al-Nahyan, 2 F.Supp.2d 58, 63 n. 5 (D.D.C. 1998). As such, Plaintiff requests that this Court compel Defendant to either provide the responsive non-privileged information to her, or to submit a privilege log for these particular requests. Alternatively, Plaintiff requests that this Court order Defendant to submit all documents as to which a privilege is claimed in response to the requests identified above, to chambers for an in camera review. See Mitchell v. National R.R. Passenger Corp., 208 F.R.D. 455, 461 (D.D.C. 2002).

E. All of the Specific Information Sought On Plaintiff's Comparators Should Be Produced to Plaintiff.

Although Defendant initially objected to producing any information on the four comparators because it contends that they are not similarly situated to Plaintiff,[10] Defendant eventually provided

---

[10] Plaintiff disagrees with Defendant's contention because all four males had the same position title, worked in the same department, reported to the same second level supervisors (and in some cases also reported to the same first level supervisors as Plaintiff at different points in time), and all were required to serve a probationary period (Plaintiff and three of the younger males were hired at the same time and served their probationary period simultaneously, while the fourth younger male – Ricardo Michel – was hired to replace Plaintiff and also had to serve a probationary period). Even so, Defendant applied the wrong standard for producing its discovery responses on the younger comparator males. The standard is as follows:

Plaintiff with some limited information that the agency has maintained on them, such as their OPF's and a limited number of emails about their performance or conduct. However, Plaintiff believes that it may be likely that Defendant did not provide additional information that was sought on them pursuant to Document Requests Nos. 15-17, such as any and all information maintained on them through the present time regarding: (1) human resources, personnel and/or informal/formal supervisory files maintained on the four of them; (2) counselings and admonishments for their performance or conduct; and (3) any communications about problems or complaints about their performance or conduct by and/or between specified people and offices at the Bank.

In Title VII cases, plaintiffs have been permitted a very broad scope of discovery, extending to documents and information pertaining to so-called workforce data, i.e., information regarding non-party employees in plaintiff's workplace. See Minority Employees at NASA (MEAN) v. Beggs, 723 F.2d 958, 962 (D.C. Cir. 1983) ("It is well established that statistical data and comparative

---

> While a Title VII prima facie case must, in this Circuit, be based on a demanding standard of near identity between the plaintiff's situation and the situation of the person to whom she compares herself to, it does not follow that a Title VII plaintiff must meet this standard as a condition of securing discovery. That would require a plaintiff to square the circle by having to establish, for example, that her situation is nearly identical to that of other employees in order to discover whether her situation is sufficiently similar to that of other employees to make out a prima facie case of racial discrimination. Imposing such a requirement on a Title VII plaintiff thus obliterates the difference between relevant evidence and "relevant information" that Fed.R.Civ.P. 26(b)(1) creates. Evidence that the defendant treated persons similarly situated differently may be relevant evidence of racial discrimination. Information that may permit such a comparison is "reasonably calculated to lead to the discovery" of relevant evidence. Fed.R.Civ.P. 26(b)(1) permits the discovery of both. Therefore, the standard is not whether the information sought pertains to a situation that is identical to plaintiff's situation, but whether it is reasonably calculated to yield information that would permit the plaintiff to argue the dissimilar treatment of the two situations is evidence of discrimination.

Waters v. U.S. Capitol Police Board, 216 F.R.D. 153, 158 (2003).

information concerning an employer's treatment of minorities is relevant evidence in an individual discrimination claim against that employer."); see also Forman v. Small, 271 F.3d 285 (D.C. Cir. 2001) (citing MEAN); Miller v. Poretsky, 595 F.2d 780, 790-91 (D.C. Cir. 1978) (recognizing that acts of discrimination against non-party tenants may be admissible to show a pattern of discrimination by landlord); White v. U.S. Catholic Conference, 1998 WL 429842 (D.D.C. May 22, 1998); Planells v. Howard Univ., 1983 WL 30372 (D.D.C. Jan. 25, 1983). In cases involving discrimination, where such claims, by necessity, require discovery on how others are treated, discovery "should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct." Hardrick v. Legal Services Corp., 96 F.R.D. 617, 618-19 (D.D.C.1983).

Since Plaintiff is required to show that she was treated differently than other similarly situated employees as part of her prima facie case for gender and age discrimination, Defendant should be compelled to produce the documents requested on the identified younger male comparators without further delay.

## III. CONCLUSION

For all of the foregoing reasons, which constitute good cause, this Motion should be granted and the agency should be compelled to respond to Plaintiff's written discovery requests in full. Additionally, Defendant should be ordered to pay for the attorney's fees and costs that Plaintiff has incurred to prepare and file this Motion pursuant to Fed. R. Civ. Pro. Rule 37(a)(5).

Respectfully submitted,

/s/ Diana J. Veilleux
D.C. Bar No. 418292
Dveilleux@shawbransford.com
/s/ Lisa A. Bernstein
D.C. Bar No. 466215
lbernstein@shawbransford.com
/s/ Ralph C. Conte
D.C. Bar No. 447022
rconte@shawbransford.com
Shaw, Bransford, Veilleux & Roth, P.C.
1100 Connecticut Avenue, N.W., Suite 900
Washington, D.C. 20036
Telephone: (202) 463-8400
Facsimile: (202) 833-8082

Counsel for Plaintiff