UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHARON L. NUSKEY,

Plaintiff,

v.

JAMES H. LAMBRIGHT,
CHAIRMAN AND PRESIDENT,
EXPORT-IMPORT BANK OF
THE UNITED STATES,

Defendant.

Civil Action No.: 06-1573 (PLF)

Judge Paul L. Friedman/
Magistrate Judge John M. Facciola

DECLARATION OF LISA A. BERNSTEIN

I, Lisa A. Bernstein, declare as follows:

1. I am an associate attorney of the law firm of Shaw, Bransford, Veilleux & Roth, P.C. in Washington, D.C. and am one of the counsel for Plaintiff, Sharon L. Nuskey, in addition to Diana J. Veilleux and Ralph C. Conte, a partner and associate of the law firm respectively, in the above-captioned case.

2. By email on Wednesday, September 19, 2007, Mr. Burch asked me if Plaintiff would object to an extension until Thursday, October 11, 2007 for Defendant to respond to Plaintiff's written discovery requests because the Bank's counsel needed time to review the responses that he received from various agency personnel. By email on Friday, September 21, 2007, I informed Mr. Burch that Plaintiff did not object to his request, but noted that she would appreciate it if Defendant could in any way get its discovery responses to her sooner because of the approaching date for the close of discovery, which at that time was Tuesday, November 6, 2007.

3. On Thursday, October 11, 2007, I received Defendant's initial discovery responses by courier.

4. Between July and October 2007, Mr. Burch and I exchanged numerous proposed drafts of the supplemental Local 16.3 report as it pertained to Electronically Stored Information ("ESI") since it was not included in the initial report filed with the Court. Within that same time frame, we discussed various issues relating to the ESI supplemental report by email and telephone. However, we reached an impasse with regard to certain key terms of the ESI language, particularly relating to the duration of the time period of the ESI at issue to be produced this case. While Plaintiff seeks and believes that she is entitled to ESI from the date of her hire at the U.S. Export-Import Bank (Wednesday, August 9, 2004) through the present time, Defendant believes that the ESI period should end one month after her termination on Friday, May 20, 2005 (i.e., Defendant will not produce any documents post-dating June 2005).

5. The other primary dispute regarding the ESI supplemental 16.3 report concerns the claw-back provision that Defendant has proposed for inclusion in the report. This relates to any documents that Defendant has produced, but later requests that they be returned because it decides that they are covered by a privilege. It is Plaintiff's position that this particular provision should mirror Fed. R. Civ. Pro. Rule 26, while Defendant contends that the provision should alter that Rule by eliminating her ability to object to any of its requests for the return of any documents in her possession and eliminating the ability for the Court to intervene to resolve any dispute. By following Defendant's logic, not only would Plaintiff unreasonably give up such a right to object provided by the Rule, but it could also potentially interfere with our ethical obligations under the D.C. Rules of Professional Conduct. Because this additional dispute has not been resolved, the

parties have been unable to finalize and file their supplemental LCvR 16.3 report with the Court.

6. A third major discovery dispute at that time concerned the depositions of April Foley and Linda Conlin, and the parties required the intervention of the Court to resolve that particular issue as well.

7. Between Friday, October 12 and Tuesday, October 16, 2007, Mr. Burch and I called Judge Friedman's chambers to schedule a discovery conference with him because of the aforementioned discovery disputes and pursuant to the Court's July 9, 2007 Scheduling Order. One of the Judge's law clerks, Caroline Platt, took the messages from the parties' counsel.

8. On Tuesday, October 23, 2007, Mr. Burch and I called Judge Facciola's chambers to bring the unresolved discovery disputes to his attention pursuant to the Court's July 9, 2007 Scheduling Order. One of Judge Facciola's law clerks that we spoke to asked for a summary of those issues, which we provided to her. The law clerk indicated that she would brief Judge Facciola on the issues so a determination could be made on how to proceed.

9. On Wednesday, November 7, 2007, Defendant served its additional documentary discovery responses that were being withheld subject to the Protective Order. I received those discovery responses on November 8, 2007.

10. Upon receipt of Defendant's two batches of discovery responses, Plaintiff and I reviewed them to determine whether or not they were complete and fully responsive to her discovery requests. This was not only necessary for that particular purpose, but also because Plaintiff wanted to ensure that she had all of the responsive discovery that she would need to assist with preparing for and taking the ten depositions that she noticed in this case.

11. We ultimately determined that a number of Defendant's discovery responses were deficient and that a variety of its objections were unsupported. Consequently, I prepared and served a 31 page letter on Defendant on Tuesday, November 27, 2007 that described in detail why Plaintiff believed that Defendant's written responses may have been or were in fact deficient and why Defendant's objections were unsupported.

12. On Monday, December 10, 2007, Plaintiff I Defendant's written response to Plaintiff's November 27th letter.

13. Because the large majority of disputes still remained after Mr. Burch and I exchanged correspondence over discovery in this matter, I scheduled a discovery teleconference with Mr. Burch in another effort to resolve the outstanding issues pursuant to LCvR 7(m). Mr. Burch was amenable to the conference, which was scheduled by telephone on the afternoon of Thursday, December 20, 2007.

14. The said telephone conference was held, as scheduled, on the afternoon of Thursday, December 20, 2007. During the telephone call, I addressed a number of items addressed in Mr. Burch's letter of December 10, 2007. Some of the issues that I raised during this call were resolved at a later time, and for the purposes of this Motion, those other issues are not described herein.

15. With regard to Defendant's continuing objection to the subject time frame of Plaintiff's discovery requests (page one of Mr. Burch's letter), I reasoned that Plaintiff was employed by the Bank for a total of 10 months (not the eight months cited in his letter) and that the time frame at issue for the discovery requested in many of her requests is only for approximately 2 ½ years after she was terminated, which is not an unreasonable length of time as

Defendant claimed. I also reiterated that the discovery sought during that time period was relevant because: (1) there could be information that is responsive to Plaintiff's discovery requests through the present time regarding her employment at the Bank, such as emails and other communications about Plaintiff that were exchanged between management, the EEO office, the Human Resources office, etc. about the removal action after she was terminated and up to the present time; any issues about her alleged performance and conduct leading up to the removal action, but which were documented or communicated about more than one month after she was removed; and discussions about her EEO activity, gender, age, EEO complaint and/or civil Complaint more than one month after she left the Bank, etc.; (2) Plaintiff understood that the younger male comparators (Charles Barnett, William Hess and Brian Sant Angelo) continued to work at the Bank for a while after Plaintiff was removed, and a fourth younger male comparator (Ricardo Michel) was hired to replace Plaintiff. Therefore, their performance and conduct and how management treated them after she left is relevant for a showing of pretext; (3) since Plaintiff is claiming damages, especially in the form of backpay and frontpay, the complete records in younger male comparators' Official Personnel Folders through the present time are relevant for the purposes of making that showing, and Plaintiff's retained expert will be unable to prepare and submit a comprehensive report to Defendant on her estimated calculation of front pay without receiving information on the career progression of Plaintiff's comparators.

16. In response, Mr. Burch reiterated that the Bank conducted a computer search only through June 2005 (even though Plaintiff's requests were for information through the present time), and that it would be an undue burden for the Bank to conduct a second search for July 2005 to the present. He offered for the Bank to conduct the computerized search as long Plaintiff

bore the costs. I told Mr. Burch that Plaintiff was unwilling to do that because the scope of her request was reasonable and was initially made at the time of her written requests, even though Defendant chose on its own volition to conduct a search for a shorter period of time.

17. In response to Defendant's objection to Plaintiff's request for information on the performance and conduct of the younger comparator males (page two of Defense counsel's letter), I told Mr. Burch that Plaintiff's "need for post-termination discovery on Plaintiff's male colleagues' performance" was relevant because the two responsible management officials in this case (C. Michael Forgione and Craig O'Conner) indicated in their EEO affidavits that there several issues allegedly arose about her performance during her employment, such as her work on the Bucharest, Romania conference held in 2004. Additionally, those same issues are noted in Defendant's response to Interrogatory No. 8. Therefore, this could support that the Bank has provided shifting reasons for her termination, which could support a showing of pretext. Mr. Burch stated that he would look into that and would get back to me.

18. With regard to Defendant's specific objection to Plaintiff's various requests that sought information on the performance and conduct (including any complaints filed) of the four managers in her supervisory chain of command, I told Mr. Burch that the information sought is relevant to her claims because it may show a pattern of discrimination against present or former Bank employees who are female, over the age of 40 years old, and/or who may have engaged in protected EEO activity or opposed discrimination in order to support her own claims. Mr. Burch expressed his disagreement during the discovery teleconference and said that Defendant's position remained unchanged.

19. Also during the parties' discovery teleconference, I raised the issue of the Local Rule 16.3 Joint Report on ESI that has been in draft form for many months because negotiations have failed and the parties have been unable to come to an agreement on those provisions. One of the primary disputes involving ESI is also at issue with Defendant's discovery responses, i.e., that Defendant contends that the time frame that is the subject of Plaintiff's discovery requests is overly broad. Mr. Burch and I agreed that this particular issue overlapped with Defendant's objections to Plaintiff's written discovery requests and, therefore, we deferred to our other communications. The parties' positions on this issue remained the same and could not be resolved.

20. Also discussed during the telephone call was Defendant's prior objection to the depositions that Plaintiff noticed for Ambassador Foley and Ms. Conlin. Plaintiff noticed their depositions because each of them provided affidavits with relevant personal information about her EEO complaint during the agency's EEO investigation and they were included in the Bank's report of investigation on Plaintiff's EEO complaint. Plaintiff did not have the right to cross-examine these two witnesses during their EEO interviews. Even though they provided relevant evidence with their personal experience working with Plaintiff that corroborated her claims of discrimination and reprisal that bolstered her formal EEO complaint, because Ambassador Foley and Ms. Conlin are considered to serve in high level managerial positions, Plaintiff thought it was appropriate to notice their depositions rather than to contact them directly herself. During our discovery teleconference, Mr. Burch stated that Defendant's objection to the two depositions continued based on its reasons provided in its previous written correspondence, but that Defendant might be willing to consider an alternative method to elicit evidence, such as written

interrogatories directed to the two witnesses. I responded that Plaintiff would consider this option, but it would be likely unfeasible because the two witnesses' responses would likely be filtered and/or edited by Defendant and its counsel and would not be productive for Plaintiff. Additionally, I stated that written discovery requests would likely only serve to delay the discovery process and case proceedings if any follow-up questions were necessary.

21. At the conclusion of the discovery teleconference, Mr. Burch said that he would follow-up with the Bank's counsel about the various issues that were discussed, and that he would contact me on Friday, December 22, 2007 about any response that he had. Because he would be on leave from work through Thursday, January 3, 2007 and the Bank's counsel would also be on leave during that same time frame, Mr. Burch stated that he planned to provide me with any supplemental response by Friday, January 5, 2007.

22. Mr. Burch emailed me on Thursday, December 21, 2007 to provide a preliminary response to some of issues concerning Defendant's responses that we discussed during our discovery conference. Mr. Burch indicated that a more complete response would follow at a later time.

23. On Thursday, January 3, 2008, Defendant served additional discovery responses on Plaintiff, which it considered to be the remainder of its responses to her Requests for the Production of Documents. After having an opportunity to review those additional discovery responses, I emailed Mr. Burch on Monday, January 7, 2008 to follow-up on a number of items relating to Defendant's document responses that still appeared to be outstanding. Mr. Burch replied to the email on January 8, 2008, and noted that responsive non-privileged documents in response to those particular requests had already been produced, and that other documents were

being withheld pursuant to the Defendant's objections to Plaintiff's discovery requests. In response to my request, he also indicated that Defendant opposed Plaintiff's filing of a motion to compel the outstanding information in dispute from Defendant.

24. The Scheduling Order issued by Judge Friedman requires the parties to arrange a teleconference with the Court for any outstanding discovery disputes prior to filing a motion to compel. On Tuesday, January 8, 2008, I called Magistrate Judge Facciola's chambers and spoke to one of his law clerks, Mr. Jared Hosed, to advise him that while the parties have resolved some of their discovery disputes, other disputes still remained outstanding. I told Mr. Hosed that we intended to prepare and file a motion to compel for Plaintiff unless Magistrate Judge Facciola directed otherwise. Mr. Hosed stated that we could proceed directly by preparing and filing her motion without the need of holding a discovery conference with the Judge in advance of the filing.

25. After exchanging additional emails about a number of other outstanding issues regarding Defendant's discovery responses, I arranged a teleconference call with Mr. Burch on the morning of Wednesday, January 23, 2008 in a last chance effort to resolve several of the global discovery disputes. I advised Mr. Burch that while I was conducting legal research for Plaintiff's Motion to Compel, I had found a number of Court decisions that supported Plaintiff's position on Defendant's general objections to Plaintiff's discovery requests and to Plaintiff's notice of the depositions of Ambassador Foley and Ms. Conlin. I provided Mr. Burch with a sampling of the seminal cases that supported her position, and asked if Defendant would reconsider its objections prior to the filing of her Motion by the close of business on that same day. Mr. Burch stated that he would look into those cases and would try to get back to me by the

end of the day.

26. As of the finalization of this Motion (5:00 p.m. on Wednesday, January 23, 2008), I did not hear back from Mr. Burch regarding the issues that I raised for his consideration in our call earlier today. This motion then was necessary to be filed because my attempts to resolve all of the outstanding discovery disputes were not fully accomplished.

I hereby certify that I have read the foregoing and declare, under penalty of perjury, that it is true and correct to the best of my knowledge and belief.

Executed this 23rdday of January, 2008.

Lisa A. Bernstein