UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHARON L. NUSKEY, Plaintiff, | ) | Civil Action No.: 06-1573 (PLF) |
| v. | ) | Judge Paul L. Friedman |
| JAMES H. LAMBRIGHT, CHAIRMAN AND PRESIDENT, EXPORT-IMPORT BANK OF THE UNITED STATES, Defendant. | ) | Dated: August 24, 2007 |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

Plaintiff, Sharon L. Nuskey, by and through her undersigned counsel, hereby submits her First Set of Interrogatories, pursuant to Fed.R.Civ.P. Rule 33 and the Court's Scheduling Order, dated Monday, July 9, 2007. The Export-Import Bank of the United States ("Ex-Im," "Bank," or "agency") should serve its written responses, signed under oath by the individual(s) with personal knowledge of the facts that constitute the substance of the responses, to the law offices of Shaw, Bransford, Veilleux & Roth, P.C. within thirty (30) calendar days of receipt of this discovery request.[1]

## DEFINITIONS AND INSTRUCTIONS

1. These Interrogatories are continuing in nature, so as to require that the responses provided be updated and supplemented as new or additional information is discovered by the

---

[1] Since these written discovery requests are being served to the agency by regular mail and by email, this means the agency's written answers to Plaintiff's Interrogatories are due on or before Monday, September 24, 2007 (The actual 30th calendar day is on Sunday, September 23, 2007, and the following business day is on Monday, September 24, 2007).

agency.

2. "Identify," where the name or identity of a person is requested, means the full name, gender, age, current title, grade and step level, office, current business address, work/cell telephone(s) number and email address(es), if known. If the person is no longer employed by the agency, please provide the last known home address and telephone number(s) for that person.

3. The term "you" or "agency" refers to the Export-Import Bank of the United States, its Chairman and President, agents, including the agency and its divisions, departments, subsidiaries (including but not limited to the International Business Development Division ("IBD")), affiliates, predecessors, employees and representatives, and all other persons acting or purporting to act on the agency's behalf.

4. As used herein, the term "person" or "persons" means natural persons, institutions, proprietorships, corporations, partnerships, joint venturers, groups, associations and organizations, committees, federal, state and local, quasi-governmental or independent agencies, departments or committees, and/or trusts of any other entity.

5. As used herein, "and" and "or" shall be considered conjunctively or disjunctively as necessary to make these Interrogatories inclusive rather than exclusive.

6. As used herein, "any" and "all" shall each be considered to mean "any and all" as necessary to make these Interrogatories inclusive, rather than exclusive.

7. As used herein, "documents" and/or "records" means any written, recorded or graphic matter, however stored, produced or reproduced, and whatever the medium on which it is stored, produced or reproduced, whether on paper, cards, punch cards, print sheets, tapes,

disks, belts, charts, files, film, fiche, videotapes, applications, computer hard drives or servers, e-mail or by other electronic means, USB/thumb drives, cds, handheld/personal information managers, blackberry devices, databases, spreadsheets, graphic files, word processing data, emails, attachments, metadata, tapes or printouts, backup, tape recordings, phonograph records, cassettes or other types of voice recordings or transcriptions (including but not limited to voice mail), pictures, photographs, slides or any other medium, or any other tangible item or thing of readable, recorded or visual material of whatever nature, and any other type of material within the scope of the Federal Rules of Civil Procedure. This instruction should also be read to include copies of each document which varies from the original of such document (i.e., because of handwritten notes, underlining, electronic tracking, meta data, or different versions)) which is in your actual or constructive possession, custody or control. The term "document" and/or record includes, but is not limited to, each and every draft of a document or record in any and every form, whether in hard copy, typewritten, electronic, deleted or otherwise altered, or handwritten.

8. As used herein, the term "application" means a collection of one or more related software programs that enable a user to enter, store, view, modify or extract information from files or databases. The term is commonly used in place of "program," or "software." Applications may include word processors, Internet browsing tools and spreadsheets.

9. As used herein, the term "backup" means to create a copy of data as a precaution against the loss or damage of the original data. Most users backup some of their files, and many computer networks utilize automatic backup software to make regular copies of some or all of the data on the network. Some backup systems use digital audio tape ("DAT") as a storage medium. Backup Data is information that is not presently in use by an organization and is

routinely stored separately upon portable media, to free up space and permit data recovery in the event of disaster.

10. As used herein, the term "deleted data," is data that, in the past, existed on any of the agency's computers or other electronic storage systems as live data and which has been deleted by the computer system or end-user activity.

11. If any document or other record is destroyed, deleted or otherwise missing, then a written explanation for the absence of each and every record or document should be provided, along with a written description of the title and/or subject of the record or document, the author(s), any and/all recipient(s), any and all subsequent exchanges on the record or document (i.e., chain email communications), the date it was created, modified and/or destroyed, and the reason why it was destroyed, deleted or is otherwise absent.

12. As used herein, "communications" means the act or fact of communication, whether by correspondence, telephone, cell phone, voice mail, meeting, telex, wire, email, other electronic/computer means, or any occasion of joint or mutual presence, as well as the transfer or transmission of any document and/or record from one person to another.

13. As used herein, the term "relating to" means and includes: with respect to, referring to, relating to, purporting, involving, concerning, embodying, establishing, evidencing, comprising, connected with, commenting on, responding to, prepared in connection with, prepared as a result of, showing, discussing, describing, analyzing, reflecting, memorializing, presenting or constituting.

14. If any response called for by these Interrogatories is withheld under a claim of privilege, please identify the communication and each person having knowledge of the

communication for which the privilege is claimed and the date(s) upon which the communication occurred, please identify any communication, document or other record containing the information for which the privilege is claimed, a description of the subject matter of the communication, document or other record, the name(s) and address(es) of each person who were privy to the communication and/or viewed the document or other record, and a statement of the basis upon which the privilege is claimed.

## INTERROGATORIES

1. Identify each person who was consulted and/or otherwise assisted in the preparation of the responses to each and every one of these Interrogatories, specifying the Interrogatory response(s) for which each person provided information.

2. Identify each and every person by name, gender, age, date of birth, grade, title, business address and telephone number, who the agency may call as a fact witness and/or expert witness at the hearing on this matter, and/or anyone else who may have any knowledge about the subject matter of Ms. Nuskey's EEO complaint, and provide a detailed synopsis of the expected testimony or knowledge of each and every witness/person and/or the facts upon which the expert opinion is based.

3. Identify any and all informal and formal EEO complaints, civil court complaints or appeals, formal grievances, union grievances, Office of Special Counsel complaints, Office of Inspector General complaints and/or any other complaints that have been filed against Mr. Michael Forgione, Mr. Craig O'Connor, Mr. John Emmens and/or Mr. Jeffrey Miller on the basis of discrimination on gender (including allegations of discrimination based on gender and allegations of sexual harassment), age or reprisal than have been filed from August 1, 2002 to the

present, and for each complaint, state the date it was filed, the nature of the complaint, the disposition of the complaint, and whether or not any disciplinary action was proposed and/or taken against Mr. Forgione and/or Mr. O'Connor in connection with the complaint.

4. Identify each and every communication (verbal, written and/or electronic) from August 1, 2004 to the present that was made to or from or was exchanged by and/or between Mr. Forgione, Mr. O'Connor, John Emens, Jeffrey Miller, Patrease Jones Brown, Ms. Nuskey, Patricia Guzman, Mr. Gregory D'Adamio, other current or former agency managers and employees, members of the agency's EEO and/or Human Resources office, and/or any other person pertaining or relating to Ms. Nuskey's gender and/or age, and state the date, location, participants, whether the communication was verbal, written or electronic, and provide a detailed synopsis of each and every communication.

5. Identify each and every communication (verbal, written and/or electronic) from August 1, 2004 to the present that was made to or from or was exchanged by and/or between Mr. Forgione, Mr. O'Connor, Mr. Emens, Mr. Miller, Ms. Jones Brown, Mr. J.T. McMullen, Ms. Sherry Beyers, Ms. Nuskey, other current or former agency managers and employees, members of the agency's EEO and/or Human Resources offices, and/or any other person pertaining or relating to any aspect of Ms. Nuskey's EEO activity (i.e., Ms. Nuskey's opposition of unlawful discrimination (her complaints of discrimination that she made during her employment to agency management, the agency's EEO and/or Human Resources offices) and/or her engaging in and pursuit of her EEO activity (i.e., her contact with the EEO office, initiating of EEO counseling, her formal EEO complaint, the investigation of her EEO complaint, her civil Complaint and litigation in federal district court)), and state the date, location, participants, whether the

communication was verbal, written or electronic, and provide a detailed synopsis of each and every communication.

6. State in detail each and every reason why the agency selected Ms. Nuskey for the position of Business Development Specialist, GS-1101-11, Step 10, in the International Business Development Division ("IBD") of the Export Group of the agency.

7. State in detail each and every reason why the agency hired Ms. Nuskey with a "Superior Qualifications" rating.

8. Identify in detail any and all communications (verbal, written and/or electronic) from August 1, 2004 to the present that were made to or from, exchanged by and/or between Mr. Forgione, Mr. O'Connor, Mr. Emens, Mr. Miller, Ms. Jones Brown, Ms. Nuskey, other current or former agency managers and employees, members of the agency's EEO and/or Human Resources office, and/or any other person pertaining to any alleged complaints, criticisms, problems or accolades about any aspect of Ms. Nuskey's job performance and/or conduct at any time during her employment at the agency, and state the date, location, participants, whether the communication was verbal, written or electronic, and provide a detailed synopsis of each and every communication.

9. Identify in detail any and all communications (verbal, written and/or electronic) from August 1, 2004 to the present that were made to or from, exchanged by and/or between Mr. Forgione, Mr. O'Connor, John Emens, Mr. Miller, Ms. Jones Brown, any other current or former agency managers and employees, members of the agency's EEO and/or Human Resources office, and/or any other person pertaining to any alleged complaints, criticisms, problems or accolades about any aspect of Mr. Forgione's, Mr. O'Connor's, Mr. Miller's and/or Mr. Emens'

job performance and/or conduct from August 1, 2002 to the present, and state the date, location, participants, whether the communication was verbal, written or electronic, and provide a detailed synopsis of each and every communication.

10. Identify each and every occasion when Mr. Forgione, Mr. O'Connor, and/or any other agency manager counseled (verbal, written and/or electronic) Ms. Nuskey about any issues relating to her performance and/or conduct at any time during her employment with the agency.

11. Identify each and every occasion when Mr. Forgione, Mr. O'Connor, and/or any other agency manager counseled (verbal, written and/or electronic) Mr. Charles Barnett, Mr. William Hess, Mr. Brian Sant Angelo and/or any other Business Development Specialist/Officer hired to work at the Bank from July 15' 2004 to present about any issues relating to his performance and/or conduct at any time from August 1, 2004 to the present, and state the date, location, name of the participants, their gender, age and date of birth, whether the counseling was verbal, written or electronic, and provide a detailed synopsis of each and every counseling.

12. Identify each and every outside IBD departmental meeting and/or staff-wide meeting from August 1, 2004 that Ms. Nuskey, Mr. Barnett, Mr. Hess, Mr. Sant Angelo and/or any other Business Development Specialist/Officer hired to work at the Bank from July 15, 2004 to the present have been invited to and/or attended during their employment with the agency, and for each meeting, state the date, location, participants, subject matter, how and when they were notified of the meeting, and if there were any notes or minutes of the meeting to document the persons who attended those meetings.

13. State in detail how Ms. Nuskey's management believes that it kept her informed about various issues and work that fell within her program area of responsibility during the

course of her employment with the agency.

14. State in detail any and all work assignments and other opportunities that Ms. Nuskey, Mr. Barnett, Mr. Hess, Mr. Sant Angelo and/or any other Business Development Specialist/Officer were given from August 1, 2004 to the present in which he/she was directed to perform work in support of any of the Bank's Directors and/or their staff.

15. State in detail the process of recommending, approving, and/or otherwise assigning travel (international or domestic) opportunities to Business Development Specialists/Officers in the IBD, including but not limited to who initiates such requests, who approves such requests, and making a decision on the proposed cost of the travel.

16. State in detail each and every occasion in which Ms. Nuskey, Mr. Barnett, Mr. Hess, Mr. Sant Angelo and/or any other Business Development Specialist/Officer were either recommended for, invited to or were otherwise assigned to travel (either internationally or domestically) for the agency from August 1, 2004 to the present, and for each travel opportunity, state the date(s) that the employee was notified of the travel, the date(s) when the travel was to take place, the destination(s) of the travel, the purpose of the travel, the person(s) who proposed that the employee travel, the person(s) who approved the travel, the total amount of the cost of the travel, who paid for the travel, and whether all or part of the travel was on official time or if the employee had to use leave.

17. State in detail each and every occasion in which any request or other recommendation for Ms. Nuskey, Mr. Barnett, Mr. Hess, Mr. Sant Angelo and/or any other Business Development Specialist/Officer to travel for bank business (either internationally or domestically) was denied from August 1, 2004 to the present, and for each travel opportunity,

state the date(s) that the employee was notified of the travel, the date(s) when the travel was to take place, the destination(s) of the travel, the purpose of the travel, the person(s) who proposed that the employee travel, the person(s) who denied the travel request, the total amount of the cost of the proposed travel, and a detailed synopsis of why the travel request or recommendation was denied.

18. Identify each and every agency employee who was recommended to attend and/or was approved to attend the Bucharest, Romania Conference in the Fall of 2004, and state the date(s) that the employee was notified of the travel, the purpose of the employee's attendance at the conference, the person(s) who proposed that the employee travel, the person(s) who approved or denied the travel request, the total amount of the cost of the proposed travel, and a detailed synopsis of why the travel request or recommendation was approved or denied.

19. Identify in detail any and all communications (verbal, written and/or electronic) from August 1, 2004 to the present that were made to or from, exchanged by and/or between Mr. Forgione, Mr. O'Connor, John Emens, Mr. Miller, Ms. Jones Brown, any other current or former agency managers and employees, members of the agency's EEO and/or Human Resources office, and/or any other person pertaining or relating to travel that Ms. Nuskey requested, and state the date, location, participants, whether the communication was verbal, written or electronic, and provide a detailed synopsis of each and every communication.

20. Identify in detail any and all additional duties, assignments, professional opportunities, special projects and/or any other career enhancing work that has been offered to or given to Ms. Nuskey, Mr. Barnett, Mr. Hess, Mr. Sant Angelo and/or any other Business Development Specialist/Officer from August 1, 2004 to the present, and state the date it was

offered or assigned, who offered the opportunity or work assignment, the nature of the work, the person(s) who approved or offered the work, and provide a detailed synopsis of each and every reason the work was assigned to the employee.

21. State in detail each and every reason why the agency terminated Ms. Nuskey's employment with the agency, effective May 20, 2005, including but not limited to any and all factual information, documents, and communications (verbal, written and/or electronic) that were referred to, were relied upon, or were otherwise in support of the agency's decision.

22. Identify in detail any and all communications (verbal, written and/or electronic) that were made to or from, by and/or between Mr. Forgione, Mr. O'Connor, Mr. Emens, Mr. Miller, Ms. Jones Brown, Mr. D'Adamio, Ms. Guzman, any other current or former agency managers and employees, members of the agency's EEO and/or Human Resources office, and/or any other person pertaining or relating to the decision of whether to terminate Plaintiff's employment with the agency, and state the date, location, participants, their gender whether the communication was verbal, written or electronic, and provide a detailed synopsis of each and every communication.

23. Identify in detail any and all communications (verbal, written and/or electronic) that were to or from, were exchanged by and/or between, or were otherwise documented by Mr. Forgione, Mr. O'Connor, Mr. Emens, Mr. Miller, Ms. Jones Brown, Mr. D'Adamio, Ms. Guzman, any other current or former agency managers and employees, members of the agency's EEO and/or Human Resources office, and/or any other person from April 1, 2005 to the present announcing and/or commenting upon Ms. Nuskey's proposed or actual departure from the agency, and state the date, location, participants, whether the communication was verbal, written

or electronic, and provide a detailed synopsis of each and every communication.

24. Identify in detail each and every person including, but not limited to management employees, Mr. John Richter, Human Resources employees, recommending officials, selecting officials, applicants (including but not limited to Mr. Ricardo Michel), and/or any other person with whom Mr. Forgione or Mr. O'Connor communicated with concerning or relating to any aspect of locating and/or selecting a Business Development Specialist/Officer(s) at any time after Ms. Nuskey's removal, and provide the date, place, names of the participants, their gender and ages, and a detailed synopsis of the each and every one of the identified communications.

25. State in detail each and every reason why and when the agency selected Mr. Michel and/or the other persons identified in response to Interrogatory No. 24 for the position of Business Development Specialist/Officer in the IBD of the Export Group of the agency.

26. Identify in detail any and all communications by and/or between, to and/or from, any manager or employee of the agency relating to Ms. Nuskey's and/or her attorneys' request on the date of her termination and/or at any time thereafter to retrieve copies of emails and/or other records from her computer regarding her work performance, conduct and/or complaints of unlawful discrimination, and state the date, place, names of the participants, their gender and ages, and a detailed synopsis of the each and every one of the identified communications.

Respectfully submitted,

Diana J. Veilleux
D.C. Bar No. 418292
Lisa A. Bernstein
D.C. Bar No. 466215
Shaw, Bransford, Veilleux & Roth, P.C.
1100 Connecticut Avenue, N.W., Suite 900
Washington, D.C. 20036
Tel: (202) 463-8400
Fax: (202) 833-8082

Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Plaintiff's First Set of Interrogatories** were sent this 24th day of August, 2007 via email and first-class mail, postage prepaid, to the following counsel for the agency:

Alan Burch, Esq.
Assistant United States Attorney
Office of the U.S. Attorney for
the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Alan.Burch@usdoj.gov

Lisa A. Bernstein