UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHARON L. NUSKEY, | ) | |
| Plaintiff, | ) | Civil Action No.: 06-1573 (PLF) |
| v. | ) | |
| JAMES H. LAMBRIGHT, CHAIRMAN AND PRESIDENT, EXPORT-IMPORT BANK OF THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

COMES NOW, the Export-Import Bank of the United States (hereinafter "Agency"), by and through its undersigned counsel, and provides the following objections and answers to *Plaintiff's First Set of Interrogatories*.

GENERAL OBJECTIONS AND RESPONSES

1. Defendant objects to these interrogatories to the extent they seek information that is immune from discovery under the attorney-client privilege, the attorney work product doctrine and/or other applicable privileges, and all interrogatories have been read to exclude discovery of such privileged information. By responding to an interrogatory, Defendant does not waive any applicable privilege as to that interrogatory or as to any other, present or future.

2. Defendant objects to any definition or instruction that may modify or alter the plain language of any interrogatory; each interrogatory has been interpreted in compliance with the rules of and plain English usage.

3. Defendant objects to Plaintiff's interrogatories to the extent that they seek information unrelated to the subject matter of this action, and are not reasonably calculated to

lead to the discovery of admissible evidence.

4. Defendant objects to Plaintiff's interrogatories to the extent that they require or purport to require any inquiry of persons who are not Defendant's current employees and are therefore unduly burdensome.

5. Defendant objects to Plaintiff's interrogatories to the extent they seek information already in Plaintiff's possession, or otherwise equally available to Plaintiff as it is Defendant.

6. Defendant objects to Plaintiff's interrogatories as most, if not all of the interrogatories posed contain non-discrete compound requests, which collectively exceed the limit of 25 interrogatories stated in Federal Rule of Civil Procedure 33(a) and the July 9, 2007 scheduling order.

7. Defendant objects to Plaintiff's interrogatories to the extent they seek information prior to or following Plaintiff's employment with Defendant and are, thus, overbroad.

8. The foregoing general objections are incorporated into each of the following responses. The stating of specific objections shall not be construed as a waiver of general objections.

ANSWERS AND OBJECTIONS TO INTERROGATORIES

1. Identify each person who was consulted and/or otherwise assisted in the preparation of the responses to each and every one of these Interrogatories, specifying the Interrogatory response(s) for which each person provided information.

Apart from the undersigned counsel, the following individuals participated in providing information for this response: Charles Barnett (Interrogatories No. 11,12,14,16,17,20), Elliott Davis (Interrogatories No. 3-9,19,22-24), John Emens (Interrogatories No. 3-5,8,15,17-

19,22,23), C. Michael Forgione (Interrogatories No. 3-8,10-25), Patrease Jones-Brown (Interrogatories No. 3-5,8,9,19,22,23), Margaret Kostic (Interrogatories No. 4,5,8,10-12,14,16,17,20), Craig O'Connor (Interrogatories No. 3-5,8,10-24), Brian Sant Angelo (Interrogatories No.
11,12,14,16,17,20).

2. Identify each and every person by name, gender, age, date of birth, grade, title, business address and telephone number, who the agency may call as a fact witness and/or expert witness at the hearing on this matter, and/or anyone else who may have any knowledge about the subject matter of Ms. Nuskey's EEO complaint, and provide a detailed synopsis of the expected testimony or knowledge of each and every witness/person and/or the facts upon which the expert opinion is based.

Defendant objects to this Interrogatory on the grounds that it seeks information that is protected by attorney client privilege and work product. Subject to and without waiving the foregoing objection to this interrogatory, Defendant states that the following individuals may have relevant knowledge about the subject matter of Plaintiff's EEO complaint: Plaintiff, C. Michael Forgione, Craig O'Connor, Margaret Kostic, John Emens, Gregory DaDamio, Ana P. Guzman-Evans, and Patrease Jones-Brown. As of the time of these written discovery responses, Defendant has not determined who he will call as witnesses on his behalf at the trial in this matter. In addition to the aforementioned, Defendant reserves the right to call any relevant witness or expert at trial.

3. Identify any and all informal and formal EEO complaints, civil court complaints or appeals, formal grievances, union grievances, Office of Special Counsel complaints, Office of

Inspector General complaints and/or any other complaints that have been filed against Mr. Michael Forgione, Mr. Craig O'Connor, Mr. John Emens and/or Mr. Jeffrey Miller on the basis of discrimination on gender (including allegations of discrimination based on gender and allegations of sexual harassment), age or reprisal than have been filed from August 1, 2002 to the present, and for each complaint, state the date it was filed, the nature of the complaint, the disposition of the complaint, and whether or not any disciplinary action was proposed and/or taken against Mr. Forgione and/or Mr. O'Connor in connection with the complaint.

Defendant objects to this interrogatory on the basis that much of the information sought is not relevant to the claims or defenses of either party. Furthermore, the disclosure of the requested information would be unnecessarily intrusive on the privacy interests of employees. Defendant also objects to this interrogatory on the basis that it is overly broad in that it seeks records from two years preceding Plaintiff's employment to over two years after her termination. Finally, Defendant objects to this interrogatory to the extent it requests information protected by the attorney/client privilege and the attorney work product privilege.

4. Identify each and every communication (verbal, written and/or electronic) from August 1, 2004 to the present that was made to or from or was exchanged by and/or between Mr. Forgione, Mr. O'Connor, John Emens, Jeffrey Miller, Patrease Jones Brown, Ms. Nuskey, Patricia Guzman, Mr. Gregory DaDamio, other current or former agency managers and employees, members of the agency's EEO and/or Human Resources office, and/or any other person pertaining or relating to Ms. Nuskey's gender and/or age, and state the date, location, participants, whether the communication was verbal, written or electronic, and provide a detailed synopsis of each and every communication.

Defendant objects to this interrogatory on the basis that it is vague and ambiguous with regard to "any aspect of Ms. Nuskey's gender and/or age." Defendant also objects to this interrogatory on the basis that it is overly broad in that it seeks records dating to the present, more than two years after Plaintiff's termination. Subject to and without waiving the foregoing objection to this interrogatory, Defendant is not aware of any such communication occurring at any time during Plaintiff's employment.

5. Identify each and every communication (verbal, written and/or electronic) from August 1, 2004 to the present that was made to or from or was exchanged by and/or between Mr. Forgione, Mr. O'Connor, Mr. Emens, Mr. Miller, Ms. Jones Brown, Mr. J.T. McMullen, Ms. Sherry Beyers, Ms. Nuskey, other current or former agency managers and employees, members of the agency's EEO and/or Human Resources offices, and/or any other person pertaining or relating to any aspect of Ms. Nuskey's EEO activity (i.e., Ms. Nuskey's opposition of unlawful discrimination (her complaints of discrimination that she made during her employment to agency management, the agency's EEO and/or Human Resources offices) and/or her engaging in and pursuit of her EEO activity (i.e., her contact with the EEO office, initiating of EEO counseling, her formal EEO complaint, the investigation of her LEO complaint, her civil Complaint and litigation in federal district court)), and state the date, location, participants, whether the communication was verbal, written or electronic, and provide a detailed synopsis of each and every communication.

Defendant objects to this interrogatory to the extent it requests information protected by the attorney/client privilege and the attorney work product privilege. Defendant also objects to this interrogatory on the basis that it is overly broad in that it seeks records dating to the present,

more than two years after Plaintiff's termination. Subject to and without waiving the foregoing objection to this interrogatory, Defendant refers Plaintiff to the Report of Investigation ("ROI") produced by William R. Taylor, EEO investigator at Tabs B(7) and D16(A)-(B) and Exhibit 3 of *Defendant's Response to Plaintiff's First Requests for the Production of Documents* ("RFP").

6. State in detail each and every reason why the agency selected Ms. Nuskey for the position of Business Development Specialist, GS-1101-ll, Step 10, in the International Business Development Division ("IBD") of the Export Group of the agency.

Defendant objects to this interrogatory on the basis that the information sought is not relevant to the claims or defenses of either party. Subject to and without waiving the foregoing objection to this interrogatory, Ms. Nuskey was selected for the position of Business Development Specialist, GS-1101-ll, Step 10, in the International Business Development Division ("IBD") of the Export Group because she appeared to be more qualified for the position than the unsuccessful candidates.

7. State in detail each and every reason why the agency hired Ms. Nuskey with a "Superior Qualifications" rating.

Defendant objects to this interrogatory on the basis that the information sought is not relevant to the claims or defenses of either party. Subject to and without waiving the foregoing objection to this interrogatory, Defendant refers Plaintiff to the July 27, 2004 memorandum by Mr. Forgione entitled "Request for a Superior Qualifications appointment for Sharon Nuskey" attached hereto as Exhibit 1.

8. Identify in detail any and all communications (verbal, written and/or electronic) from August 1, 2004 to the present that were made to or from, exchanged by and/or between Mr.

Forgione, Mr. O'Connor, Mr. Emens, Mr. Miller, Ms. Jones Brown, Ms. Nuskey, other current or former agency managers and employees, members of the agency's EEO and/or Human Resources office, and/or any other person pertaining to any alleged complaints, criticisms, problems or accolades about any aspect of Ms. Nuskey's job performance and/or conduct at any time during her employment at the agency, and state the date, location, participants, whether the communication was verbal, written or electronic, and provide a detailed synopsis of each and every communication.

Defendant objects to this interrogatory on the basis that it is vague, ambiguous and over broad with regard to "complaints, criticisms, problems or accolades." Defendant also objects to this interrogatory on the basis that it is overly broad in that it seeks records dating to the present, more than two years after Plaintiff's termination. Subject to and without waiving the foregoing objection to this interrogatory Defendant refers Plaintiff to the ROI at Tabs E(19) and E(20) and RFP Exhibits 1 and 5. Additionally, on October 7, 2004 Mr. Forgione verbally informed Plaintiff that Jeffrey Miller felt that a lack of progress was being made regarding the November 16-17, 2004 Ex-Im Bank Infrastructure Finance Conference in Bucharest, Romania and Mr. Miller questioned whether Plaintiff was committed to working on organizing the conference. Again on October 14, 2004 Mr. Forgione verbally informed Plaintiff that Jeffrey Miller and Senior Vice-President, Office of Communications, Lorrie Secrest felt Plaintiff was distracted and not giving her best efforts to a successful conference. The following day on October 15, 2004 Mr. Forgione verbally counseled Plaintiff for consistently questioning the wisdom of the conference timing and chances for its success. Also, Ms. Kostic received verbal accolades from the Office of Communications, Commercial Service departments at various US Embassies in

Southeast Europe, the US Ambassador to Romania, and Directors Conlin and Foley concerning Plaintiff's work.

9. Identify in detail any and all communications (verbal, written and/or electronic) from August 1,2004 to the present that were made to or from, exchanged by and/or between Mr. Forgione, Mr. O'Connor, John Emens, Mr. Miller, Ms. Jones Brown, any other current or former agency managers and employees, members of the agency's EEO and/or Human Resources office, and/or any other person pertaining to any alleged complaints, criticisms, problems or accolades about any aspect of Mr. Forgione's, Mr. O'Connor's, Mr. Miller's and/or Mr. Emens' job performance and/or conduct from August 1, 2002 to the present, and state the date, location, participants, whether the communication was verbal, written or electronic, and provide a detailed synopsis of each and every communication.

Defendant objects to this interrogatory on the basis that it is vague, ambiguous and over broad with regard to "complaints, criticisms, problems or accolades." Defendant further objects to this interrogatory on the basis that much of the information sought is not relevant to the claims or defenses of either party because the work performance and conduct of Messrs. Forgione, O'Connor, Emens and Miller is not at issue in this case. Furthermore, the disclosure of the requested information would be unnecessarily intrusive on the privacy interests of employees. Defendant also objects to this interrogatory on the basis that it is overly broad in that it seeks records from two years preceding Plaintiff's employment to over two years after her termination.

10. Identify each and every occasion when Mr. Forgione, Mr. O'Connor, and/or any other agency manager counseled (verbal, written and/or electronic) Ms. Nuskey about any issues relating to her performance and/or conduct at any time during her employment with the agency.

See answer to interrogatory no. 8 above.

11. Identify each and every occasion when Mr. Forgione, Mr. O'Connor, and/or any other agency manager counseled (verbal, written and/or electronic) Mr. Charles Barnett, Mr. William Hess, Mr. Brian Sant. Angelo and/or any other Business Development Specialist/Officer hired to work at the Bank from July 15, 2004 to present about any issues relating to his performance and/or conduct at any time from August 1,2004 to the present, and state the date, location, name of the participants, their gender, age and date of birth, whether the counseling was verbal, written or electronic, and provide a detailed synopsis of each and every counseling.

Defendant objects to this interrogatory on the basis that it is vague, ambiguous and over broad with regard to "any issues relating to their performance and/or conduct." Defendant also objects to this interrogatory on the basis that much of the information sought is not relevant to the claims or defenses of either party because Messrs. Charles Barnett, William Hess, and Brian Sant Angelo, were not employees similarly situated to Plaintiff. Finally, Defendant objects to this interrogatory on the basis that it is overly broad in that it seeks records dating to the present, more than two years after Plaintiff's termination. Subject to and without waiving the foregoing objection to this interrogatory, with reference to Plaintiff, see answer to interrogatory no. 8 above and with reference to other probationary business development specialists, see RFP Exhibit 7.

12. Identify each and every outside IBD departmental meeting and/or staff-wide meeting from August 1, 2004 that Ms. Nuskey, Mr. Barnett, Mr. Hess, Mr. Sant. Angelo and/or any other Business Development Specialist/Officer hired to work at the Bank from July 15,2004 to the present have been invited to and/or attended during their employment with the agency, and

for each meeting, state the date, location, participants, subject matter, how and when they were notified of the meeting, and if there were any notes or minutes of the meeting to document the persons who attended those meetings.

Defendant objects to this interrogatory on the basis that it is vague and ambiguous with regard to "IBD departmental meeting and/or staff-wide meeting." Defendant further objects to this interrogatory on the basis that much of the information sought is not relevant to the claims or defenses of either party because Messrs. Charles Barnett, William Hess, and Brian Sant Angelo, were not employees similarly situated to Plaintiff. Also, Defendant objects to this interrogatory on the basis that it is overly broad in that it seeks records dating to the present, more than two years after Plaintiff's termination. Subject to and without waiving the foregoing objection to this interrogatory, to the extent Plaintiff is asking about meetings outside the Bank attended by or required to be attended by all IBD staff, no such outside meetings occurred. See also the IBD Divisional calendar at RFP Exhibit 9.

13. State in detail how Ms. Nuskey's management believes that it kept her informed about various issues and work that fell within her program area of responsibility during the course of her employment with the agency.

Defendant objects to this interrogatory on the basis that it is vague and ambiguous with regard to "various issues and work that fell within her program area of responsibility." Under Ms. Kostic's and Mr. O'Connor's supervision, Ms. Nuskey was kept informed by being included on e-mails dealing with the region, in meetings, and through conversations with Ms. Kostic about transactions. Additionally, Mr. Forgione visited staff offices on a regular basis. In December 2004, Mr. Forgione held a meeting with all probationary business development

specialists to inquire into their assignments, individual progress and to answer any questions they had outside the presence of their immediate supervisors. Additionally, divisional meetings were held regularly and all division employees were required to employ the IBD Divisional Calendar so that all IBD employees were aware of all divisional activities.

14. State in detail any and all work assignments and other opportunities that Ms. Nuskey, Mr. Barnett, Mr. Hess, Mr. Sant. Angelo and/or any other Business Development Specialist/Officer were given from August 1, 2004 to the present in which he/she was directed to perform work in support of any of the Bank's Directors and/or their staff.

Defendant objects to this interrogatory on the basis that it is vague, ambiguous and over broad with regard to "perform work in support of any of the Bank's Directors." All work at Ex-Im Bank is in support of the Bank's Directors. Defendant also objects to this interrogatory on the basis that much of the information sought is not relevant to the claims or defenses of either party because Messrs. Charles Barnett, William Hess, and Brian Sant Angelo were not employees similarly situated to Plaintiff. Defendant also objects to this interrogatory on the basis that it is overly broad in that it seeks records dating to the present, more than two years after Plaintiff's termination. Finally, Defendant objects to this interrogatory as burdensome with regard to William Hess as Mr. Hess and his former supervisor for the majority of his probationary period are no longer employed at Defendant and with regard to other IBD employees Plaintiff does not consider to be similarly situated. Subject to and without waiving the foregoing objection to this interrogatory see Exhibit 2 with regard to Mr. Barnett, Exhibit 3 with regard to Plaintiff and the IBD Divisional calendar at RFP Exhibit 9 with regard to Mr. Hess; see also ROI Tab D(6)(a) and Tab E(12). Mr. Sant Angelo did not perform any work

specifically for Bank Directors during Plaintiff's tenure.

15. State in detail the process of recommending, approving, and/or otherwise assigning travel (international or domestic) opportunities to Business Development Specialists/Officers in the IBD, including but not limited to who initiates such requests, who approves such requests, and making a decision on the proposed cost of the travel.

The process of recommending, approving, and/or otherwise assigning travel (international or domestic) opportunities to Business Development Specialists/Officers is based on business travel needs in a given regional area, requests by a Director for travel support, and the division's Regional Business Plans. An individual through their Regional Director may recommend travel. Additionally, a specific individual may be requested to travel with senior management or a director. Mr. Forgione may ask a specific staff person to travel. Travel requests generally required Mr. Forgione's recommendation and/or concurrence and ultimate approval by either John Emens or Jeffrey Miller.

16. State in detail each and every occasion in which Ms. Nuskey, Mr. Barnett, Mr. Hess, Mr. Sant. Angelo and/or any other Business Development Specialist/Officer were either recommended for, invited to or were otherwise assigned to travel (either internationally or domestically) for the agency from August 1, 2004 to the present, and for each travel opportunity, state the date(s) that the employee was notified of the travel, the date(s) when the travel was to take place, the destination(s) of the travel, the purpose of the travel, the person(s) who proposed that the employee travel, the person(s) who approved the travel, the total amount of the cost of the travel, who paid for the travel, and whether all or part of the travel was on official time or if the employee had to use leave.

Defendant objects to this interrogatory on the basis that much of the information sought is not relevant to the claims or defenses of either party because Messrs. Charles Barnett, William Hess, and Brian Sant Angelo were not employees similarly situated to Plaintiff. Defendant also objects to this interrogatory on the basis that it is overly broad in that it seeks records dating to the present, more than two years after Plaintiff's termination. Subject to and without waiving the foregoing objection to this interrogatory, Defendant states the following:

With regard to Charles Barnett, in January 2005, John Richter recommended to Mr. Forgione that Mr. Barnett travel to Manama, Bahrain and Cairo, Egypt in March 2005 for project finance seminars and to Algeria and India in August 2005 for business development. Neither trip occurred. In April 2005, Vice Chair Foley requested that Mr. Barnett travel with her to Amman, Jordan in May 2005 in conjunction with the Broader Middle East and North Africa (BMENA) conference. Mr. Barnett was initially disapproved by Jeffrey Miller to travel but was later approved when the Office of General Counsel indicated that the trip would be paid from its budget. Mr. Barnett traveled to Jordan from May 12-20, 2005 for a total cost of $9,325.45.

With regard to William Hess, he traveled on March 1-3, 2005 to New York to attend a Russian banking conference; his travel was recommended by Ms. Kostic and approved by Mr. Forgione and cost $880. Additionally, Ms. Kostic recommended Mr. Hess travel to Azerbaijan and Kazakhstan to market Ex-Im Bank programs and to meet with current and future clients. The trip was approved by Michael Forgione and John Emens or Jeffrey Miller, and from April 16-27, 2005 Mr. Hess traveled to Kazakhstan and Azerbaijan for a cost of $10,733.45.

With regard to Brian Sant Angelo, he traveled from May 8-14, 2005 to Mexico City, Puebla, Toluca, Queretaro, Monterrey and Guadalajara, Mexico for business development

activities. The trip was approved by Jeffrey Miller. The trip cost $2,456.94.

With regard to Plaintiff, Ms. Kostic recommended Plaintiff attend the November 16-17, 2004 Ex-Im Bank Infrastructure Finance Conference in Bucharest, Romania. Plaintiff did not attend the conference. Also, in January 2005 Ms. Kostic devised a travel plan for SECE in which she recommend Plaintiff travel with her in June 2005 to Albania, Serbia & Montenegro (if open to Ex-Im Bank business), Croatia, Poland, Slovakia and London. Finally, in May 2005, Plaintiff recommended herself that she travel to the May 28, 2005 - June 5, 2005 "Facing New Challenges and Opportunities Germany in Transition" Study tour sponsored by the Hanseatic Institute and the May 22-23, 2005 annual EBRD conference in Belgrade, Serbia. Although both travel plans were initially approved by Messrs. Forgione and Emens, Plaintiff was terminated before the trips occurred.

With regard to Craig O'Connor, he made the following trips: August 22-28, 2004 to Sao Paulo, Goania and Rio de Janerio, Brazil for business development activities. The trip was approved by Mr. Forgione and cost $2,975; August 30-Sep 2, 2004 to Denver, CO to participate in the World Renewable Energy Congress and promote the Bank's Environmental Exports Program. The trip was approved by Mr. Forgione and cost $1,175; September 20-29, 2004 to Lima, Peru and Santiago, Chile for business development actvities; the trip was approved by Mr. Forgione and cost $3,075;

With regard to Margaret Kostic on September 13, 2004 Mr. Forgione denied her requested travel to the Southeast Europe Economic Forum in Bulgaria in Fall 2004. However, she made the following trips: September 29-October 2, 2004 to New Orleans, LA to speak at the USTDA Conference; the trip was approved by John Emens and cost $1,175; November 11-21,

2004 to Bucharest, Romania for the 2004 Ex-Im Bank Infrastructure Finance Conference and to meet with potential clients in Romania; the trip was approved by Mr. Forgione and cost $4,000.70; February 12-March 5, 2005 to Budapest, Hungary, Kiev, Ukraine, Istanbul and Ankara, Turkey and London for business development activities; the trip was approved by Messrs. Forgione and Emens and cost $10,075.

With regard to Xiomara Creque, during Plaintiff's employment, she made the following trips: September 26, 2004 to New York to attend emerging markets risk training and to visit banks concerning business development in Mexico; the trip cost $1,225; November 14-20, 2004 to Mexico City and Monterrey, Mexico to promote Ex-Im Bank programs and meet with a Mexican bank; the trip cost $1,975; January 30-February 5, 2005 to Mexico City, Toluca, Queretaro, and Villahermosa, Mexico to promote Ex-Im Bank programs; the trip cost $2,575; March 11-22, 2005 to Lima, Peru and Santiago, Chile to promote Ex-Im Bank programs and visit clients; the trip cost $3751.26; May 8-17, 2005 to Mexico City, Puebla, Toluca, Queretaro, Monterrey and Guadalajara, Mexico to promote Ex-Im Bank programs in Mexico and introduce junior staff (Brian Sant Angelo) to the market; the trip cost $1,790. The trips were approved by Craig O'Connor, Michael Forgione and/or John Emens.

With regard to Kristine Wood, she traveled to Hartford, CT and New York from April 19-21, 2005 to conduct relationship bank meetings with Vice-President, Structured Finance, Barbara O'Boyle. The trip was proposed and paid for by the Structured Finance Division and cost $1209.18.

With regard to Ken Vranich, he traveled to South Africa, Botswana and Nigeria from March 26-April 9, 2004 for business development activities. The trip cost $12,107.57. The trip

was approved by C. Michael Forgione and John Emens.

With regard to John Richter, he made the following trips: August 30-September 6, 2004 to Indianapolis, Detroit, Midland, Milwaukee, Minneapolis for domestic business development activities; the trip cost $2017; October 13-18, 2004 to Chicago, Milwaukee for domestic outreach in support of Vice Chair Linda Conlin; the trip cost $733; November 5, 2004 to Philadelphia to speak at "Finance and Trade with the Middle East" Conference; the trip cost $320; November 26 – December 4, 2004 to Mumbai. Hyderabad, and New Delhi, India for international business development to follow-up on travel by Ex-Im Bank Chairman; the trip cost $8453; January 22-26, 2005 to Las Vegas to participate in USTDA Orientation Visit for Vietnamese power sector; the trip cost $1087; January 31, 2005 to Baltimore to present to US business community interested in Thai healthcare; the trip cost $89; March 19-April 2, 2004 to Vietnam, South Africa, and Botswana for business development activities; the trip cost $13,416; May 12-20, 2005, to Amman, Jordan in support of BMENA Conference; the trip cost $8800. All trips were approved by Messrs. Forgione and Emens.

With regard to Talaat Rahman she made the following trips: October 15-24, 2004 to Hong Kong, Beijing and Shanghai, China for meetings with Chinese banks and to conduct due diligence for transactions; the trip was approved by Mr. Forgione and cost $12.175; January 22-29, 2005 to Beijing and Shanghai, China for signing of a framework agreement with China and to conduct business development activites; the trip was approved by Mr. Forgione and cost $9.700; May 18-20, 2005 to Minneapolis, MN to speak at an event and meet with exports; the trip was approved by Mr. Forgione and cost $630.

With regard to Paul Tumminia, on June 1, 2005 he proposed travel to Brazil for June 20-

25, 2005 was denied by Mr. Forgione the same day. Mr. Tumminia made the following trips; September 7-13, 2004 to Providence, RI and Hartford, CT for business development activities. The trip was approved by Mr. Forgione and cost $1,375; October 23-30, 2004 to Houston, Austin and Dallas, TX; the trip was approved by Mr. Forgione and cost $1,475.

The above-stated costs are as reflected in the relevant travel orders. Messrs. Emens or Miller has ultimate approval authority for IBD travel.

17. State in detail each and every occasion in which any request or other recommendation for Ms. Nuskey, Mr. Barnett, Mr. Hess, Mr. Sant. Angelo and/or any other Business Development Specialist/Officer to travel for bank business (either internationally or domestically) was denied from August 1, 2004 to the present, and for each travel opportunity, state the date(s) that the employee was notified of the travel, the date(s) when the travel was to take place, the destination(s) of the travel, the purpose of the travel, the person(s) who proposed that the employee travel, the person(s) who denied the travel request, the total amount of the cost of the proposed travel., and a detailed synopsis of why the travel request or recommendation was denied.

Defendant objects to this interrogatory on the basis that much of the information sought is not relevant to the claims or defenses of either party because Messrs. Charles Barnett, William Hess, and Brian Sant Angelo were not employees similarly situated to Plaintiff. Defendant also objects to this interrogatory on the basis that it is overly broad in that it seeks records dating to the present, more than two years after Plaintiff's termination. Subject to and without waiving the foregoing objection to this interrogatory, refers Plaintiff to the answer to interrogatory no. 16 above.

18. Identify each and every agency employee who was recommended to attend and/or was approved to attend the Bucharest, Romania Conference in the Fall of 2004, and state the date(s) that the employee was notified of the travel, the purpose of the employee's attendance at the conference, the person(s) who proposed that the employee travel, the person(s) who approved or denied the travel request, the total amount of the cost of the proposed travel, and a detailed synopsis of why the travel request or recommendation was approved or denied.

Ex-Im Bank attendees of the November 16-17, 2004 Ex-Im Bank Infrastructure Finance Conference in Bucharest, Romania included Senior Vice-President, Export Finance Group, Jeffrey Miller, Senior Vice-President and Executive Director, James Lambright, Senior Vice-President, Office of Communications, Lorrie Secrest, Loan Specialist, Eastern Europe, Russia, CIS & Turkey Section, Trade Finance and Insurance Division, Mary Beth Adamchik and SECE Director, Margaret Kostic. See also answer to interrogatory no. 16 above.

19. Identify in detail any and all communications (verbal, written and/or electronic) from August 1, 2004 to the present that were made to or from, exchanged by and/or between Mr. Forgione, Mr. O'Connor, John Emens, Mr. Miller, Ms. Jones Brown, any other current or former agency managers and employees, members of the agency's EEO and/or Human Resources office, and/or any other person pertaining or relating to travel that Ms. Nuskey requested, and state the date, location, participants, whether the communication was verbal, written or electronic, and provide a detailed synopsis of each and every communication.

Defendant objects to this interrogatory on the basis that it is overly broad in that it seeks records dating to the present, more than two years after Plaintiff's termination. With regard to written communications see ROI Exhibit Tab D(1)(d) and RFP Exhibits 1 and 3. With regard to

verbal communications on or about May 12, 2005 Mr. Forgione spoke with Mr. Emens concerning Plaintiff's May 10, 2005 request to attend the May 28, 2005 to June 5, 2005 Germany study tour on Bank time and Mr. Emens approved. Soon thereafter, after receiving Plaintiff's request to attend the May 22-23, 2005 EBRD annual conference Mr. Forgione spoke with Mr. Emens concerning the same and Mr. Emens approved the travel. During the following days multiple meetings occurred daily between a combination of Plaintiff, Craig O'Connor and or Mr. Forgione concerning the trip preparations. The discussions centered on the fact that contrary to Mr. Forgione's mistaken impression, a four-day gap existed between the two events. In the meetings, Plaintiff proposed various combinations of trips to fill the gap, such as excursions to Serbia and Croatia for business development. All the proposals involved trips to countries where the Bank had decided not to expend resources. Mr. Forgione also conveyed to Plaintiff Director Conlin's intent to travel to the SECE region in June. At one or more of these meetings Mr. Forgione suggested that Plaintiff take vacation between the two events but Plaintiff refused. Mr. Forgione also suggested Plaintiff consider flying back to Washington, DC during the four-day gap. Furthermore, Mr. Forgione verbally informed Plaintiff that the trips were not of value to Ex-Im Bank and therefore he would only allow $1250 from the IBD budget for her travel costs. On May 19, 2005 Plaintiff met with Messrs. Forgione and O'Connor in which Plaintiff's proposed travel was discussed to include Mr. Forgione's belief that Plaintiff had expended a large amount of effort on a trip that was of minimum value to the Bank. Plaintiff informed Messrs. Forgione and O'Connor that the Bank would be making Serbia-Montenegro a strategic target in the coming months. Mr. Forgione asked her how she could know of a decision to make that country a strategic target to which Plaintiff replied that she heard it from "senior

management" and it was common knowledge. Mr. Forgione told Plaintiff that all recommendations for inclusion in IBD's strategic target list came from Mr. Forgione and that Mr. Miller was the final and only authority to certify those decisions.

20. Identify in detail any and all additional duties, assignments, professional opportunities, special projects and/or any other career enhancing work that has been offered to or given to Ms. Nuskey, Mr. Barnett, Mr. Hess, Mr. Sant. Angelo and/or any other Business Development Specialist/Officer from August 1,2004 to the present, and state the date it was offered or assigned, who offered the opportunity or work assignment, the nature of the work, the person(s) who approved or offered the work, and provide a detailed synopsis of each and every reason the work was assigned to the employee.

Defendant objects to this interrogatory on the basis that it is vague, ambiguous and over broad with regard to "any and all additional assignments, professional opportunities, special projects and/or any other career enhancing work." Defendant also objects to this interrogatory on the basis that much of the information sought is not relevant to the claims or defenses of either party because Messrs. Charles Barnett, William Hess, and Brian Sant Angelo were not employees similarly situated to Plaintiff. Defendant also objects to this interrogatory on the basis that it is overly broad in that it seeks records dating to the present, more than two years after Plaintiff's termination. Subject to and without waiving the foregoing objection to this interrogatory, see ROI Tab D(6)(a) and Tab E(12) and RFP Exhibit 1 and 11.

21. State in detail each and every reason why the agency terminated Ms. Nuskey's employment with the agency, effective May 20, 2005, including but not limited to any and all factual information, documents, and communications (verbal, written and/or electronic) that

were referred to, were relied upon, or were otherwise in support of the agency's decision.

Plaintiff was terminated because Mr. Forgione determined that Plaintiff was exerting her own personal priorities over the Bank's business strategies with regard to travel to the May 28, 2005 - June 5, 2005 "Facing New Challenges and Opportunities Germany in Transition" Study tour and the May 22-23, 2005 annual EBRD conference in Belgrade, Serbia. Mr. Forgione also determined that Plaintiff was unprofessional and manipulative in her pursuit of traveling to Germany, Serbia and Croatia. Because Plaintiff was a probationary employee, Mr. Forgione felt he had the discretion to terminate her because he felt the needs of the department and Plaintiff's expectations did not coincide. See answers to interrogatory 19 above for documents and communications relied upon in support of the decision to terminate Plaintiff.

22. Identify in detail any and all communications (verbal, written and/or electronic) that were made to or from, by and/or between Mr. Forgione, Mr. O'Connor, Mr. Emens, Mr. Miller, Ms. Jones Brown, Mr. DaDamio, Ms. Guzman, any other current or former agency managers and employees, members of the agency's EEO and/or Human Resources office, and/or any other person pertaining or relating to the decision of whether to terminate Plaintiff's employment with the agency, and state the date, location, participants, their gender whether the communication was verbal, written or electronic, and provide a detailed synopsis of each and every communication.

Defendant objects to this interrogatory to the extent it requests documents protected by the attorney/client privilege and the attorney work product privilege. Subject to and without waiving the foregoing objection to this interrogatory, see ROI Tab D(1)(h) and RFP Exhibit 14.

23. Identify in detail any and all communications (verbal, written and/or electronic)

that were to or from, were exchanged by and/or between, or were otherwise documented by Mr. Forgione, Mr. O'Connor, Mr. Emens, Mr. Miller, Ms. Jones Brown, Mr. DaDamio, Ms. Guzman, any other current or former agency managers and employees, members of the agency's EEO and/or Human Resources office, and/or any other person from April 1, 2005 to the present announcing and/or commenting upon Ms. Nuskey's proposed or actual departure from the agency, and state the date, location, participants, whether the communication was verbal, written or electronic, and provide a detailed synopsis of each and every communication.

Defendant objects to this interrogatory to the extent it requests documents protected by the attorney/client privilege and the attorney work product privilege. Defendant also objects to this interrogatory on the basis that it is overly broad in that it seeks records dating to the present, more than two years after Plaintiff's termination. Subject to and without waiving the foregoing objection to this interrogatory, see answer to interrogatory 22 above.

24. Identify in detail each and every person including, but not limited to management employees, Mr. John Richter, Human Resources employees, recommending officials, selecting officials, applicants (including but not limited to Mr. Ricardo Michel), and/or any other person with whom Mr. Forgione or Mr. O'Connor communicated with concerning or relating to any aspect of locating and/or selecting a Business Development Specialist/Officer(s) at any time after Ms. Nuskey's removal, and provide the date, place, names of the participants, their gender and ages, and a detailed synopsis of the each and every one of the identified communications.

Defendant objects to this interrogatory on the basis that much of the information sought is not relevant to the claims or defenses of either party. Defendant also objects to this interrogatory on the basis that it is overly broad in that it seeks records dating to the present,

more than two years after Plaintiff's termination. Subject to and without waiving the foregoing objection to this interrogatory, see RFP Exhibit 15.

25. State in detail each and every reason why and when the agency selected Mr. Michel and/or the other persons identified in response to Interrogatory No. 24 for the position of Business Development Specialist/Officer in the IBD of the Export Group of the agency.

Defendant objects to this interrogatory on the basis that the information sought is not relevant to the claims or defenses of either party. Ricardo Michel was hired on March 3, 2006 as a GS-13 Business Development Specialist in the Asia, Africa, and Middle East Section of the International Business Development Division; he was not hired as Plaintiff's replacement. Subject to and without waiving the foregoing objection to this interrogatory, Mr. Michel was selected because he appeared to be more qualified for the position than the unsuccessful candidates.

26. Identify in detail any and all communications by and/or between, to and/or from, any manager or employee of the agency relating to Ms. Nuskey's and/or her attorneys' request on the date of her termination and/or at any time thereafter to retrieve copies of emails and/or other records from her computer regarding her work performance, conduct and/or complaints of unlawful discrimination, and state the date, place, names of the participants, their gender and ages, and a detailed synopsis of the each and every one of the identified communications.

Defendant objects to this interrogatory on the basis that the information sought is not relevant to the claims or defenses of either party. Furthermore, Defendant objects to this interrogatory as it exceeds the limit of 25 interrogatories stated in Federal Rule of Civil

Procedure 33(a) and the July 9, 2007 scheduling order. Subject to and without waiving the foregoing objection to this interrogatory, see ROI Tab E(16).

October 11, 2007

For objections only,

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204
alan.burch@usdoj.gov

OF COUNSEL:
Faisal Siddiqui
Office of the General Counsel
Export-Import Bank of the United States

Pursuant to 28 U.S.C. § 1746, I, C. Michael Forgione, do hereby state and declare under penalty of perjury, that I have read the answers to Interrogatories 3-8 and10-25, and the contents thereof are true and correct to the best of my knowledge and belief.

C. Michael Forgione

OCT. 9, 2007
Date

Pursuant to 28 U.S.C. § 1746, I, Charles Barnett, do hereby state and declare under penalty of perjury, that I have read the answers to Interrogatories 11,12,14,16,17 and 20, and the contents thereof are true and correct to the best of my knowledge and belief.

Charles Barnett

10/9/2007

Charles Barnett

Date

Pursuant to 28 U.S.C. § 1746, I, Margaret Kostic, do hereby state and declare under penalty of perjury, that I have read the answers to Interrogatories 4,5,8,10-12,14,16,17 and 20 and the contents thereof are true and correct to the best of my knowledge and belief.

Margaret Kostic (signature)
Margaret Kostic

October 10, 2007
Date

Pursuant to 28 U.S.C. § 1746, I, Elliott Davis, do hereby state and declare under penalty of perjury, that I have read the answers to Interrogatories 3-8, 19, and 22-24, and the contents thereof are true and correct to the best of my knowledge and belief.

Elliott Davis

10-10-07
Date

Pursuant to 28 U.S.C. § 1746, I, Patrease Jones-Brown, do hereby state and declare under penalty of perjury, that I have read the answers to Interrogatories 3-5,8,19,22, and 23 and the contents thereof are true and correct to the best of my knowledge and belief.

Patrease Jones-Brown

10/10/2007
Date

Pursuant to 28 U.S.C. § 1746, I, John Emens, do hereby state and declare under penalty of perjury, that I have read the answer to Interrogatories 3-5,8,15,16,17-19,22, and 23 and the contents thereof are true and correct to the best of my knowledge and belief.

John A Emens
John Emens

10/9/07
Date

Pursuant to 28 U.S.C. § 1746, I, Craig O'Connor, do hereby state and declare under penalty of perjury, that I have read the answers to Interrogatories 3-5,8 and10-24 and the contents thereof are true and correct to the best of my knowledge and belief.

Craig O'Connor (signature) 10/9/07

Craig O'Connor Date

Pursuant to 28 U.S.C. § 1746, I, Brian Sant Angelo, do hereby state and declare under penalty of perjury, that I have read the answers to Interrogatories 11,12,14,16,17 and 20 and the contents thereof are true and correct to the best of my knowledge and belief.

Brian Sant Angelo — 10/9/07

Brian Sant Angelo    Date

Pursuant to 28 U.S.C. § 1746, I, Faisal Siddiqui, do hereby state and declare under penalty of perjury, that I have read the answers to Interrogatories 1, and 2 and the contents thereof as are true and correct to the best of my knowledge and belief.

_______________________ 10/9/07
Faisal Siddiqui Date

# EXHIBIT
# 1

July 27, 2004

MEMORANDUM

TO: Elliott H. Davis, Director
Office of Human Resources

FROM: Michael Forgione
Vice President, International Business Development Division

SUBJECT: Request for a Superior Qualifications appointment for Sharon Nuskey

Approval is requested, pursuant to Superior Qualifications appointment authority in 5 CFR 531.203(b)(4)(i-iii), to give a Superior Qualifications appointment to Ms. Sharon Nuskey. Ms. Nuskey has been selected for the position of Business Development Specialist GS-1101-11 in the International Business Development Division (Announcement No.04-016DEU). I am requesting that she be appointed at the GS-11, step ~~9~~ 10 with an annual salary of ~~$64,083~~ 65,769 based on the following facts.

**1. The Superior Qualifications of the Individual or the special needs of the Bank.**

Ms. Nuskey has an extensive working experience working in an array of issues relevant to the work of the Bank, She also has an impressive educational profile, she has a MS from Duke University in Public Policy and an MBA from Columbia University with a concentration in international business and management of organizations. She has a Bachelors in Economics and English from Chatman College.

Since June of 2001, Ms. Nuskey has been working as a consultant with MHart Communications, Red Canopy, The Five O'Clock Club and Georgetown University. Her consultancy work consisted of detailed market research, analysis of budgetary data and projections, and development of marketing plans and feasibility studies.

From 1999 to 2001 Ms. Nuskey worked as a research analyst with the Packard Foundation where she participated in all aspects of planning, communications and administration of more than $200M in grants and conducted economic research and analyses for domestic and international program development.

From 1993 to 1998 Ms. Nuskey worked as an Assistant Professor of econoics, international relations and marketing.

From 1991 to 1993 Ms Nuskey worked as a research associate where she co established and defined a Global Management department for one of the world's leading international business research organizations. In this capacity, she gathered information, conducted market and statistical analyses and disseminated competitive intelligence tailored to the needs of clients representing multiple industries and conceived and designed materials in support of international sales and marketing efforts.

From 1985 to 1986 she worked at the Office of Management and Budget in the capacity of a junior Economist, where she analyzed and interpreted statistical trends and qualitative data, assisted in forecasting and developing budgetary goals and conducted cost-benefit analysis of a $6.2M information processing system.

**2. The factors considered in determining the individual's existing pay, and any reason for setting pay at a rate higher than that needed to match existing pay.**

Ms. Nuskey has a bona fide offer with an annual salary of $80,000 as a Senior Research Analyst with the Five O'Clock Club. A copy of the offer letter is attached. Without approval of the Superior Qualifications appointment, we will be unable to recruit Ms. Nuskey, and other candidates do not possess the breadth and depth of experience of Ms Nuskey.

**3. The reasons for authorizing an advanced rate instead of or in addition to a recruitment bonus.**

Ms. Nuskey will also be put in to participate in the Student Loan Repayment program, therefore, payment of a recruitment bonus is not appropriate. Approval of the Superior Qualifications appointment with an annual salary of $64,083 is appropriate considering the bonafide job offer Ms.Nuskey has and her vast research and marketing experience.

It is not anticipated that approval of this request will have any negative impact on the morale of current employees in the Bank. I believe that based on Ms. Nuskey's experience, approval of the Superior Qualifications appointment at GS-11, ~~step 9~~, 10 with an annual salary of ~~$64,083 is~~ appropriate. The Bank cannot afford to loose an applicant with these qualifications. 65,769

Approved: ______________________
Director, Office of Human Resources

# EXHIBIT
# 2

Interrogatory Exhibit 2

<u>Charles Barnett work assignments "in support of any of the Bank's Directors and/or their staff"</u>

- 08/23/04: drafted briefing memo for Chairman Merrill's meeting with Algerian Minister of Energy.
- 09/09/04: drafted letters from Chairman Merrill to Eli Lilly and Johnson Controls.
- 09/30/04: drafted briefing memo on Ex-Im activity in Egypt for Director Grandmaison's meeting with Egyptian Minister of Finance and attended meeting.
- 09/30/04: drafted briefing memo on Standard Bank for Vice Chair Foley meeting with same.
- 10/04/04: drafted briefing memo for Vice Chair Foley meeting with Dr Salman Shah, Advisor to the Prime Minister, Pakistan; also attended meeting.
- 10/05/04: drafted briefing memo for Vice Chair Foley meeting with Dr Umayya Toukan, Governor of the Central Bank, Jordan; also attended meeting.
- 10/05/04: short brief provided to Director Conlin on John Richter's meeting with Johnson Controls for her meeting with same.
- 10/06/04: attended Vice Chair Foley meeting with Humayun Akhtar Khan, Minister of Commerce, Pakistan.
- 10/12/04: drafted briefing memo for Director Conlin meeting with Waukesha Engines.
- 10/18/04: drafted briefing memo for Chairman Merrill's meeting with Ambassador to Indonesia, B. Lynne Pascoe; also attended meeting
- 10/19/04: drafted briefing memo for Vice Chair Foley meeting with Mirant; also attended meeting.
- 10/21/04: drafted briefing memo for Vice Chair Foley meeting with (then) Ambassador to Pakistan, Ryan Crocker; also attended meeting.
- 10/22/04: attended Vice Chair Foley meeting with Oakley Johnson, Vice President, AIG.
- 10/22/04: drafted briefing memo for Vice Chair Foley meeting with Sonangol (Angola's state-owned oil/gas co.).
- 10/26/04: attended Vice Chair Foley meeting with Ilyas Bhatti, President, Bhatti Group
- 11/05/04: drafted briefing memo for Chairman Merrill (London) meeting with Iraq Prime Minister Ayad Alawi.
- 12/07/04: attended meeting with Vice Chair Foley re Iraq marketing plan along with Grayson Wolfe, Steve Maroon and Zach Lauckhardt.
- 12/09/07: corresponded with Michael Stoddard, Trade Source International, re Ex-Im Iraq special facility at Vice Chair Foley's request.
- 12/28/04: attended Director Grandmaison meeting with Mr. Fahmy, Egyptian Ambassador to the U.S.
- 12/2004: provided assistance to Talaat Rahman for her preparation for and staffing of Chairman Merrill, GC Saba and SVP Miller's China trip.

- 01/12/05: attended conference call in Director Conlin's office re Sonatrach along with Michael Forgione and John Richter.
- 02/10/05: drafted Vice Chair Foley letter to H. E. Ravdan Bold, Mongolian Ambassador to the U.S.
- 02/11/05: attended Vice Chair Foley meeting with Richard Moncrief of Moncrief Oil re Iraq.
- 02/14/05: attended meeting re West Bank / Gaza at DoC chaired by hosted by Grant Aldonis, DoC, with Vice Chair Foley.
- 02/18/05: met Vice Chair Foley re Mongolia.
- 03/08/05: attended Director Grandmaison meeting with Rasheed Mohamed Rasheed, Egyptian Minister of Foreign Trade and Industry.
- 03/07/05: attended Director Grandmaison meeting with American Chamber of Commerce Egypt group.
- 03/10/05: attended Vice Chair Foley meeting with Robert Eid, Managing Director, National Bank of Kuwait.
- 03/18/05: drafted briefing memo for Vice Chair Foley's meeting with Dr. Ahmad Hindawi, Minister of Industry and Trade (Jordan) and Dr. Mohammad Abu Hammour, Minister of Finance (Jordan); also attended meeting.
- 03/23/05: attended luncheon hosted by Pakistan Embassy with Vice Chair Foley.
- 03/29/05: provided briefing for Director Conlin re Sonatrach in preparation for the USABC Energy and Water Symposium; briefed her along with Jessica Farmer. Request came from Alexander Ellis. Cannot find approval notification (from Michael Forgione or John Richter).
- 04/11/05: attended Vice Chair Foley meeting with Rose Wazari. Chamber of Commerce in Jordan (JABA) along with Michael Forgione and Grayson Wolfe. Approval email from Michael Forgione available.
- 04/14/05: drafted briefing memo for and attended Vice Chair Foley meeting with Govt. of Pakistan delegation during Ex-Im annual conference.
- 04/16/05: attended Vice Chair Foley and Director Grandmaison meeting with Mike Edmondson, Case New Holland.
- May 2005: provided trip planning and staffing support (to include drafting briefing memos, attending meetings and thank you letters) for Vice Chair Foley's trip to Amman, Jordan for the BMENA conference and her follow-on trip to Tunisia.

# EXHIBIT
# 3

Interrogatory Exhibit 3

Plaintiff's work assignments "in support of any of the Bank's Directors and/or their staff"

September 2, 2004: Nuskey meeting with Directors Conlin, Grandmaison, V-C Foley, Miller, and Kostic with representatives from DFI on IFI cofinancing pilot program.

September 24, 2004: Meeting with Director Conlin (MK/SN/Conlin staff)

October 12, 2004: Meeting w. Director Conlin and Commerce Dept. officials (Conlin, MK, SN, and Conlin staff, commerce officials). Held at Dept. of Commerce.

November 17, 2004: Met with V-C Foley and Cisco reps on Bulgarian Project – BTC $120 million. Followed transaction on daily basis. Worked on LI and attended all meetings until told to stand down.

November 19, 2004: Met with Director Conlin and Cisco reps on Bulgarian Project.

November 22, 2004: Follow up meeting with CISCO – Director Conlin's office. (Nuskey/Kostic,Emens,Forgione)

December 2, 2004: Follow up with CISCO – Director Conlin

January 11, 2005: Attended meeting with Director Colin and George Handy – Dir. Conlin's office.

January 19, 2005: Meeting with Director Conlin - SEE strategy paper.

January 25, 2005: Director Conlin meeting with MK/SN

January 26, 2005: Meeting w Director Conlin staff, SN, MK

March 4, 2005: Attended Baltic Ambassadors luncheon with Vice-Chair Foley in my absence. Sharon also prepared briefing materials for VC Foley.

April 25, 2005: Attended meeting on Investment Fund for South Central Europe in VC Foley's office. (MK/SN) Prepared briefing paper.

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant's Answers to Plaintiff's First Set of Interrogatories was served upon counsel for Plaintiff by courier to:

Diana J. Veilleux, Esq.
Shaw, Bransford, Veilleux & Roth
1000 Connecticut Avenue, N.W.
Suite 900
Washington, DC 20036

on this 11th day of October 2007.

ALAN BURCH
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204
alan.burch@usdoj.gov