UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHARON L. NUSKEY,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. LAMBRIGHT,<br>CHAIRMAN AND PRESIDENT,<br>EXPORT-IMPORT BANK OF<br>THE UNITED STATES,<br><br>Defendant. | Civil Action No.: 06-1573<br><br>Judge Paul L. Friedman/<br>Magistrate Judge John M. Facciola<br><br>Dated: February 5, 2008 |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL AN INDEPENDENT MEDICAL EXAMINATION
AND TO COMPEL PRODUCTION OF MEDICAL RECORDS

Pursuant to Fed. R. Civ. P. 35, Fed. R. Civ. P. 37(a), and L.Cv.R. 7, and this Court's Minute Order entered on January 25, 2008, the Plaintiff, Sharon L. Nuskey, hereby submits, by and through undersigned counsel, her Opposition to Defendant's Motion (1) For Order of Mental Examination and (2) To Compel Production of Medical Records [27][1] (hereinafter "Defendant's Motion to Compel"). Based upon the foregoing, Plaintiff respectfully requests the Court to deny Defendant's Motion to Compel in its entirety.

I. FACTS AND PROCEDURAL HISTORY.

Plaintiff filed her complaint on September 8, 2006 and, pursuant to 42 U.S.C. § 2000e-16 ("Title VII"), 29 U.S.C. § 633a(c)("ADEA") and 42 U.S.C. § 1981a, alleged discrimination and

[1] For ease of reference, the bracketed numbers reference the respective notice, pleading, or order as numbered in the Court's docket.

harassment on the basis of her gender (female) and age (over the age of 40 years old), as well as reprisal, which stemmed from her employment in and termination from her position with Defendant as a Business Development Specialist, GS-1101-11, Step 10. See Complaint [1]. Relevant to this Opposition, Plaintiff alleged in her Complaint damages stemming from the "humiliation, pain and embarrassment" directly caused by the Defendant's unlawful actions. Id., ¶ 58. Subsequently, the parties jointly filed the Rule 16.3 Report [16] on June 22, 2007. In the Rule 16.3 Report, Plaintiff did not list an expert witness with respect to non-pecuniary compensatory damages. See Rule 16.3 Report, § 9.

Thereafter, the parties propounded written discovery requests. See Exhibit # 1, Declaration of Lisa A. Bernstein (hereinafter "Bernstein Declaration"), ¶ 2. In Defendant's first set of discovery requests, Defendant asked for a computation of damages and all documents in support thereof. See Exhibit # 2, Plaintiff's Responses to Defendant's First Set of Discovery Requests.[2] Plaintiff provided responses thereto on August 8, 2007. Id. Plaintiff's responses included medical records[3] in her possession at that time, to be supplemented upon receipt of additional documents, if any, from her health care providers. Id., Exhibit # 1, Bernstein Declaration, ¶ ; see also Exhibit # 3, Declaration of Plaintiff, ¶ 2. Plaintiff further responded to

---

[2] Plaintiff's August 8, 2007 and September 7, 2007 discovery responses contain a verbatim recitation of Defendant's discovery requests and thus the filing of Plaintiff's responses comports with L.Cv.R. 5.2(b) and obviates the need of filing additional exhibits, i.e., a copy of Defendant's Requests.

[3] On January 28, 2008, Plaintiff designated certain documents responsive to the Defendant's discovery requests as protected under the October 31, 2007 Joint Stipulated Protective Order (hereinafter "JSPO") [24]. Responsive documents which are included as exhibits to Plaintiff's Opposition are therefore being filed under seal pursuant to the JSPO and L.Cv.R. 5.1(j). The medical records referenced above are submitted under seal as "Attachment to Exhibit # 2."

the first requests by attesting that as a result of the Defendant's discriminatory actions, harassment, and reprisal, Plaintiff suffered from, *inter alia*, "humiliation" and "embarrassment" and became "clinically depressed and has suffered a loss of enjoyment of life." See Exhibit # 2, Plaintiff's Responses to Defendant's First Set of Discovery Requests (Interrogatory # 1). Plaintiff also attested to her feelings of "stress and anxiety" and attendant symptoms, to include, *inter alia*, sleep loss, weight loss, gastrointestinal disorders, poor concentration, uncontrolled tearfulness, irritableness, and being socially withdrawn. Id. Plaintiff also indicated that she was being treated by and would continue to be counseled by a therapist. Id. Plaintiff also provided medical records pertaining to prescriptions for depression and anxiety as well as the gastrointestinal disorder. Id.

In Defendant's second set of written discovery requests, Defendant requested: (1) all medical records from the past 10 years (Request # 19); (2) a signed generic medical release from Plaintiff authorizing the release of all medical records from all medical providers (Request # 20); and (3) that Plaintiff produce all documents in support of her claim for compensable physical or emotional damages (Request # 21). See Exhibit # 4, Plaintiff's Responses to Defendant's Second Set of Discovery Requests. Plaintiff responded to the second set of requests on September 7, 2007. Id. Plaintiff objected to the relevance and time frame of the request for all medical records for the last 10 years, and objected to the request for releases because, *inter alia*, the Plaintiff was "claiming garden variety compensatory damages." Id., Responses to Requests # 19 and # 20. Plaintiff further (and again) indicated that all relevant medical documents would be produced once received from her respective health care providers. Id. Consistent with Fed. R. Civ. P. 26(e), on December 21, 2007 and again on January 24, 2008, Plaintiff supplemented her

responses to Defendant's discovery requests and produced additional medical records received from her treating physician, psychiatrist, and therapist. See Exhibit # 1, Bernstein Declaration, ¶ 5 and ¶ 15; Exhibit # 5, Medical Records (submitted under seal). Contemporaneously with the filing of this Opposition, Plaintiff has again supplemented her responses to note an additional health care provider from 2002 which Plaintiff contends is outside any reasonable time-frame for discovery and irrelevant to her damages claims. See Exhibit # 6, Supplemental Response to Interrogatory # 20 (submitted under seal). Plaintiff has asked this health care provider to produce any records the provider has on file. Id. Plaintiff is not in possession of any other responsive documents. See Exhibit # 3, Plaintiff's Declaration, ¶ 11.

On January 23, 2008, Defendant moved for an order requiring Plaintiff to submit to an independent medical examination (hereinafter, "IME") pursuant to Fed. R. Civ. P. 35(a) and to produce her medical records. See Defendant's Motion to Compel [27]. Defendant contends that because Plaintiff has placed her mental condition in controversy based upon the claim of damages in the Complaint and the above-referenced discovery responses, good cause exists for ordering Plaintiff to submit to an IME. Id, at 2 - 3. Defendant also contends that Plaintiff has not produced her medical records, notwithstanding the above representations and responses to Defendant's discovery requests. Id. at 4 - 5. As detailed below, Plaintiff has not placed her mental condition in controversy and no good cause exists for ordering an IME. In addition, Plaintiff has produced all responsive medical records in her possession. See Exhibit # 3, Plaintiff's Declaration.

## II. ARGUMENT.

Defendant's Motion to Compel should be denied in its entirety. Defendant's request for an IME should be denied for the following reasons: (1) Plaintiff has and continues to manage her depression through therapy and medication; (2) Plaintiff has not and will not present an expert witness with respect to her claims for non-pecuniary damages; (3) Plaintiff at no time asserted any claim of intentional infliction of emotional distress; (4) and Plaintiff has not conceded that her mental condition is in controversy because she is not claiming more than "garden variety" compensatory damages. Further, no good cause exists for ordering the IME as Defendant will have the full opportunity to depose Plaintiff as well as her treating physicians regarding her claims. Finally, Defendant's Motion to Compel medical records must be denied as Plaintiff has provided all responsive medical records in her possession.

### A. The Request for an IME Should Be Denied as Plaintiff's Mental Condition Is Not in Controversy and Defendant Has Not Established Good Cause for Ordering the IME.

Fed. R. Civ. P. 35 sets forth the requirements which must be met for issuance of an order requiring an IME. The party's mental condition must be "in controversy" and "good cause" must be shown before an order requiring an IME can be issued. Fed. R. Civ. P. 35(a). The Supreme Court set forth the principle that Fed. R. Civ. P. 35 "requires discriminating application by the trial judge ... as to ... whether the party requesting a mental ... examination ... has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause' which requirements ... are necessarily related." Schlagenhauf v. Holder, 379 U.S. 104, 118-19 (1964). In Schlagenhauf, the Court refused to grant the wide-ranging IMEs sought of the

plaintiff, a bus driver involved in a collision with a tractor-trailer, and determined that such broad application of IMEs in motor vehicle negligence cases would have an "untoward result." Id. at 121-122. The exponential increase in the filing of employment discrimination cases in the last two decades prompted one court, in applying Schlagenhauf, to note that similar principles counseled against ordering an IME in every employment discrimination case wherein a plaintiff makes a claim of emotional distress. See Bowen v. Parking Authority of the City of Camden, 214 F.R.D. 188, 192 (D.N.J. 2003).

Subsequent courts have applied the above guidance with differing results; however, it has been noted that a majority of the courts will not issue an order for an IME where the party has claimed "garden variety" compensatory damages or made a claim for emotional distress, unaccompanied by any other allegations of serious mental and/or psychiatric injury. See Benham v. Rice, 03-CV-1127 (September 14, 2007) (HHK), overruling, in part, Benham v. Rice, 238 F.R.D. 15 (D.D.C. 2006)[4], and citing, Turner v. Imperial Stores, 161 F.R.D. 89, 97 (S.D.Cal. 1995)(quoting, Sabree v. United Bhd. of Carpenters & Joiners, 126 F.R.D. 422, 426 (D.Mass. 1989)); see also, Bowen, supra, 214 F.R.D. at 193 (noting that "most courts agree that for a plaintiff's mental status to be 'in controversy' requires more than 'garden variety' emotional distress allegations [...].").

Often cited by the district courts are the five factors set forth in the Turner court's analysis of the application of Rule 35. In Turner, the court indicated that an IME should not be ordered where the following factors are not present: (1) a claim for intentional or negligent

---

[4] As acknowledged by the Court in that decision, the line of cases followed by the Magistrate Judge was in the minority. See Benham, 238 F.R.D. at 28.

infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is "in controversy." Turner, supra, 161 F.R.D. at 95.

The Turner court, after noting the absence of the above five factors, denied a request for an IME despite the plaintiff's demand for $1 million in compensatory damages as a result of the "humiliation, mental anguish, and emotional distress" suffered as a result of alleged discriminatory actions of the defendant. Id. at 97. The court also made an important distinction that "emotional distress" did not always and necessarily equate with "mental injury" as Schlagenhauf applied the term. Id. at 95.

Other jurisdictions have followed the reasoning in Turner and have similarly refused to issue orders for IMEs. In Bowen, for example, the court made significant note of the 2000 amendments to Fed. R. Civ. P. 26(b) which narrowed the scope of discovery from facts relevant to the "subject matter" of a lawsuit to matters related to "a claim or defense" of a party. Bowen, supra, 214 F.R.D. at 193-94. The court denied the motion for an IME where the movant failed to demonstrate the existence of the Turner factors despite noting that the plaintiff presented with "symptoms of depression" as evidenced by records from his treating physician.[5] Id. at 194-95. The Bowen court reviewed a related issue to the above factors, i.e., whether the plaintiff alleges

[5]As in the instant case, the plaintiff in Bowen intended to call his treating physician at trial, but not as an expert witness. The Bowen court remarked that this too was a factor in its decision and differentiated between a physician testifying as a "treating" doctor as opposed to an expert witness. See Bowen, supra, 214 F.R.D. at 194 and n. 6. The court noted that "[h]ad the plaintiff planned to present an expert at trial, the court's decision may well have come down in favor of examination." Id. at n. 6.

"the existence of ... present, ongoing, or *permanent* mental injury or disorder." Id. at 195 (emphasis added).[6] The Bowen court did not find that the plaintiff raised any claim as to serious, permanent injury and rejected the request for an IME. Id. at 195.

In Blake v. U.S. Bank National Assoc., 2004 WL 5254174 (D.Minn. May 19, 2004), the court followed the line of reasoning that "boilerplate allegations of 'mental anguish,' 'emotional distress,' and 'embarrassment and humiliation,' provide a legally insufficient basis for [ordering an IME]." Id. at *2, citing, O'Sullivan v. State of Minnesota, 176 F.R.D. 325, 327 (D.Minn. 1997). The Blake court remarked upon the difference between emotional distress and mental injury, as did the Turner court, and also noted that the principle behind ordering a Rule 35 examination was "to provide a 'level playing field' between the parties in their respective efforts to appraise the Plaintiff's psychological state." Id., citing, O'Sullivan, supra, 176 F.R.D. at 327. The court did not issue an order for an IME, despite the plaintiff's claims of a diagnosis of adjustment disorder and claim of significant emotional distress damages in the neighborhood of $150,000; however, the plaintiff stipulated that she would not present an expert witness or medical evidence regarding her psychological treatment. Blake, supra, at *4.

In Ricks v. Abbott Laboratories, 198 F.R.D. 647 (D.Md. 2001), the court denied a request for an IME where the claimed emotional distress was not so severe as to require an expert to

[6] The cases cited in Bowen, supra, uniformly referred to serious, permanent mental injury as a factor in favor of ordering an IME. Id., citing, Womack v. Stevens Transport, Inc., 205 F.R.D. 445, 447 (E.D.Pa. 2001) (present inability to work due to psychological injury); Gattegno v. Pricewaterhousecoopers, LLP, 204 F.R.D. 228, 232 (D.Conn. 2001) (plaintiff alleged that she would continue to suffer emotional distress and also included a claim of negligent infliction of emotional distress); Ziemann v. Burlington County Bridge Comm., 155 F.R.D. 497, 501 (D.N.J. 1994) (alleged 60% permanent psychiatric disability); Duncan v. Upjohn Co., 155 F.R.D. 23, 25 (D.Conn. 1994) (plaintiff "totally disabled" and suffered "permanent" psychiatric / psychological injury).

explain the damages, or required it to be described in clinical terms. Id. at 649, citing, Fox v. Gates Corp., 179 F.R.D. 303, 307 (D.Colo. 1998). In addition, the plaintiff did not intend to call an expert witness to support the claim of emotional distress. Id.

Decisions on requests for IMEs in this court have, up to the point of Judge Henry H. Kennedy, Jr.'s decision in Benham, supra, appeared to be inclined to grant motions for IMEs. In Roberson v. Bair, 242 F.R.D. 130 (D.D.C 2007) (JMF), an IME was ordered where the plaintiff proffered her treating physician who would opine that the anxiety and depression was caused by the discriminatory conduct of the defendant, id. at 137, thus proffering an expert opinion. In Kalantar v. Lufthansa German Airlines, 2007 WL 1098708 (D.D.C. April 11, 2007) (HHK/JMF), an IME was ordered where plaintiff claimed, *inter alia*, "permanent psychological disability." Id. at * 4. As well, Benham v. Rice, 238 F.R.D. 15 (D.D.C. 2006) (HHK/JMF), prior to its reversal, in part, by Judge Kennedy, ordered an IME for "garden variety" claims of emotional distress. In Doe v. District of Columbia, 229 F.R.D. 24 (D.D.C. 2005) (GK/JMF), an IME was ordered where the plaintiff did not contest at any time that his mental condition was in controversy. Id. at 26-27. In Smith v. Koplan, 215 F.R.D. 11 (D.D.C. 2003) (JGP/JMF), an IME was ordered where the plaintiff admitted she was in the process of finding an expert to substantiate her emotional distress claims. Id. at 13. Likewise, in Chiperas v. Rubin, 1998 WL 765126 (D.D.C. November 3, 1998) (TPJ/JMF), an IME was ordered where plaintiff intended to proffer an expert witness regarding damages stemming from emotional distress and attesting to the diagnosis of Major Depressive Disorder. The recurrent theme in each of these decisions is the plaintiff's proffer of an expert opinion, a claim of permanent mental injury, and / or a concession that the mental condition of plaintiff was in controversy. In light of the Plaintiff's

proffered evidence in this case, the above cases are distinguishable.

First, Defendant has not established that Plaintiff's mental condition is "in controversy" and Plaintiff has claimed no more than "garden variety" compensatory damages. Unlike the cases from this jurisdiction, Plaintiff has neither conceded that her mental condition is "in controversy" as in Doe, supra, nor has Plaintiff designated an expert witness to support her claim of damages stemming from the emotional distress, as in Smith, supra or Chiperas, supra. Further, Plaintiff has not claimed severe "permanent psychological disability" as the plaintiff in Kalantar. For these reasons, the Court should deny Defendant's Motion to Compel.

Moreover, Plaintiff's claim of damages stemming from emotional distress does not warrant the issuance of an order requiring an IME under the Turner factors. Plaintiff has not raised a claim of intentional and/or negligent infliction of emotional distress; has not made a claim of unusually severe emotional distress; and has not designated and will not designate an expert witness to support her claim. See e.g. Complaint; Exhibit # 2, Plaintiff's Responses to Defendant's First Set of Discovery Requests (Interrogatory # 1). Plaintiff does acknowledge, however, that she has suffered from depression as a result of the Defendant's discriminatory conduct. Id.

Plaintiff's depression, however, in the absence of the other four Turner factors, does not warrant a finding that Plaintiff has placed her mental condition "in controversy." While it is true Plaintiff has claimed the statutory cap for compensatory damages, see Complaint, the amount of damages, alone, is not sufficient justification for ordering an IME. See Turner, supra, 161 F.R.D. at 97 (plaintiff claimed damages in excess of $1 million for emotional distress; defendant cited to no cases for principle that amount of damages was somehow relevant to analysis of

whether to order an IME). Although Plaintiff suffers from depression, the symptoms are not "unusually severe" so as to preclude her from being employed, pursuing other job opportunities, attending interviews, or otherwise rendering her incapable, if reinstatement was ordered, to return to her position with Defendant. See generally, Complaint (request for relief); see Exhibit # 2, Plaintiff's Responses to Defendant's First Set of Discovery Requests (Interrogatory # 1); and see Exhibit # 4, Plaintiff's Responses to Second Set of Discovery Requests (Responses to Interrogatory # 16 and # 17). For these reasons, Plaintiff has claimed "garden variety" compensatory damages. Id., Exhibit # 2 (objection to Request # 20).

Moreover, the medical records produced to Defendant indicate that while Plaintiff has been seen on a regular basis by a psychiatrist, and has taken prescription medications for her depression, Plaintiff has, at no time, presented or exhibited unusually severe symptoms associated with Major Depressive Disorder, or for example, needed or required hospitalization. See Exhibit # 2, Plaintiff's Responses to First Set of Discovery Requests; see e.g., Chiperas, supra, 1998 WL 765126 at * 2 and n.3, citing, Diagnostic and Statistical Manual for Mental Disorders ("DSM-IV") at 340 (noting seriousness of Major Depressive Disorder because of risk of suicide); see also, EEOC v. Grief Brothers Corporation, 218 F.R.D. 59 (W.D.N.Y. 2003) (noting that depression is not a "garden variety" form of emotional distress).[7] Plaintiff has been

[7] The Grief Brothers Corporation decision, as it pertained to its conclusion that depression is not a "garden variety" type of emotional distress, makes this statement without sufficient analysis of the Turner factors. In Turner, analysis of whether or not to order an IME turned upon various factors, which expressly included whether a party is claiming "unusually severe" emotional distress. See Turner, supra, 161 F.R.D. at 95. While Plaintiff suffers from depression, she has not claimed that it is so "unusually severe" as to require her to be hospitalized and has not claimed permanent psychiatric injury. Plaintiff's case is entirely distinguishable from the plaintiff in Grief Brothers Corporation, who suffered from depression since his teenage years, had a brother who committed suicide, and who twice attempted suicide.

told by her treating psychiatrist that she will most likely complete her counseling and treatment within a year to a year and a half from the resolution of the litigation. See Exhibit # 3, Plaintiff's Declaration, ¶ . Thus, although the mental injury may be "ongoing," it is predicted to diminish over time with a view toward resolution, and is certainly not permanent. See e.g., Bowen, supra, 214 F.R.D. at 195-96 (citing cases involving ongoing and permanent injury wherein IMEs were ordered).

In addition to the above reasons, whether analyzed under the "in controversy" or "good cause" prongs of Rule 35, alternative avenues of discovery are readily available to Defendant. See e.g., Doe v. District of Columbia, supra, 229 F.R.D. at 26, citing, Schlagenhauf, supra, 379 U.S. at 118 - 119; see also, Smith v. Koplan, supra, 215 F.R.D. at 14 - 15 (request for IME can be overcome if information can be obtained by other means). Here, Plaintiff has produced responsive medical records to Defendant, is prepared to sit for her deposition, and has provided names and addresses of her treating physicians, psychologists, and therapists for potential depositions. It is notable, however, that Defendant has, to date, only indicated the intent to depose Plaintiff's "treating doctor," despite the fact that Plaintiff has identified four separate health care providers. See Exhibit # 4, Plaintiff's Responses to Defendant's Second Set of Discovery (Interrogatory # 20). Since Defendant has in its possession the Plaintiff's medical records and is able to notice any and all depositions of Plaintiff and her health care providers, adequate, available, and alternative means exist for Defendant "to challenge plaintiff's claim that

---

See Grief Brothers Corporation, 218 F.R.D. at 62; see also Cauley v. Ingram Micro, Inc., 216 F.R.D. 245 (W.D.N.Y. 2003) (plaintiff claimed severe emotional harm resulting in hospitalization; IME ordered); see also, Exhibit # 3, Plaintiff's Declaration, ¶ 9 (treatment expected to be completed within one to one and a half years).

she was harmed and that defendant was the source of that harm." Benham, supra, 238 F.R.D. at 28 - 29.

Further, because Plaintiff is not designating an expert witness who will offer a medical opinion as to causation, there is no justification for Defendant to argue that an IME must be ordered to "level the playing field." See e.g., O'Sullivan, supra, 176 F.R.D. at 327. The principle behind the ordering of an IME is to enable the party defending against the claim of compensatory damages to present its own expert evaluation. Built within Rule 35 is the basic premise that the examination will be conducted by a licensed, qualified professional who will thereafter issue a report (which qualifies as an expert report) for possible submission in deposition or at trial. See Fed. R. Civ. P. 35(a)("suitably licensed and certified examiner" must conduct examination) and (b) (report must set forth diagnoses and conclusions). Where the Plaintiff is not presenting any expert of her own as to non-pecuniary damages stemming from her emotional distress, there is no need to level the playing field by permitting an IME to be conducted and the attendant expert report to be prepared.

While many of the cases do not specifically address the "good cause" prong of Rule 35, it is further noted as a basis for denying the Defendant's Motion to Compel that the excessively intrusive element of an IME of Plaintiff, under these circumstances, is not warranted. Judge Kennedy noted this consideration in Benham by opining that restraint must be shown when deciding whether to order an IME. "Extraordinarily intrusive as they invariably are, such orders would have an unwarranted chilling effect on persons who believe that they have been subjected to unlawful discrimination if they faced a physical or mental examination anytime they sought redress for such perceived discrimination." Benham, 03-CV-1127, Slip. Op. at 3. The Bowen

court also noted a similar factor to be considered before issuing an order for an IME. "Hanging in the balance, of course, are on the one side the plaintiff's constitutional right to privacy of mind and body and on the other the defendant's interest in obtaining all relevant information for defense of the case." Bowen, supra, 214 F.R.D. at 192.

In this case, Plaintiff should not be subjected to the "extraordinarily intrusive" probing that an IME would entail. The fact that she is not presenting expert testimony on the issue of emotional distress counsels against invading her "constitutional right to privacy of mind and body." Id. Plaintiff also questions Defendant's intent to temper such extraordinary intrusion, since Defendant has not indicated any limitation as to time or scope of inquiry to be placed on its designated expert who will conduct the examination. See Defendant's Motion to Compel. Thus, Defendant's examination of Plaintiff appears to be designed to be as intrusive as possible, especially in light of the Defendant's request for a signed generic medical release and the request for all medical records dating back 10 years. See Exhibit # 4, Plaintiff's Responses to Defendant's Discovery Requests (Request # 19). Further, Plaintiff also doubts the ability of Defendant to utilize any personal and private information about her properly where Defendant, without any basis in fact, has declared in its Motion to Compel that Plaintiff's testimony as to her emotional distress is "self-serving and unreliable and her credibility is a major issue on this point."[8] See Defendant's Motion to Compel at 3. The impropriety of such representation in a

[8] Neither Plaintiff nor her treating physicians have been deposed in this matter. Plaintiff has already provided responsive medical records which evidence her treatment for depression and anxiety. Thus, it is not clear how Defendant can arrogate to itself the role of fact-finder, without reference to any record evidence, and declare that Plaintiff's "testimony" as to her emotional distress is "self-serving and unreliable" and that her "credibility" is at issue. Surely, representations in pleadings are held to a higher standard than this rogue, unsupported statement of mixed fact and opinion.

pleading (without any citation to record evidence) calls into question the Defendant's ability to adhere to the strictures of Fed. R. Civ. P. 26(b) and its avoidance of probing into personal and private issues merely for the sake of "annoyance, embarrassment [or] oppression." Fed. R. Civ. P. 26(c).

In summary, Plaintiff's concerns are legitimate and justified, especially in light of the fact that Defendant has already demonstrated a level of disregard for Plaintiff's privacy when the Defendant publicly announced at a staff meeting that Plaintiff was "terminated" from her position because of Plaintiff's "misperception" of the requirements of the position and because she was "not a good fit." See Exhibit # 2, Plaintiff's Responses to Defendant's First Set of Discovery Requests, at 3. Accordingly, Defendant has failed to establish good cause for issuance of an Order compelling Plaintiff to submit to an IME.

### B. Plaintiff Has Produced All Responsive Medical Records in Her Possession and Defendant's Motion Must Be Denied.

Defendant has moved this Court to compel the production of Plaintiff's medical records. Defendant requested all medical records of Plaintiff for the last 10 years. See Exhibit # 4, Plaintiff's Responses to Defendant's Discovery Requests (Request # 19). Defendant also requested a signed generic medical release, id. (Request # 20), and all documents in support of Plaintiff's claim for emotional damage. Id. (Request # 21). Defendant has failed to inform the Court in its Motion that Plaintiff previously produced to Defendant responsive medical records in her possession on August 8, 2007 and again on December 21, 2007 and January 24, 2008. See Exhibit # 1, Bernstein Declaration, ¶ 2, ¶ 5, and ¶ 15, and Exhibit # 3, Plaintiff's Declaration, ¶ 2, ¶ 3, and ¶ 11. It is important to note as well that Defendant failed to note to the Court in its

Motion that Plaintiff did supplement her responses via a subsequent production of records on December 21, 2007 and Defendant did not include in its Motion, any reference, as an exhibit or otherwise, to these records. Presently, Plaintiff has produced all responsive medical records in her possession and is withholding only two pages of medical records that are wholly unrelated to Plaintiff's claims in this matter.[9] Id. Plaintiff has also supplemented her discovery responses, see Exhibit # 6, and is in the process of obtaining documents from a health care provider she treated with in 2002. See Exhibit # 3, Plaintiff's Declaration, ¶ 10 and ¶ 11.

Further, Plaintiff's objections to the exceedingly over broad request for all medical records for the past 10 years as well as a signed generic medical release are well founded. Plaintiff has already produced responsive documents to the requests at issue. Further, Plaintiff has also made all reasonable efforts to obtain responsive documents from third parties (i.e., her health care providers) and has produced those documents obtained. Defendant fails to acknowledge that discovery is not as wide-ranging with respect to third party documents. See Food Lion, Inc. v. United Food and Commercial Workers Int'l Union, 103 F.3d 1007, 1012-14 (D.C. Cir. 1997) (finding that "relevant" did not extend to third and fourth party documents). Discovery, subsequent to the 2000 amendments, is also not as wide-ranging to countenance a request for Plaintiff's records dating back 10 years. See e.g., Behler v. Hanlon, 199 F.R.D. 553, 555 (D. Md. 2001) (Rule 26 is more narrow subsequent to the amendments). As Plaintiff has produced all responsive documents to these requests in her possession, the Defendant's Motion to Compel must be denied.

---

[9]These documents and information are being produced under seal contemporaneously with this Opposition for *in camera* review.

III. CONCLUSION.

Based upon the foregoing, Defendant's Motion (1) for an Order of Mental Examination and (2) To Compel Production of Medical Records [27] must be denied.

Respectfully submitted,

/s/

/s/ Diana J. Veilleux
D.C. Bar No. 418292
Dveilleux@shawbransford.com
/s/ Ralph C. Conte
D.C. Bar No. 447022
rconte@shawbransford.com
/s/ Lisa A. Bernstein
D.C. Bar No. 466215
lbernstein@shawbransford.com
Shaw, Bransford, Veilleux & Roth, P.C.
1100 Connecticut Avenue, N.W., Suite 900
Washington, D.C. 20036
Telephone: (202) 463-8400
Facsimile: (202) 833-8082

Counsel for Plaintiff