UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHARON L. NUSKEY,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. LAMBRIGHT,<br>CHAIRMAN AND PRESIDENT,<br>EXPORT-IMPORT BANK OF<br>THE UNITED STATES,<br><br>Defendant. | Civil Action No.: 06-1573<br>(PLF/JMF) |

DECLARATION OF LISA A. BERNSTEIN

I, Lisa A. Bernstein, declare as follows:

1. I am an associate attorney of the law firm of Shaw, Bransford, Veilleux & Roth, P.C. in Washington, D.C. and am one of the counsel for Plaintiff, Sharon L. Nuskey, in addition to Diana J. Veilleux and Ralph C. Conte, a partner and associate of the law firm, respectively, in the above-captioned case.

2. On July 9, 2007, I received Defendant's first set of written discovery requests by email from counsel for Defendant, Alan Burch, Esq. Plaintiff responded to the Defendant's First Set of Discovery Requests on August 8, 2007 and provided responsive medical records in her possession at that time, which were all served on Defendant by courier on that same date. In the interim, I received Defendant's second set of written discovery requests on July 25, 2007. Plaintiff responded to Defendant's Second Set of Discovery Requests on September 7, 2007, which were served to Mr. Burch by email and courier. In both responses, Plaintiff provided any and all information in her possession at that time that were responsive to Defendant's written

discovery requests.

3. In October and November 2007, I received a copy of Ms. Nuskey's medical records that she had requested from several of her health care providers, specifically, Ashesh Patel, M.D., Laurence Drell, M.D., and Gabriele S. Leverich, MSW. We were planning to produce them to the government once we received all of her medical records, to include those from Ms. Nuskey's former psychotherapist, Adrienne Cypress, Ph.D.

4. On or about November 6, 2007, the government's counsel, Alan Burch, Esq., and I communicated about a number of items, including the scheduling of Ms. Nuskey's deposition (which ultimately was canceled and not yet rescheduled). I told Mr. Burch that I was still waiting to receive Ms. Nuskey's medical records from two of her providers (Dr. Patel and Dr. Cypres), but that I would forward them together in one package once they were received by my firm. Mr. Burch indicated that he planned to wait to schedule the deposition(s) of Ms. Nuskey's healthcare providers (although the government had notified the depositions of Ms. Nuskey's treating medical care provider, none was specifically named in the notice) until he received additional medical documentation from Plaintiff, so he could determine which of the healthcare providers he needed to depose.

5. On December 21, 2007, while not yet having received Dr. Cypres' medical records on Ms. Nuskey, my firm sent Mr. Burch additional medical records that we had received from Ms. Nuskey's three other health care providers.

6. On January 7, 2008, Mr. Burch and I exchanged emails about the subject matter giving rise to the Plaintiff's Motion to Compel discovery. Mr. Burch indicated that the government intended to file a "motion to compel" Plaintiff's independent medical examination

and her "other medical records." In response, I told Mr. Burch that the Plaintiff would oppose his motion because, inter alia, I never heard back from him from the time when we served Ms. Nuskey's medical records on the government, so I was unaware that there was any current dispute over those discovery responses. I further stated that, in addition to any other previous documentation given to the agency in her initial document responses, those are the only records that Ms. Nuskey and her doctors have concerning her relevant medical issues.

7. On January 8, 2008, Mr. Burch and I exchanged emails about the various continuing disputes that the parties have regarding discovery in this case. The issue about Ms. Nuskey's medical records arose again. I told Mr. Burch that we (by "we," I intended to refer to Ms. Nuskey) have previously checked with almost all of her health care providers before any of the medical documentation was provided to him and what we gave to him is all they and Ms. Nuskey have in their files on her conditions at issue in this case. I further told Mr. Burch that I was in the process of personally double checking with the providers and, so far, two out of four of them (Drs. Leverich and Patel) confirmed to me that what we gave to Mr. Burch is all they have in their files with regard to Ms. Nuskey's conditions at issue (actually, they told me that what they gave to us were Ms. Nuskey's complete medical records in their possession, and not just for the conditions at issue). I stated that when I heard back from the telephone messages that I had left for the two remaining health care providers (Dr. Cypres's attorney and Dr. Drell), then I would let Mr. Burch know. I closed my email by telling Mr. Burch that until I hear final confirmation from the other two, I wanted to reconfirm that all of the medical records on the conditions at issue for Ms. Nuskey have been provided to the Defendant and none have been withheld on our end. Mr. Burch objected to the contents of my email in response.

8. On January 8, 2008, I separately called and left messages for Drs. Drell and Leverich asking that I speak to them because I needed to verify whether or not they provided me with a complete copy of all of Ms. Nuskey's medical records in their possession. Dr. Leverich called me back on that same day and advised me that what she mailed to my firm consists of the entire content of her files on Ms. Nuskey.

9. Also on January 8, 2008, I called Dr. Patels's office and spoke with a clerk from his records department of his medical office. I described to the clerk what Dr. Patel had mailed to us and asked if there was anything else at all in Ms. Nuskey's medical records. The medical records clerk told me that no other records were in Dr. Patel's files on Ms. Nuskey.

10. I also called Dr. Cypres' attorney, Scott Gant, on January 8, 2008. He was not available, so I left a detailed voice mail message for him asking that he request that his client send me a complete copy of her files maintained on Ms. Nuskey so that they can be produced in response to the government's discovery requests in connection with her civil Complaint. We then proceeded to exchange a number of voice mail messages between January 14 and 22, 2008.

11. Mr. Gant and I ultimately spoke to one another later on January 22, 2008. He told me that he did not believe that Dr. Cypres had many records on Ms. Nuskey, and those that Dr. Cypres did have, were limited to records pertaining to billing. He said that once we furnished him with a release from Ms. Nuskey, then he would forward that information to our firm.

12. On January 23, 2008, I sent Mr. Gant a letter with a copy of Ms. Nuskey's release and requesting that he furnish us a copy of the "complete contents of any and all files that Dr. Cypres has maintained on Ms. Nuskey." I further told him that "We are requesting this information because Ms. Nuskey has a pending Title VII civil action against her former

employer, who has requested her medical records as part of discovery on her claim for compensatory damages." After I followed-up with Mr. Gant about our request later on that same day, he told me that he would send me a copy of the records from Dr. Cypres by the next day.

13. Since I did not hear back from Dr. Drell from my telephone message on January 8th, I attempted to reach him and attempted to talk to him about his medical records on Ms. Nuskey. When I was eventually able to speak with Dr. Drell, he confirmed that he had already provided us with a copy of his records on Ms. Nuskey. He sent me an unsolicited confirmation of that information by fax on January 22, 2008.

14. Mr. Burch, Mr. Conte, and I had a teleconference call on January 23, 2008 to follow-up on the remainder of the parties' discovery disputes prior to filing Ms. Nuskey's Motion to Compel. During that call, I also addressed the concern that Mr. Burch had raised in our prior emails about Ms. Nuskey's medical records. I told Mr. Burch that both Ms. Nuskey and I had separately requested her medical records at different times from her four doctors and that we gave him everything that we had received from them. I told him that we were only withholding two pages of records that were completely unrelated to the case and, after further questioning/ comment from Mr. Burch, I told him the general nature of those two documents. Mr. Burch said that he wanted to see them and I said they would not be provided to him since they did not concern her medical issues at issue in her civil Complaint, the request was intrusive, and producing the records would unduly violate Ms. Nuskey's right to privacy.

15. On the afternoon of January 24, 2008, I received a copy of Ms. Nuskey's medical records from Mr. Gant. I provided the entire set of those records to Mr. Burch by facsimile on that same date. In the cover letter to those medical records, I told him that "The enclosed are the

last of all of the documents that her medical providers have provided to us in response to our requests for all of Ms. Nuskey's medical files. These records are being provided to you at this time because we had difficulty reaching Dr. Cypres and facilitating her response to the request for Ms. Nuskey's medical records for some time. As we advised you before Defendant filed its motion yesterday, we are only withholding two pages from those records, which are completely unrelated and irrelevant to the damages that she has claimed in this case. . . ."

16. I recently learned from Ms. Nuskey that approximately five years ago in 2002, Ms. Nuskey was treated by Suzanne M. Brigham, Ph.D. for grief therapy as a result of the deaths of several of Ms. Nuskey's family members and friends. Contemporaneously with the filing of the Opposition to the Defendant's Motion, we are supplementing the discovery responses to add this information.

I hereby certify that I have read the foregoing and declare, under penalty of perjury, that it is true and correct to the best of my knowledge and belief.

Executed this 5th day of February, 2008.

Lisa A. Bernstein