UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHARON L. NUSKEY,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. LAMBRIGHT,<br><br>Defendant. | Civil Action No.: 06-1573 (PLF) (JMF) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

COMES NOW Defendant, James H. Lambright, Chairman and President, Export-Import Bank of the United States ("the Bank"), through the undersigned counsel, and responds to *Plaintiff's Motion to Compel Defendant's Discovery Responses and Two Depositions in this Case*, no. [28] ("*Plf. Mot. Compel*"). A proposed order is attached.

Plaintiff seeks the Court's expansion of discovery in this matter beyond reasonable bounds for various reasons, none of which justify any such expansion at all. Plaintiff's motion also fails to convey the vast amount of discovery she has already received from Defendant, at considerable time and expense to the Agency. In this single-plaintiff, age and gender discrimination matter covering a four-month period of alleged discriminatory conduct, Defendant has produced three boxes of documents, including hundreds of e-mails and numerous documents relating to her allegedly "similarly situated" male colleagues -- such as their work assignments, schedules, work with the Bank's Directors, travel orders, full personnel and performance files, and records relating to accolades and criticisms of their performance and conduct. Defendant has also provided Plaintiff with the Human Resources (HR) selection file for Plaintiff and her male colleagues, the HR selection file for her alleged "replacement," Bank policies on conduct, discipline and performance appraisals, and information concerning travel budgets. Defendant has further produced all documents provided by the agency to the EEO investigator, all non-privileged documents relating to the processing of her EEO complaint, and numerous documents

from Plaintiff's supervisor concerning Plaintiff's selection, the events and circumstances leading to her termination, her termination, the Divisional meeting at which her termination was announced, and efforts to find an alleged "replacement."

It should be noted that Defendant, despite preserving its objections, generally responded to all discovery requests when the documents were readily accessible. Defendant has not shied away from production and has expended approximately 250 contract labor hours, amounting to approximately $22,000 in costs, in E-discovery alone. *See* Exhibit 1 hereto. Defendant opposes Plaintiff's motion to compel because her requests go well beyond the scope of proper discovery and/or are excessively burdensome.

**A. Depositions of High Government Officials**

It is well established that compelling testimony from high-level officials is strongly discouraged and sharply limited to a confined set of extraordinary circumstances. *In re F.D.I.C.*, 58 F.3d 1055, 1060 (5th Cir. 1995); *In re United States*, 985 F.2d 510, 512 (11th Cir.) (*per curiam*) (citing *United States v. Morgan*, 313 U.S. 409, 421-422 (1941)), *cert. denied*, 510 U.S. 989 (1993); *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *Community Federal Savings and Loan Ass'n v. Federal Home Loan Bank Board*, 96 F.R.D. 619, 621 (D.D.C. 1983); *accord Franklin Savings Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991). To avoid the undue burden that would otherwise fall on public officials as a consequence of compulsory depositions, courts have offered special protections to high-ranking government officials. *Alliance for Global Justice v. District of Columbia*, 2005 WL 1799553 at *1 (D.D.C. July 29, 2005).

This follows because high-level officials of government agencies have generalized knowledge about matters that could well be implicated in thousands of lawsuits, and so if extraordinary circumstances were not required in order to compel agency heads to testify, high-ranking officials would probably be deposed or otherwise required to testify continuously. *Capitol Vending Co. v. Baker*, 36 F.R.D. 45, 46 (D.D.C. 1964). *See also Community Federal*

*Savings and Loan Ass'n v. Federal Home Loan Bank Board*, 96 F.R.D. 619, 621 (D.D.C. 1983) ("access to responsible government officials as sources of routine pre-trial discovery would result in a severe disruption of the government's primary function.").

Accordingly, it is well-settled case law that in order to depose a high-level government official, litigants must first show that a deposition "is essential to prevent prejudice or injustice," *Wirtz v. Local 30*, 34 F.R.D. 13, 14 (S.D.N.Y. 1963), or must demonstrate the existence of a "special need" or "exceptional," "extraordinary," or "exigent" circumstances. *See*, *e.g.*, *In re United States*, 985 F.2d at 512 ("courts have required that defendants show a special need or situation compelling [the testimony of high-level officials"); *id.* at 513 ("courts discourage parties from calling [high officials] as witnesses and require exigent circumstances to justify a request for their testimony."); *Simplex Time Recorder*, 766 F.2d at 586 ("top executive department officials should not, absent extraordinary circumstances, be called to testify"); *In re Office of Inspector Gen*., 933 F.2d at 278 ("exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted."). Plaintiffs can demonstrate extraordinary circumstances by making a strong preliminary showing of bad faith or improper behavior on the part of the agency official to be deposed, that there is no other way to obtain effective judicial review, or that the official has "relevant first-hand personal knowledge of matters" material to the controversy at issue that is "not available from some other source." *Community Federal*, 96 F.R.D. at 621; *see also Simplex Time Recorder*, 766 F.2d at 586-87; *Low v. Whitman*, 207 F.R.D. 9, 13 (D.D.C. 2002); *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 1, 4 (D.D.C. 2004).

In the instant matter, Plaintiff wishes to depose two high-ranking government officials, the Bank's current Vice-Chairman, Linda Conlin, and its former Vice-Chairman, now U.S. Ambassador to Hungary, April Foley. (The Vice-Chairman is the number two official at the Bank, and is appointed by the President and confirmed by the Senate..) Plaintiff does not dispute that Ms. Conlin and Ms. Foley are high-ranking government officials.

In her motion to compel, Plaintiff argued that she should be able to depose Ms. Conlin and Ms. Foley because both possess some personal knowledge of Plaintiff's performance, Plaintiff's travel in comparison to her alleged similarly situated male coworkers, and "other more specific information, other relevant topics for [Plaintiff's] EEO complaint, and any communications with other managers." *See Plf. Mot. Compel* at 14-15. (It does not appear that Plaintiff relies on bad faith or "no other way to obtain judicial effective review" as grounds for the depositions of the Vice-Chairmen.)

Plaintiff's explanation, however, amply demonstrates that she is simply on a fishing expedition. First, Plaintiff's own motion demonstrates that Ms. Conlin and Ms. Foley had only limited knowledge of Plaintiff's performance in any respect, and nothing in the motion suggests that either one had personal knowledge of the disputed factual events at issue in this case. As quoted by Plaintiff, Ms. Conlin stated in her EEO affidavit that she "interacted with [Plaintiff] approximately six-eight times" during her employment and is "not aware of Ms. Nuskey's performance or interactions in her division." *Plf. Mot. Compel* at 15 (quoting Ex. 16 at 2). Ms. Foley stated that "my experiences with Ms. Nuskey were very limited." *Id.* (quoting Ex. 15 at 2). Ms. Conlin and Foley clearly have little to provide with regards to personal knowledge of Plaintiff's performance; this is sufficient to quash their depositions.

Second, it is clear that Plaintiff's explanations about her performance as a stated business reason for her termination are simply beside the point, because Defendant has continually maintained that Plaintiff's performance was not a reason for her termination. In response to Plaintiff's Interrogatory No. 21 asking Defendant to "[s]tate in detail each and every reason why the agency terminated Ms. Nuskey's employment with the agency" Defendant responded:

> Plaintiff was terminated because Mr. Forgione determined that Plaintiff was exerting her own personal priorities over the Bank's business strategies with regard to travel to the May 28, 2005 - June 5, 2005 'Facing New Challenges and Opportunities Germany in Transition' Study tour and the May 22-23, 2005 annual EBRD conference in Belgrade, Serbia. Mr. Forgione also determined that Plaintiff was unprofessional and manipulative in her pursuit of traveling to Germany, Serbia and Croatia. Because Plaintiff was a probationary employee, Mr. Forgione felt he had the discretion to terminate her because he felt the needs of the department and Plaintiff's expectations did not coincide. See

answers to interrogatory 19 above for documents and communications relied upon in support of the decision to terminate Plaintiff.

*Plf. Mot. Compel* Ex. 9 at 20-21. Thus, Plaintiff's supposed need to depose Ms. Conlin and Ms. Foley concerning their personal knowledge of Plaintiff's performance is illusory: it is Plaintiff -- not Defendant -- who is attempting to raise performance as an issue with regard to Plaintiff's termination. Since performance is not the claimed basis, "disproving" such basis cannot show pretext. Thus, Plaintiff has no real need to depose Ms. Conlin and Ms. Foley concerning Plaintiff's performance. Furthermore, even if performance were an issue, Ms. Conlin and Ms. Foley have far too little to offer concerning Plaintiff's performance to justify their depositions.

Third, in contrast to Plaintiff's allegations, neither Ms. Conlin nor Ms. Foley possess personal knowledge concerning Plaintiff's travel. Ms. Foley stated in her affidavit that "I am aware that Ms. Nuskey was not traveling to the region of the world for which she was responsible" but such was not based on personal knowledge. *Id*. In fact, Ms. Foley maintains that "[s]peaking only for myself, I had more interaction with Charles Barnett than Ms. Nuskey because I made several trips to the part of the world for which he was responsible." *Id*. Similarly, Ms. Conlin states that "I was aware that Ms. Nuskey had concerns about being able to get approval for business travel in connection with a trip which was associated with another event" however such knowledge was not personal as Ms. Conlin was not involved in the discussions or the decisionmaking concerning the trip in question. On the contrary, to the extent Ms. Conlin had any awareness of the trip, it came from Plaintiff herself (in conversation Plaintiff had with Ms. Conlin, according to e-mails previously provided to Plaintiff), and there is no evidence to suggest that Ms. Conlin had any personal knowledge of the trip, ever discussed it with anyone else, or was involved in any relevant decisions regarding the trip. Thus, Ms. Conlin has no personal knowledge relevant to Plaintiff's travel. Therefore, taking the depositions of these two high-ranking government officials concerning any second-hand knowledge they may have about Plaintiff's travels would constitute, at best, a fishing expedition, and would, without doubt, run afoul of the well-settled case law which allows such depositions only in exigent

circumstances.

Fourth, Plaintiff's assertion that she needs to depose Ms. Conlin and Ms. Foley because they "may have personal knowledge of other more specific information, other relevant topics for [Plaintiff's] EEO complaint, and any communications with other managers" is simply too vague and imprecise to require the deposition of two high-ranking government officials. It is surely significant that Plaintiff does not seek to depose Ms. Conlin and Ms. Foley concerning personal knowledge they may have regarding any adverse employment action or the decision to terminate Plaintiff. Adverse employment actions are at the center of any discrimination case; the fact that Ms. Conlin and Ms. Foley have no knowledge concerning the same underscores their lack of relevance as witnesses in this matter.

Finally, Plaintiff does not assert that the information she seeks from Ms. Conlin and Ms. Foley cannot be obtained from another source. *Alexander*, 186 F.R.D. at 4. On the contrary, Defendant has supplied Plaintiff with numerous documents, such as e-mails and calendars from her male colleagues concerning their interactions with Directors and their staff, travel orders related to the travel of Plaintiff's male colleagues, travel orders and e-mails concerning Plaintiff's travel request. Plaintiff could depose her male former colleagues concerning the information she seeks although she has yet to inform Defendant of her intention to do so. Indeed, in order to satisfy this basis for deposing high-level government officials, Plaintiff should, at a minimum, be able to demonstrate how the other depositions she has taken have not illuminated the areas she needs to explore. Having not yet taken any depositions, Plaintiff cannot make this showing.

For any of these reasons, Plaintiff's motion to compel the depositions of Ms. Conlin and Ms. Foley should be denied and the Court should enjoin the same.

**B. Time Frame**

Plaintiff was employed at the agency from August 9, 2004 to May 20, 2005, approximately nine and a half months. Despite Plaintiff's short tenure, her discovery requests

cover a period anywhere from August 1, 2002 to the present - a period of over five years. Plaintiff claims this large period -- more than five times longer than Plaintiff's employment -- "is relevant for the purposes of showing disparate treatment of her in comparison to the four younger similarly situated males in this case." Plf. Mot. Compel at 21. Plaintiff provides examples of the information she seeks: "there could be emails and other communications about Plaintiff that were exchanged by management, the EEO office, the Human Resources office, etc. about the removal action after she was terminated and up to the present time" and "any issues about her alleged performance and conduct leading up to the removal action, but which were documented or communicated about more than one month after she was removed." *Id.* at 21-22.

In contrast, Defendant maintains that an appropriate and reasonable time frame is from one month before Plaintiff's hire to one month following her termination. Defendant has provided all responsive documents (subject to other objections) during this time period.

Under Rule 26(b)(1), Plaintiff is entitled only to discovery that appears reasonably calculated to lead to the discovery of admissible evidence. In the context of employment discrimination cases, such discovery must be specific to a reasonable time frame surrounding the discriminatory event being alleged. *Dorchy v. WMATA*, 45 F. Supp. 2d 5, 16 (D.D.C. 1999). A reasonable time frame, for allegations of discriminatory conduct over a short period of employment, is generally limited to said period of employment. For example, in *Hardrick v. Legal Services Corp*., 96 F.R.D. 617 (D.D.C. 1983), this Court limited the plaintiff's discovery requests to the period of her employment where:

> Plaintiff's interrogatories seek discovery concerning the entire scope of the defendant's personnel practices and procedures for the entire corporation from January 1, 1976 to the present time . . . . In this case plaintiff has alleged disparate treatment in the terms and conditions of her employment in 1980 and 1981 and with respect to her termination on April 1, 1981. While Rule 26 permits discovery not only of matters which may be relevant and admissible at trial, but also of matters which may lead to admissible evidence, and courts in the past have stated that the rules should be broadly and liberally construed, more recently courts have become concerned about "fishing expeditions", discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests. Thus, discovery should be tailored to the issues involved in the particular case . . . . This is so even in a case involving allegations of race discrimination, and while claims of disparate treatment, of necessity, require discovery of how others have been

> treated, it should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct. Thus, the Magistrate is persuaded by the authorities cited by the defendant which indicate that discovery in Title VII cases involving highly individualized claims of discriminatory treatment should be restricted to the practices at issue in the case, applied to employees in similar circumstances to determine if the employer treats all of its employees under those circumstances in the same manner, or whether it treats employees similarly circumstanced differently and there is some basis for concluding that the difference in treatment is predicated on race, sex or some other prohibited grounds of unlawful discrimination.

*Id*. at 618-619.

Similar to the plaintiff in *Hardrick*, Ms. Nuskey worked at the relevant employer for a very short period -- approximately nine months. It bears noting, however, that Plaintiff does not allege that she was discriminated against throughout her entire nine months at the agency. Rather, she claims the discriminatory acts commenced when Craig O'Connor became her supervisor in February or March 2005, less than four months prior to her termination. *See* Complaint at 5-7. Despite this, Plaintiff's discovery requests cover a period 16 times greater than the period of alleged discrimination.

As with *Hardrick*, Plaintiff's allegations in the instant matter are highly individualized claims of disparate treatment *vis-a-vis* her male colleagues in the Division. With regard to those highly-individualized claims, Plaintiff has been provided approximately three boxes worth of discovery covering the period from one month prior to her hire to one month following her termination. This information includes e-mails from and to her male colleagues concerning their work, meetings attended, work conducted for the Bank's Directors, etc. It includes their calendars, official personnel and performance files, records concerning their selection for employment, accolades and reprimands from supervisors. Plaintiff offers <u>nothing</u> from this voluminous discovery to suggest that a broader time frame is justified.

Instead, what Plaintiff seeks is the sort of fishing expedition against which *Hardrick* cautions. Although Plaintiff has no basis for suspecting such evidence exists, she asserts the need for discovery past the time of her employment because "there could be" information concerning her removal action or her performance and conduct leading up to the removal, which

information might have been documented after the removal all the way up to the present. *Plf. Mot. Compel* at 21-22. Plaintiff has been provided all such material for the period up to one month after her employment; she seeks to go beyond that period based upon mere speculation concerning what may or may not exist after the events in question. It also bears noting that Plaintiff pushes this even farther by seeking information not just about herself beyond the relevant time period, but also about her alleged comparators.

Even the cases upon which Plaintiff relies to make her argument held that the appropriate time frame for discovery was equivalent to the period of the plaintiff's employment with the defendant. *Mitchell v. Nat'l Ry. Passenger Corp*., 208 F.R.D. 455 (D.D.C. 2002) (relevant time period for discovery in race, gender, age and disability discrimination case was the plaintiff's four year employment at the defendant); *Pleasants v. Allbaugh*, 208 F.R.D. 7 (D.D.C. 2002) (relevant time period for discovery in race discrimination action was period of the plaintiff's employment up to his non-selection upon reapplying). As stated in *Hardrick* above, Plaintiff's discovery requests should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct. *See also Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 164 (D.D.C. 2003) ("Plaintiff was a recruit when he was fired in 2001 after what I have to believe was a few months of training. To demand information for years prior to his arrival does not make any sense."). Plaintiff has not articulated why that time frame should exceed her employment at the agency.

Plaintiff's motion to compel also should be denied on this issue because the broad discovery that Plaintiff seeks – particularly with regard to e-mails and other electronically-stored information-- would be unduly burdensome, expensive and time-consuming for the Bank. One of the attributes of electronically-stored information is that the cost to produce it is significantly higher than the cost of the receiving party to review it. Recognizing this fact, the newly amended Federal Rules of Civil Procedure initially relieve a party from producing electronically stored

information that is not reasonably accessible because of undue burden and cost. Fed. R. Civ. P. 26(b)(2)(B); *Disability Rights Council of Greater Washington v. WMTA*, 242 F.R.D. 139 (D.D.C. 2007). Defendant's document production thus far has required approximately 250 contract labor hours and amounted to approximately $22,000 in costs, due mainly to the fact that the Bank's e-mail back-up system was in transition during the 2004-05 time frame, and the Bank was utilizing different tape backup technology than is in place today. *See* Ex. 1. Despite the inaccessible nature of the data, the Bank provided Plaintiff with electronic documents during the relevant time frame of up to one month following her departure. Notably, Defendant offered to provide e-data past June 2005 if Plaintiff agreed to bear the costs of production. Such cost-shifting is eminently reasonable in light of the inaccessible nature of the data and the costs involved. *See E.E.O.C. v. Boeing Co.*, 2007 WL 1146446 (D. Ariz. 2007); *Semsroth v. City of Wichita*, 239 F.R.D. 630 (D. Kan. 2006). Plaintiff refused even to split the cost.

**C. Sensitive, Non-Relevant Information Pertaining to High-Level Officials**

Defendant also seeks to protect certain sensitive and non-relevant information pertaining to high-level Ex-Im Bank officials who were not Plaintiff's immediate supervisors and who are not alleged to have taken part in the alleged discrimination against Plaintiff. *See Plf. Mot. Compel* at 22-26. The Court should deny Plaintiff's request for this information.

The discovery requests in dispute involve the following sensitive and confidential information about her third-level and fourth-level supervisors, John Emens and Jeffrey Miller: any complaints and grievances filed against these individuals, instances of counseling or admonishment of these individuals, and information concerning their performance and conduct. *Plf. Mot. Compel* at 21-22. Plaintiff also requested the same information in connection with her first-level supervisor, Craig O'Connor, and second-level supervisor, Michael Forgione. As an initial matter, it is not necessary for the Court to address the request regarding Messrs. O'Connor and Forgione, because Defendant has determined that no responsive information exists with regard to these two individuals.

As for Messrs. Emens and Miller, Plaintiff seeks such information for a period of time extending from two years prior to Plaintiff's employment up to the present. *Id.*, Ex. 9 at 3-4, Ex. 10 at 11-14. Plaintiff cannot offer any legitimate reason why such intrusive discovery requests are necessary in this case.

While this Court has held that prior claims of discrimination may be discoverable if properly limited to the appropriate form of discrimination, same department, and reasonable time frame, Plaintiff's requests go beyond these bounds. *Mitchell*, 208 F.R.D. at 460-61. First, neither Mr. Emens nor Mr. Miller is even alleged to have engaged in discriminatory conduct against the Plaintiff. *See* Ex. 2 hereto, excerpt of *Plaintiff's Answers to Defendant's Second Set of Interrogatories* at 5 (response to Interrogatory 9, indicating that the only alleged discriminating officials were Mr. O'Connor and Mr. Forgione). Accordingly, the possibility that Mr. Emens or Mr. Miller may have had discrimination or misconduct allegations made against them by other people is irrelevant to the issues in this case.

Second, Plaintiff seeks information covering an unreasonably broad period of time -- from two years prior to Plaintiff's employment up to the present. *Id.*, Ex. 9 at 3-4, Ex. 10 at 11-14. Notably, Plaintiff's request encompasses a time frame 16 times longer than the alleged period of discrimination and over five times longer than her period of employment at the agency.

Third, Plaintiff seeks discovery extending far beyond the employees in her particular division at the Bank. Mr. Emens was Deputy Head of the Export Finance Group, and Mr. Miller was Senior Vice President for Export Finance. The Export Finance Group was the Bank's largest Group, encompassing many numerous and unrelated Divisions including the International Business Development Division (where Plaintiff was employed), the Business Credit Division, the Structured Finance Division, the Transportation Division, the Operations Division and the Trade Finance & Insurance Division, the Bank's largest Division. Unlike the other Divisions in the Export Finance Group, International Business Development was essentially a marketing Division, not an operational Division. In short, as heads of the Export Finance Group, Messrs.

Emens and Miller were responsible for the largest number of employees in the Bank and supervised a number of other managers apart from Messrs. Forgione and O'Connor. Accordingly, Plaintiff's requests with regard to Messrs. Emens and Miller are overbroad and beyond the proper scope of discovery. *See Childers v. Slater*, 1998 WL 429849, at 4 (D.D.C. May 15, 1998) ("Defendant raises a valid point: seeking information about all discrimination actions filed against an entire agency sweeps too broadly. Such a request involves cases which have nothing to do plaintiff's division or branch or the supervisors she accuses of discriminatory conduct and which are, therefore, irrelevant to plaintiff's action.").

In addition to seeking the information discussed above (complaints, grievances and alleged misconduct), Plaintiff seeks the contents of her supervisors' Official Personnel Folders (OPF's).[1] Such information would include salary and compensation data, designation of beneficiaries forms, benefit selection forms such as health insurance, etc. Again, Plaintiff has not demonstrated that such intrusive discovery requests are relevant in this case. Plaintiff argues that witnesses may be impeached by prior bad acts that bear on their honesty, pursuant to Fed. R. Evid. Rule 608(b), and relies upon *Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 164 (D.D.C. 2003). *Waters*, however, makes clear that Plaintiff's requests are overbroad, holding that the only potential material information in a personnel file would be information suggesting that the person acted in a dishonest manner, gave an untruthful statement, or engaged in discriminatory or retaliatory behavior. *Waters*, 216 F.R.D. at 164. Plaintiff does not, and cannot, make any of those arguments here. Instead, it is a continuation of the Plaintiff's fishing expedition. *See Macintosh v. Bldg. and Managers Ass'n Int'l*, 231 F.R.D. 106, 108-09 (D.D.C.2005) ("a litigant does not get the entire personnel file because of the possibility that there is something in it that may prove his case").

**D. Requests Unrelated to the Subject Matter of This Action**

Plaintiff speculates that Defendant has not provided full disclosure concerning her

[1] Plaintiff seeks this information for her first-, second-, third-, and fourth-line supervisors.

interrogatory no. 24, and document requests no. 10, 15-17, 24 and 30. *Plf. Mot. Compel* at 26-28, 32. Plaintiff is without basis for such an assertion. *Id*. Defendant has provided Plaintiff all the documents requested for the requests in question for the relevant time frame. (See Section B above).

**E. Information Withheld Pursuant to the Attorney-Client Privilege**

Pursuant to the Court's request, Defendant states that the only requested documents withheld by Defendant on the basis of the attorney-client privilege and/or attorney work product doctrine are e-mails between agency counsel and the following: the agency's EEO office, the agency's witnesses, and the U.S. Attorney's Office. These E-mails number in the several hundreds.[2] No other documents have been withheld on this basis (for example, communications between the alleged discriminating officials and the EEO or HR office). Creating a privilege log for the attorney-client communications withheld would be unreasonably burdensome, especially considering that Plaintiff has not articulated any reason why such communications should be produced. See, e.g., Fed. R. Civ. Pro. 26, Advisory Com. Notes, 1993 Amd., Subdiv. (b), ¶ 5 ("Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by category."). Here, the categorical descriptions should suffice, especially given the exceedingly low probability that any of these e-mails would actually contain relevant information. See id. ("The obligation to provide pertinent information concerning withheld privileged materials applies only to items 'otherwise discoverable.'").

[2] Plaintiff alleges at fn. 4 of her Motion to Compel that she and Defendant were unable to reach agreement concerning an appropriate clawback provision for purposes of electronically stored information ("ESI"). Plaintiff is mistaken. On October 5, 2007, her counsel was informed that Defendant agreed to her proposal that the ESI supplemental16.3 report should mirror Rule 26 with regard to the clawbacks provision.

**Conclusion**

For the foregoing reasons, Defendant respectfully requests that the Court deny *Plaintiff's Motion to Compel Defendant's Discovery Responses and Two Depositions in this Case* and should instead issue an order enjoining the requested discovery.

February 5, 2008

Respectfully submitted,

________________________________
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

________________________________
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

________________________________
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204, alan.burch@usdoj.gov

OF COUNSEL:
Faisal Siddiqui
Office of the General Counsel
Export-Import Bank of the United States