UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHARON L. NUSKEY, Plaintiff, | ) | Civil Action No.: 06-1573 (PLF) (JMF) |
| v. | ) | |
| JAMES H. LAMBRIGHT, Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION**
**(1) FOR ORDER OF MENTAL EXAMINATION AND**
**(2) TO COMPEL PRODUCTION OF MEDICAL RECORDS**

Defendant respectfully files this reply in support of its motion, no. [27], to compel an independent mental examination and production of medical records. Plaintiff's opposition proceeds from an unexplained and unsupported assertion that her damages claims fit neatly within the category of "garden-variety stress." Her failure to explain why this might be is telling, because in fact they do not. Indeed, the core contradiction at the heart of Plaintiff's position is that she wants a doctor to testify on her behalf about her mental condition and what is causing it, yet she claims that she "has not made a claim of unusually severe emotional distress." Plf. Opp. at 10. If there is nothing unusual about her distress, then it should suffice for her to testify about it herself and there is no need for her doctor to testify about the same thing. Indeed, if the doctor's testimony would not be cumulative with Plaintiff's, it begs the question of what the doctor would have to say apart from his/her medical opinion about Plaintiff's condition and the causes for it. It is patently unfair to permit Plaintiff to present such testimony without providing Defendant a substantially equal opportunity to rebut it.

Before analyzing the issue further, however, Defendant would like to explain a slight evolution in its position regarding its instant motion. In order to reduce the burden on the parties and the Court, Defendant respectfully requests that the Court impose the four limitations Defendant proposed, in the alternative, on page five of the instant motion, as the primary relief sought in this motion. Thus, Defendant now requests as its primary relief in this motion that the Court order the following restrictions:

1. Plaintiff may not call her treating physician or any other expert witness to testify about her stress, depression, treatment, mental state, or damages in any respect.
2. Plaintiff and her counsel may not refer at trial to her treatment by any of her therapists or other professional for stress or depression or medical condition allegedly caused, worsened or prolonged by the alleged actions of the agency.
3. Plaintiff would not be entitled to receive damages, based on her mental or physical condition, for anything beyond "garden variety stress."
4. The Court would include in its jury instructions a specific instruction limiting damages from stress to those included in a "garden variety" stress claim.

Defendant requests, in the alternative, an independent medical exam ("IME") and production of all medical records. Because Plaintiff has objected to any and all of this, this switch should not prejudice Plaintiff's position. The four restrictions, in lieu of an IME, have the potential to save a great deal of time, money and effort by the parties and the Court, and avoid any unnecessary intrusions into the privacy of Plaintiff's treatment. At the same time, the four limitations will give Plaintiff ample latitude to present a true "garden variety" damages claim. If however, doctors are to testify, Defendant deserves an equal opportunity.

**Additional Background**

In addition to Plaintiff's claim to be suffering clinical depression as a result of the way the agency allegedly treated her, a few items arising in the briefing of this motion bear mentioning. First, in her opposition to the instant motion, Plaintiff provided a 4-page declaration, which states in part: "I also recall being treated by Suzanne M. Brigham, PhD for grief therapy in or about February 2002 through July or August 2002 as a result of the deaths of several family members and friends." Plf. Dec. ¶ 10; see also id. ¶ 1.

Second, Plaintiff also recently filed two pages of medical records *in camera*, suggesting that perhaps there is something particularly sensitive or private about those records, such that she chose an *in camera* filing instead of using the protective order already in place in this case, by which such records could have been filed under seal and, thus, shared with Defendant.

**Argument**

1. Plaintiff's claims do not fit within the category of garden variety stress, at least, not as she apparently intends to present them through testimony of her treating physician(s) and/or their apparent opinions (no expert reports have been provided) that Plaintiff's clinical depression was caused by Defendant. The misfit is readily apparent by comparing her claims to those in the various other cases cited by the parties. Indeed, perhaps the strongest case for Plaintiff is the District Court's decision in Benham v. Rice, No. 03-1127 (D.D.C. Aug. 14, 2007) (overruling order for IME), attached hereto. Yet two of the three factors that Benham itself relied on cut differently here: "Benham does not seek damages for severe emotional . . . harm requiring psychiatric care in the past or present; she does not seek to support her claim with the testimony or records of any psychiatric or medical personnel[.]" Mem. Op. at 4-5.

Here, by contrast, Plaintiff does claim that her clinical depression is severe enough to require treatment, both in the past, the present, and well into the future. In addition, she seeks to bolster her damages claims with the testimony of medical personnel. Indeed, what Plaintiff has consistently left out of her arguments on this issue is a standard for defining the boundaries of garden variety damages. How severe is severe enough to go beyond garden variety? The case law clearly gives the answer: severe enough to need treatment. See, e.g., Benham. Moreover, Benham, consistent with other cases, does not turn on a plaintiff's choice as to whether to affix the label of "expert witness" on her treating physician. Instead, Benham says "psychiatric or medical personnel" whom the plaintiff might intend to call as witnesses.

2. The fundamental issue here is the Defendant's right to contest the amount of damages that should be attributable to any discrimination that may be found. It should be beyond dispute that Defendant has a right to explore: (1) the actual severity of Plaintiff's damages, (2) any efforts she has made to mitigate them, (3) and whether there are other causes for the same damages that should cause the damages attributable to Defendant to be discounted, in whole or in part. This is a basic tenet in the law of damages in civil litigation and it applies here too. See, e.g., Gipson v. Wells Fargo Bank, N.A., 460 F. Supp. 2d 12, 12-13 (D.D.C. 2006) (permitting evidence to show which emotional and physical injuries were caused by the employer's conduct and which were not); Barbour v. Merrill, 48 F.3d 1270, 1279-80 (D.C. Cir. 1995) (defendant may challenge the amount of a damages award, or establish affirmative defenses such as failure to mitigate damages), cert. dismissed, 516 U.S. 1155 (1996). Indeed, a defendant's failure to present evidence challenging damages or their causes may severely limit, or even bar, a defendant from challenging the amounts requested. See, e.g., Nyman, 967 F. Supp. at 1572.

Plaintiff cannot and does not dispute this.

Accordingly, Defendant has a right to present evidence to challenge Plaintiff's evidence regarding damages. The claim of clinical depression, especially in light of the additional background information, that is, her "grief therapy . . . as a result of the deaths of several family members and friends," Plf. Dec. ¶ 10, is just the sort of damages theory that is susceptible to multiple causes. Similarly, the two pages of medical records filed *in camera* (and not under seal pursuant to the existing protective order) suggest an area of sensitivity that could also represent an alternate cause for Plaintiff's depression and other distress. It is simply unfair to Defendant to prevent Defendant from exploring what other things might have caused her condition. Indeed, if fairness to Defendant were the only concern, it would be fair game to explore *all* other causes, in order to give Defendant the right to disentangle the relative contribution of each of the causes, and remain liable only for the portion of the harm attributable to Defendant's alleged action.

It is only because there is another concern, specifically Plaintiff's privacy interests, that the answer is not always so simple. But this is exactly why Defendant's request to impose the four limitations makes the most sense. For they strike the best possible balance between avoiding the intrusion into Plaintiff's privacy, while permitting her to present a true "garden variety" damages claim, without prejudice to Defendant's position. The Court has wide discretion in fashioning discovery orders and this makes the most sense here. It should be clear that the District Court's decision in Benham supports this result.

3. The facts, holdings, and standards of the various case law overwhelmingly support Defendant's position here. True, not all of these decisions order an IME, but few, if any, of the cases refuse an IME in cases where the plaintiff alleges clinical depression allegedly caused by

the defendant and seeks to have medical professionals testify about her damages. See, e.g., Eckman v. University of Rhode Island, 160 F.R.D. 431, 433-44 (D.R.I. 1995) (allowing IME where the plaintiff alleged mental injury from sexual assault); Smedley v. Capps, Staples, Ward, Hastings and Dodson, 820 F. Supp. 1227, 1232 (N.D. Cal. 1993) (ordering IME where plaintiff sought to present evidence of emotional distress, even though she would not be presenting expert testimony or seeking damages for medical expenses related to her psychological injury); Zabkowicz v. West Bend Co., 585 F. Supp. 635, 636 (E.D. Wis.1984) (allegation of emotional distress is sufficient to warrant independent psychological examination); Brandenberg v. El Al Israel Airlines, 79 F.R.D. 543, 544, 546 (S.D.N.Y. 1978) (in light of plaintiff's allegation that she suffered physical, emotional, mental stress, and mental and psychiatric injuries, an independent psychiatric evaluation was clearly appropriate). The Court is already familiar with case law in this jurisdiction and it too favors IMEs generally.

The courts also recognize that the fairness issue cannot be so easily sidestepped by the artifice of refusing to designate a treating physician as an expert witness. See, e.g., Roberson v. Bair, 242 F.R.D. 130, 134-5 (D.D.C. May 10, 2007) ("The applicability of the Rule 26 expert report requirement to treating physicians is unclear, in part because the testimony of treating physicians can include matters that cross over into classic expert testimony, mainly causation and predictions about the permanency of a plaintiff's injuries."); Kirkham v. Societe Air France, 236 F.R.D. 9, 11 (D.D.C. 2006) ("Although the language of the rule and advisory committee notes would, at first glance, appear straightforward, the applicability of the written report requirement to treating physicians who provide expert testimony is unclear because, in practice, the testimony of treating physicians often departs from its traditional scope-the physician's personal

observations, diagnosis, and treatment of a plaintiff-and addresses causation and predictions about the permanency of a plaintiff's injuries, matters that cross over into classic expert testimony."). Cf. Bynum v. MVM, Inc., 241 F.R.D. 52, 54 (D.D.C. March 20, 2007) ("Accordingly, in the absence of a timely Rule 26(a)(2)(B) expert report having been filed for Dr. Chelton, Dr. Chelton will be allowed to testify solely as to information learned from his actual treatment, examination, or analysis of Mr. Bynum's condition in August 2003-including matters contained in his August 2003 report. Dr. Chelton will not be allowed to testify about plaintiff's current condition, prognosis, causation or permanency, and any other such forward-looking speculation, or other conclusion reached with the benefit of hindsight and after the underlying events that gave rise to this lawsuit.")

Even if the case law is mixed as to whether a treating physician may testify without providing an expert report, compare Anthony v. WMATA, 2005 WL 5329516, at *3 (D.D.C. Apr. 8, 2005) with Roberson, the divergence of views on that narrower issue indicates that there is an important issue lurking just below the surface of the expert report rule. That issue surely is the fairness issue identified above. The production of an expert report, *vel non*, does not do much to address the fairness issue, whereas an IME cuts much closer to the heart of it.

4. Finally, it is worth a brief discussion of the Turner factors Plaintiff cites in her opposition, for it reveals how Plaintiff relies on mere labels--without definitions--to support her arguments and, moreover, the labels are ones she has selected for herself. First, she notes that she is not pursuing a claim for intentional infliction of emotional distress ("IIED"). See Plf. Opp. at 6-7. Of course, such a claim is not necessary to justify an IME. It is also Plaintiff's choice which claims to bring and IIED claims certainly would face resistence from sovereign immunity

and the Federal Tort Claims Act, so it is a point with no real weight behind it.

The second Turner factor is "specific mental or psychiatric injury or disorder," id., and here she claims clinical depression. See Plf. Resp. to First Interrog. at 4 (Ex. 1 to Def. motion).

The third factor is "a claim of unusually severe emotional distress." Plf. Opp. at 7. Plaintiff asserts that her claims are not particularly severe or unusual, though she does not explain what standard she is using to define those terms. As applied by Plaintiff, severe or unusual are in the eye of the beholder. The better standard is whether she needs to seek treatment and whether she intends to call doctors to testify. See Benham.

Fourth is "expert" testimony. Plf. Opp. at 7. Plaintiff's opposition relies on what a cynic might call an "administrative fix," that is, she simply applies a different label to her expert witness(es) and hopes that will solve the problem. Many litigants would love to call experts without calling them experts because, among other things, they could avoid producing expert reports in advance. More importantly, the treating physician's only apparent purpose in testifying would be to speak to damages, and it is difficult to imagine how the treating physician could do so without either (1) testifying about his or her medical conclusions about Plaintiff's condition, its severity, duration, and causes, or (2) repeating testimony Plaintiff could give on her own.

The fifth and final Turner factor is "plaintiff's concession that his or her mental condition is in controversy." Plf. Opp. at 7. Here again, Plaintiff implicitly argues that she herself can decide how the Turner factor comes out by simply declaring that she does not concede the point. This is meritless, for the Turner factors are not so easily manipulated. More seriously, she has put her mental condition in controversy by asserting clinical depression and seeking to call her treating doctor(s) to testify about it and the agency's role in harming her. If, instead, she pursued

a true garden variety stress claim, then her mental condition would not be in controversy and the easiest and fairest course of action would be for the Court to ensure it is taken out of contention by barring her treating physician from testifying and granting the other restrictions listed above.

5. Finally, Plaintiff's allegations that Defendant's motion and requests are improper are totally groundless. See Plf. Opp. at 14-15.

February 7, 2008

Respectfully submitted,

_______________________________

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
_______________________________
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
_______________________________
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W., Civil Division
Washington, D.C. 20530
(202) 514-7204

OF COUNSEL:
Faisal Siddiqui
Office of the General Counsel
Export-Import Bank of the United States