UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHARON L. NUSKEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 06-1573 |
| | ) | |
| v. | ) | |
| | ) | Judge Paul L. Friedman/ |
| JAMES H. LAMBRIGHT, | ) | Magistrate Judge John M. Facciola |
| CHAIRMAN AND PRESIDENT, | ) | |
| EXPORT-IMPORT BANK OF | ) | Dated:  February 8, 2008 |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO HER
MOTION TO COMPEL DEFENDANT'S DISCOVERY

Pursuant to the January 25, 2008 Minute Order issued by the Court, Plaintiff, Sharon L.

Nuskey, by and through her undersigned counsel, hereby files her Reply to Defendant's

Opposition to her Motion to Compel Defendant's discovery.  In addition to the reasons described

in Plaintiff's Motion, the following reasons, which constitute good cause, support the granting of

her Motion and the issuance of an Order directing Defendant to respond in full to her written

discovery requests and to produce April Foley and Linda Conlin for depositions in this case.

A.      Despite the Purported "Volume" of Material Produced Thus Far, Defendant
        Has Failed to Produce Responsive Documents to Numerous Requests.

Defendant claims that it has already produced "hundreds of e-mails and numerous

documents relating to [Plaintiff's] allegedly 'similarly situated' male colleagues -- such as their

work assignments, schedules, work with the Bank's Directors, travel orders, full personnel and

performance files, and records relating to accolades and criticisms of their performance and

conduct." Def. Opp. at 1.  While Defendant has produced some discovery on the male

comparators (their Official Personnel Files ("OPFs")), performance appraisals, calendars, and

some emails relating to their performance and conduct), Defendant has overstated the amount of

discovery on the comparator males -- and all of its documentary discovery responses -- in its

brief.  While Defendant has produced two copy boxes and one small box of discovery in this

case, the large majority of that information concerns Plaintiff; the conference that she and others

at the Bank helped plan in Bucharest, Romania in the Fall of 2004; various forms of chain

emails; and a large portion of unresponsive and unrelated commercial e-newsletters by a third

party organization that only amount to filler information at best.  For example, as discussed in

greater detail *infra*, there is no indication that the comparators' "performance files" were

produced to Plaintiff, nor is there any indication that any supervisory or human resources files

were produced to Plaintiff as requested.  See Pl. Reply Exhibit # 1, January 20, 2008 Email from

L. Bernstein to A. Burch (regarding Document Request # 15).

Furthermore, Defendant contends that it has produced "all non-privileged documents"

relating to "the events and circumstances leading to her termination, her termination, the

Divisional meeting at which her termination was announced, and efforts to fined an alleged

'replacement.'" Id. at 1-2.  However, there is little in the way of any documents produced in the

"three copy boxes of documents" on this issue.  And, as Plaintiff explained in her Motion,

inexplicably there are few documents produced involving any communications by and between

Plaintiff's management regarding any aspect of her termination.  It is important to note as well

that no declaration was provided by Defendant to attest to this assertion.  See e.g. Wilson v.

Kautex, 2008 WL 162645, *7 (N.D.Ind. January 14, 2008) (ordering party to execute affidavit

2

attesting to representation that after diligent search, no responsive documents exist).

Additionally, as discussed further below, Defendant concedes the existence of responsive

documents but asserts a privilege (without any privilege log or *in camera* production, to

Plaintiff's knowledge) to support the refusal to produce these documents.  Defendant should be

ordered to produce the responsive documents or follow the Court's direction for *in camera*

inspection or creation of a privilege log.


B.      The Depositions of Conlin and Foley Are Calculated to Lead to
        <u>Admissible Evidence and Would Not Be Unduly Burdensome on Deponents.</u>

With regard to the depositions of the two people at issue in this matter, Defendant

inaccurately states in its Opposition brief that "Plaintiff does not dispute that Ms. Conlin and Ms.

Foley are high-ranking government officials."  Def. Opp. at 3.  To the contrary, in her Motion,

Plaintiff states that neither Conlin nor Foley fit the definition of a "high ranking official" because

they are/were not of the same caliber as the head of an Executive Department agency or a cabinet

level official.  <u>See</u> Pl. Motion at 13, n.5.  As such, Defendant cannot assert that Conlin and Foley

are of such level to invoke that category and to thus preclude their depositions.  <u>See</u> Pl. Motion at

13 - 14.

Moreover, Plaintiff's depositions of these two individuals are not designed to be a

"fishing expedition" as Defendant claims.  <u>See</u> Def. Opp. at 4.  Foley and Conlin each provided

an affidavit to an investigator during the Bank's EEO investigation on this case, and it is possible

that they could possess relevant information beyond the confines of their affidavits.  <u>See</u> Pl.

Motion at 15 - 16 (citing to Foley and Conlin EEO affidavits).  Depositions of these witnesses

are necessary to probe into areas (such as travel requirements, expectations, and limitations, as well as Plaintiff and her comparators' performance and conduct) of which they were not asked about by the EEO investigator.  Such information may include, *inter alia*, any communications they may have had with other Bank managers (including, but not limited to Plaintiff's first and second level supervisors) about Plaintiff's performance and/or conduct, her termination, and any *post-facto* events.  Conlin and Foley may also possess information about opportunities that Plaintiff (as compared to her younger male peers) could have had to travel and interact with the Directors upon their request, but for which she was not given approval by her supervisors.  As well, Conlin and Foley would have particular knowledge of this information since Plaintiff believes that they would have been the individuals who would have requested any of the comparators to work and travel with either Conlin or Foley.

Obviously, Plaintiff did not have the opportunity to cross-examine these witnesses during the Bank's EEO investigation and, thus, she could not explore these issues at that time. Moreover, since Plaintiff does not have access to these witnesses, she does not have the ability to fully know all of the relevant information that may be in their possession and, thus, the purpose of deposing them is to explore that issue.  A party may obtain discovery as to matters that are relevant to any claim or defense. Fed. R. Civ. P. 26(b)(1).  This includes information not contained in the pleadings, for the very purpose of discovery is to "define or clarify issues" and to uncover unknown facts.  Pleasants v. Allbaugh, 208 F.R.D. 7, 10 (D.D.C. 2002), citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  All of this information is directly relevant to the claims in Plaintiff's civil Complaint, and is not beyond the scope of those issues.

Since Plaintiff does not have access to these individuals, she is entitled to depose them to explore these relevant areas of discovery.

Finally, as indicated in Plaintiff's Motion, she does not expect that these depositions will be inconvenient to either witness because they are expected to last no longer than two or three hours and can be conducted by telephone to accommodate Foley and Conlin's schedules. Ultimately, the Defendant's refusal to produce these witnesses leads Plaintiff to believe that Defendant's real motive for attempting to quash their depositions is because the information that they have provided thus far has been supportive of Plaintiff and has corroborated Plaintiff's claims in her civil Complaint. See generally, Pl. Motion at 15 - 16.

C.      Evidence Pertaining to Performance of Comparators and Others is Discoverable.

In an attempt to avoid producing discoverable evidence, Defendant also claims that it has "continually maintained that Plaintiff's performance was not a reason for her termination." Def. Opp. Br. at 4. Defendant's claim is not supported by the record. Specifically, Mr. Forgione testified during the investigation of Plaintiff's EEO complaint that:

> The Performance Appraisal I signed on April 5, 2005 did have an overall rating of Excellent. However, it should be noted that the rated period covered the period from initial hire through January, 2005. Ms. Nuskey began reporting to Mr. O'Connor in February 2005. I had personally not detected any changes in Ms. Nuskey's performance until her actions in May, 2005.

> Mr. O'Connor was involved in my decision to terminate Ms. Nuskey. I sought his assessment of her performance in the last three months and asked for his opinion and recommendations as to how we should handle the situation. I recall that Mr. O'Connor was not happy and reiterated his consistent effort to train Ms. Nuskey in essentially the same manner he had successfully trained Brian Sant Angelo.   .   .

Pl. Reply Exhibit # 2, EEO Affidavit of C. Michael Forgione at ¶¶ 23-24 (p. 12) (emphasis added).[1]  See also Pl. Reply Exhibit # 3, Final Agency Decision ("FAD") at 12 (incorporating Mr. Forgione's above-quoted rationale for Plaintiff's termination).  Therefore, this shows that Defendant may have factored Plaintiff's performance at one point as one of the reasons for her termination.  For these reasons, Plaintiff must be provided with all performance files, supervisory files, or related human resources files which pertain to the comparators.

The shifting reasons provided by Defendant for Plaintiff's termination (i.e., performance verses conduct) may support a finding of pretext, which is undeniably relevant for this case.  It is well-founded that in some circumstances, a change in an employer's explanation of the reasons for an adverse personnel action over time may constitute evidence of pretext.  Jaramillo v. Colorado Judicial Dep't, 427 F.3d 1303, 1311 (10th Cir. 2005); see also Young v. Warner-Jenkinson Co., Inc., 152 F.3d 1018, 1022 (8th Cir. 1998); Briscoe v. Fred's Dollar Store, Inc., 24 F.3d 1026, 1027-28 (8th Cir. 1994); EEOC v. Ethan Allen, Inc., 44 F.3d 116, 120 (2d Cir.1994).  As the Defendant has vacillated between its reasons for terminating Plaintiff, such information pertaining to the performance of her and her comparators is discoverable.

D.     Plaintiff's Time Frame for Discovery of Limited Issues Is Reasonable and Defendant Fails To Establish that the Requests Are Unduly Burdensome.

First, Defendant makes it appear that the large majority of Plaintiff's discovery requests predate the commencement of her employment.  This is inaccurate.  Virtually all of her written

---

[1] Additionally, Mr. Forgione alleged that Plaintiff did not perform satisfactory in her role helping to plan the Bank's conference in Bucharest, Romania in the Fall of 2004, Pl. Reply Exhibit # 2, EEO Affidavit of C. Michael Forgione at ¶¶ 5-6 (pp. 3-4) (emphasis added), to which Plaintiff and other evidence rebutted during the EEO investigation.

discovery requests seek information from eight days prior to the start of her employment to the present. Only four of her Document Requests seek information from August 1, 2002 through the present and those are pertaining to the conduct of her supervisors in this case. <u>See</u> Pl. Motion Exhibit # Doc. Request Nos. 19 - 22. Defendant argues in its Opposition brief that it has provided "three boxes" of responsive information to Plaintiff and to conduct a search for a two and a half year period beyond the date of her termination wold be unduly burdensome. <u>See</u> Def. Opp. at 8. However, not all of that information is responsive to her discovery requests, and the volume of documents (which is exaggerated by Defendant) produced thus far does not excuse the Defendant from being required to produce all of the information in its custody or control that is fully responsive to Plaintiff's discovery requests. Moreover, the costs that Defendant claims that it has borne to conduct the first "250 hour" search were because of its own technological IT issues and not because the search itself was burdensome. <u>See</u> Def. Opp. Exhibit # 1, Declaration of Bill Smith, ¶ 3.

None of Plaintiff's discovery requests exceed the bounds of the claims and issues in her civil Complaint and should not be so temporally circumscribed as argued by Defendant. Because Plaintiff has not worked at the Bank since her termination on May 20, 2005, she has access to very limited information that may be relevant to her civil Complaint since it remains in the sole custody of Defendant. <u>See e.g.</u> Complaint, ¶ 38. As Plaintiff has not worked at the Bank since that time, she is not in the best position to know what relevant and responsive information it has in its possession. Thus, she can only rely upon Defendant to search for and obtain that information, which is often generated post-termination, and needs a reasonable and rationally-related time frame after termination as the parameter for discovery.

Defendant attempts to argue that cases cited by Plaintiff support the proposition that the time frame for discovery in this case should be limited to the duration of one month before and one month after Plaintiff's tenure (i.e., approximately July 2004 through June 2005). No basis in fact or law exists for such a restricted approach to this Title VII lawsuit and Defendant has cited to no support for its proposition.[2] In fact, Defendant appears to ignore the well-accepted principle that discovery in such cases is broader. In employment discrimination cases, "courts have permitted discovery periods as long as eight to ten years," but "the norm ... seems to be anywhere between three and five years ." Briddell v. Saint Gobain Abrasives Inc., 233 F.R.D. 57, 60 (D.Mass.2005) (citing cases); see also Owens v. Sprint/United Mgmt. Co., 221 F.R.D. 649, 655 & n. 29 (D.Kan.2004).

Defendant's discussion of Mitchell v. Nat'l Railroad Passenger Corp., 208 F.R.D. 455, 458-59 (D.D.C. 2002) fails to acknowledge that the Court's order in that case mandated production of relevant evidence over a period from 1996 to the date of the opinion (2002). Six years of evidence regarding the impact of Amtrak's restructuring of its human resources department is hardly comparable to Plaintiff's narrowly-tailored request for relevant information from August 2002 through present date regarding, specifically, performance and / or conduct matters for her comparators and supervisors. See Pl. Motion at 21 - 26. Obviously, some of

---

[2] Defendant declares "[i]n the context of employment discrimination cases, such discovery must be specific to a reasonable time frame ... A reasonable time frame, for allegations of discriminatory conduct over a short period of employment, is generally limited to said period of employment." See Def. Opp. at 7. Defendant cites Hardrick v. Legal Services Corp., 96. F.R.D. 617 (D.D.C. 1983), but fails to persuade how the case is controlling where plaintiff therein requested discovery "concerning the entire scope of defendant's personnel practices and procedures for the entire corporation" for a period of almost seven years. Id. The requests of Plaintiff are hardly that broad and are reasonably tailored to learn of potentially admissible evidence regarding her comparators and supervisors. See Pl. Motion at 21 - 22.

these comparators and supervisors pre-dated her employment and some remained (and still remain) after her termination. Thus, the requests (because of their limited scope) are reasonably circumscribed to either a six year period or a four year period.[3]

On a related issue, Defendant also claims that Plaintiff is only "speculating" that there is additional responsive information regarding her supervisors and comparators beyond the overly restrictive and arbitrarily selected time frame of relevance asserted by Defendant. Def. Opp. Br. at 8-9. Since Plaintiff was terminated on May 20, 2005 and was not allowed to take any information with her on her exit from the Bank, see Complaint, ¶ 38, and she no longer works there, she has no access to its records to determine whether or not anything particular exists. The purpose of discovery is to allow a party to learn of information reasonably calculated to lead to the discovery of admissible evidence. Whether evidence may or may not exist is not a condition precedent to seeking relevant evidence through discovery. Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can

---

[3] Defendant also cites to Pleasants v. Allbaugh, 208 F.R.D. 7 (D.D.C. 2002) and Waters v. U.S. Capitol Police Bd., 216 F.R.D. 153 (D.D.C. 2003) for support of its contention that discovery in this case should be limited to an approximately one-year period. See Def. Opp. at 9. Pleasants, however, clearly stands for, inter alia, the proposition that other claims of discrimination against a defendant are discoverable if limited, in part, "to a reasonable time before and after the discrimination complained of." Pleasants, supra, 208 F.R.D. at 12 - 13. The time frame in Pleasants, for example, was clearly not limited to only the tenure of plaintiff. Id. at 10 and at 12 - 13 (three years discovery period as pertaining to plaintiff's upgrade claim and seven years pertaining to potential comparators / disparate treatment claim which extended beyond retirement of plaintiff). See also, Mitchell, supra, 208 F.R.D. at 460 (two year time frame of discovery prior to discriminatory act was reasonable). Waters also used a seven year time frame for discovery of potential Fed.R.Evid. 404(b) evidence where the plaintiff was only employed with defendant for less than a year. See Waters, supra, 216 F.R.D. at 158 - 159. Thus, it is not clear how Defendant makes the assertion it does in its Opposition.

have no possible bearing on the subject matter of the action. See Burlington Ins. Co. v. Okie Dokie, Inc., 368 F.Supp.2d 83, 86 (D.D.C.2005). For the above reasons, Plaintiff's Motion should be granted.


E.      Discovery of Information Pertaining to Plaintiff's Supervisors Should Be
        Permitted.

Although Plaintiff has not yet named John Emens and Jeffrey Miller as responsible management officials in this case, they are still relevant because they had direct involvement in the hiring of Plaintiff and her termination at the Bank and they approved the actions of Mr. Forgione and Mr. O'Connor as their supervisors. See Pl. Reply Exhibit # 4, Responses to Request for Admissions (Defendant provides direct reference to both Emens and Miller as persons who were involved in supervising or working with comparators); Pl. Reply Exhibit # 5, Email Regarding Plaintiff's Termination (signed by Emens). Emens and Miller were in Plaintiff's supervisory chain of command, which is not disputed by Defendant. Therefore, Defendant's contention that they "were not alleged to have taken part in the alleged discrimination against Plaintiff" is misplaced; it is through discovery of relevant information possessed by Emens and Miller as to, *inter alia*, the reasons for hiring and firing Plaintiff. Def. Opp. Br. at 10. It is important to note as well that Defendant has also agreed to produce both of these managers for depositions in this case. Additionally, any information that is produced through the OPFs and complaints files on Mr. Emens and Mr. Miller may be relevant for purposes of establishing a "culture or ethos that encourages or condones discriminatory behavior," see Waters, supra, 216 F.R.D. at 158, and impeachment material.

10

As for the information sought on Mr. Forgione and Mr. O'Connor relating to any complaints, grievances, discipline, etc., this is the first time that Defendant has represented -- and without declaration -- that no such records exist on them. Def. Opp. at 10. However, several other female Bank employees interviewed as part of the Bank's EEO investigation made complaints to the Human Resources office about Mr. Forgione.

With respect to the OPFs of Messrs. Forgione, O'Connor, Emens and Miller, the parties have a protective order in this case. See Joint Stipulated Protective Order ("JSPO") [24]. Just as Defendant has relied on the JSPO for Plaintiff to produce her 10 year complete medical history in this case, Defendant could produce those OPFs pursuant to the JSPO. Moreover, Defendant objected to the complete production of their OPFs, and did not try to resolve the discovery dispute by withholding information from the files that are considered to be of a more sensitive nature, such as their beneficiary forms, health insurance forms, etc. Had Defendant specifically raised that as an issue, Plaintiff would (and continues to offer) have told Defendant that it could limit the production of their OPFs to any discipline, SF-52s, SF-50s, and performance appraisals. Plaintiff does not want or need any information pertaining to their insurance or health care benefits.

For the above reasons, Plaintiff is entitled to the above information requested pertaining to her supervisors.

F.     Claims of Privilege Should Be Addressed Via a Log or *In Camera* Production.

With regard to the information that Defendant is withholding pursuant to the attorney-client privilege or work product, Defendant claims that it consists of "several hundreds" of

11

emails[4] and that it should not be required to prepare and produce a privilege log. It also has not

offered to submit those records to the Court for an *in camera* review. Def. Opp. Br. at 13.

Defendant also claims that no other documents are being withheld under the attorney-client

privilege. First, the Defendant's position appears to contradict representations made in open

court at the status conference in which Defendant proffered that it would produce the privileged

material for *in camera* inspection if it was less than 100 pages or produce a privilege log if it was

more than 100 pages. See Mitchell, supra, 208 F.R.D. at 461 - 462. Second, Defendant cannot

declare that the information is too burdensome to produce without providing any declaration as

to the basis for that assertion. Id. at 458. Third, the representation is devoid of any description of

good faith efforts to determine whether the alleged privileged information contains relevant

factual material as opposed to purely legal advice. Also, since most of Plaintiff's requests cover

information from August 2004 to the present, presumably there would be emails before the

Bank's attorneys were involved and not covered by the privilege. Since Defendant claims the

emails are in the "several hundreds" it is difficult to believe that none of the emails contain

factual information which is discoverable. For these reasons, the Defendant must produce either

a privilege log or all responsive privileged communications *in camera*.

---

[4] Although Defendant claims that it had informed Plaintiff's counsel that it would agree that the ESI supplemental 16.3 report should mirror Rule 26 with regard to the clawback provision, see Def. Opp. at 13, n.4, Plaintiff has no such record of any such communication. Nonetheless, at this point, it appears that there is an agreement among the parties on that point and the only remaining ESI issue for the purposes of the supplemental 16.3 report is the time frame of the discovery (discussed supra).

CONCLUSION

Based upon the foregoing, Plaintiff respectfully urges the Court to grant Plaintiff's

Motion and issue an Order compelling full and complete responses to Plaintiff's outstanding

discovery requests and compelling the depositions of Conlin and Foley.

Respectfully submitted,

_____/s/_____

/s/ Diana J. Veilleux
D.C. Bar No. 418292
Dveilleux@shawbransford.com
/s/ Lisa A. Bernstein
D.C. Bar No. 466215
lbernstein@shawbransford.com
/s/ Ralph C. Conte
D.C. Bar No. 447022
rconte@shawbransford.com
Shaw, Bransford, Veilleux & Roth, P.C.
1100 Connecticut Avenue, N.W., Suite 900
Washington, D.C.  20036
Telephone:  (202) 463-8400
Facsimile:  (202) 833-8082

Counsel for Plaintiff