SHAW, BRANSFORD, VEILLEUX & ROTH
ATTORNEYS AT LAW
PROFESSIONAL CORPORATION
1100 CONNECTICUT AVENUE, N.W., SUITE 900
WASHINGTON, D.C. 20036
(202) 463-8400

FAX:
(202) 833-8082

WEB:
www.shawbransford.com

October 12, 2007

VIA EMAIL AND REGULAR MAIL

Alan Burch, Esq.
Assistant United States Attorney
Office of the U.S. Attorney for
the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530

Re: Sharon L. Nuskey v. James H. Lambright, Chairman and President, Export-Import Bank of the United States, Civil Action No: 1:06CV01573

Dear Mr. Burch:

Enclosed are Ms. Nuskey's Responses to the Agency's Requests for Admissions.

Sincerely,

Diana J. Veilleux
Lisa A. Bernstein

Enclosure

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHARON L. NUSKEY,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. LAMBRIGHT,<br>CHAIRMAN AND PRESIDENT,<br>EXPORT-IMPORT BANK OF<br>THE UNITED STATES,<br><br>Defendant. | Civil Action No: 1:06CV01573<br><br>Judge Paul L. Friedman<br><br>Dated: October 12, 2007 |

PLAINTIFF'S RESPONSES TO DEFENDANT'S REQUESTS FOR ADMISSIONS

1. Admit that you were hired at Ex-Im Bank by C. Michael Forgione.

RESPONSE: Denied. To the best of Plaintiff's knowledge, Mr. Forgione did not hire her to work at the agency. Mr. Forgione did not interview Plaintiff and she did not meet him until some time after she received and accepted the agency's written offer of employment issued and signed by Ana Patricia Guzman-Evans of the agency's Human Resources Office. Additionally, Mr. Forgione's signature does not appear on the August 9, 2004 SF50-B -- Notification of Personnel Action (Career-conditional employment) that was issued to Plaintiff.

2. Admit that your employment at Ex-Im Bank was terminated by C. Michael Forgione.

RESPONSE: Admitted in part and denied in part with explanation. Plaintiff believes that Mr. Forgione had some involvement in her termination, but she is without sufficient information as to whether he was the sole person who effected her termination.

For example, John Emens, Deputy Head, Export Finance Group, signed and authorized the May 20, 2005 SF-52, Request for Personnel Action (Termination During Probationary Period). See ROI, Volume I, Section H. Additionally, Elliott Davis, Director, Office of Human Resources, signed the May 20, 2005 SF-50B, Notification of Personnel Action (Termination). Since discovery is ongoing and Plaintiff just received the agency's written discovery responses on the evening of October 11th, Plaintiff is currently unable to respond in any more detail to this Request. Additionally, she does not have access to the agency's witnesses until they are deposed, she, thus, she does not at this time have sufficient knowledge in order to respond any further to this particular Request other than what has been described herein.

3. Admit that you, William Hess, Charles Barnett and Brian Sant Angelo were all assigned to separate and distinct geographical regions within the International Business Development division.

RESPONSE: Admitted in part and denied in part. The SF-50s in the ROI show that each of the Business Development Specialists' positions were located within certain geographical regions -- Mr. Barnett (Asia, Africa and the Middle East), Mr. Hess (Russia, Turkey and Commonwealth of Independent States "CIS"), Mr. Sant Angelo (Americas) and Plaintiff (Southeast and Central Europe) -- that are distinct from one another. However, all four of them periodically worked on matters for other regions of the Bank than those to which they were assigned on paper.

For example, Plaintiff was tasked and/or appointed to attend events on Russia, Turkey and CIS. At those events, Plaintiff provided the required support for a Board Director, took notes, and gathered pertinent information and materials for her colleagues. In other instances, she helped Mr. Barnett prepare materials and briefing books for Asia

and the Middle East. Plaintiff also did research on country backgrounds for bilaterals with JBIC and NEXI for Talaat Rahman (Asia, Africa and Middle East), as well as municipal ratings for the Caribbean for Xiomara Creque (Americas).

Mr. Hess, for example, while covering Russia, Turkey and CIS, was assigned to help with the Southeast and Central Europe conference in Bucharest, Romania. Plaintiff is aware that he put his other duties aside to participate in planning meetings; to help with panel preparations; to recruit panelists; and to follow up with invitees. Plaintiff is also aware that he and Mr. Sant Angelo (who was then covering the Americas) assisted Mr. Barnett with briefing memos and a report on China.

4. Admit that you, William Hess, Charles Barnett and Brian Sant Angelo all served under different first level supervisors.

RESPONSE: Denied. Plaintiff contends that she, William Hess, Charles Barnett, and Brian Sant Angelo did not all serve under different first-level supervisors. After a departmental reorganization in late January or early February 2005, three of them served under the same immediate supervisors at different times. William Hess and Brian Sant Angelo served under Paul Tumminia; Brian Sant Angelo and Plaintiff served under Craig O'Connor; and William Hess and Plaintiff served under Margaret Kostic. Brian Sant Angelo also worked for Margaret Kostic after Plaintiff was terminated and after William Hess resigned from his employment with the agency.

Prior to the reorganization, Plaintiff observed that two of the male Business Development Specialists also may have received some form of supervision from Ms. Kostic. For example, Mr. Barnett (Asia, Africa and the Middle East) frequently sought advice from Ms. Kostic, who was then responsible for Southeast and Central Europe.

Plaintiff also observed Mr. Hess (Russia, Turkey and CIS) periodically ask Ms. Kostic for assistance or direction.

5. Admit that each of the respective first level supervisors for yourself, William Hess, Charles Barnett and Brian Sant Angelo were responsible for different geographic regions.

RESPONSE: Denied. To the best of her knowledge, Plaintiff contends that while she was employed with the agency, the respective first-level supervisors for William Hess, Charles Barnett, Brian Sant Angelo, and herself had geographic responsibilities that changed with the departmental reorganization in late January or early February 2005. For example, Margaret Kostic covered Southeast and Central Europe prior to the reorganization, and Russia, Turkey and CIS afterwards; Paul Tumminia was responsible for Russia, Turkey and CIS, and then for the Americas after the reorganization; and Craig O'Connor covered the Americas until the reorganization, and Southeast and Central Europe after it.

When Plaintiff was still employed at the agency, she observed that first-level departmental supervisors periodically assumed responsibility for activities in different geographic regions outside of their primary responsibility. For example, Plaintiff has knowledge that Ms. Kostic, while responsible for Southeast and Central Europe, promoted all geographic regions of Ex-Im Bank at the Water Federation Conference in October 2004. Later that month and in November, Mr. Tumminia (then covering Russia, Turkey and CIS) was responsible for helping with the invitees, panel topics, and discussions for the Bucharest, Romania conference, where the attendees overwhelmingly represented countries in Southeast and Central Europe. He was slated to attend the conference, but was unable to because of a family illness.

After the reorganization, Plaintiff observed that first-level supervisors continued to be involved -- though to a lesser degree -- in the regions they formerly covered. For example, Plaintiff recalls that Ms. Kostic (then covering Russia, Turkey and CIS) answered technical and procedural inquiries from former clients and participated in some Southeast and Central Europe meetings after the reorganization. She also continued to inform Plaintiff about matters relevant to Southeast and Central Europe. See, e.g. ROI Volume II for examples, including the March 10, 2005 memos from Scott Sossen regarding water processing with Romanians, and about the Kozludoy VVER1000 upgrades, respectively.

Plaintiff also observed that Ms. Kostic researched questions and provided guidance to John Richter (Africa, Asia and Middle East) on municipal credits and justifying the establishment of an Ex-Im office in Capetown, South Africa with State Department funding as she had in Croatia. Plaintiff further observed Ms. Kostic providing guidance to Craig O'Connor (Southeast and Central Europe) about clients, prospective transactions, and the status of Kosovo, and market openness in Serbia-Montenegro.

6. Admit that the Board Directors each concentrated on different geographic regions in their respective work for the Ex-Im Bank.

RESPONSE: Plaintiff objects to this Request on the grounds that the verbiage "concentrated on different geographic regions in their respective work" is overly broad, vague, and confusing. Without waiving these objections, Plaintiff states that she does not have sufficient information to either definitively admit or deny this request based on the information included in the ROI and which is otherwise publicly accessible (i.e., the

agency's web site). Discovery is ongoing and Plaintiff only just received the agency's written discovery responses the evening of October 11, 2007 and has not yet had an opportunity to review them. Additionally, Plaintiff does not have any documents in her current possession to respond in any more detail to this Request, and she does not have access to the agency's witnesses until they are deposed (and the agency currently objects to the depositions to a present and former Board member Linda Conlin and April Folely, respectively).

Notwithstanding these objections, Plaintiff provides the following information that may be responsive to this Request. She contends that Board Director Linda Conlin strongly advocated Ex-Im Bank worldwide. Based on Bank literature, press releases, its website, articles published by independent organizations, and conference agendas/programs, Director Conlin, as head of the Environmental Exports Program, was responsible for increasing financing of environmentally beneficial U.S. exports to all geographic regions. She also endorsed Ex-Im Bank's role in increasing investment and development across sectors and industries in Africa, Asia, Russia, Turkey, the Americas, and Southeast and Central Europe.

Based on Bank literature, press releases, its website, articles published by independent entities, Board Director and Vice-Chair April Foley represented and endorsed Ex-Im activity in the Middle East, Mexico, Latin America, Africa, Southeast and Central Europe, and Northern Europe. Based on Bank literature, press releases, articles published by independent organizations, and conference agendas/programs, Board Director Joseph Grandmaison promoted Ex-Im Bank financing in the Middle East, Africa, and Western Europe.

7. Admit that you, William Hess, Charles Barnett and Brian Sant Angelo each worked mainly with a different Board Director.

RESPONSE: Plaintiff objects to this Request on the grounds that the term "each worked mainly with" is overly broad, vague and confusing. Without waiving these objections, she denies this Request for the reasons that follow.

William Hess, Charles Barnett, Mr. Sant Angelo and Plaintiff worked for multiple Board Directors. William Hess worked primarily with Linda Conlin and April Foley. Charles Barnett worked for April Foley, Joseph Grandmaison, Linda Conlin, Phil Merrill, and James Lambright. Plaintiff divided her time fairly evenly between Linda Conlin and April Foley, and also worked at least once for Joseph Grandmaison. Mr. Sant Angelo worked with Linda Conlin and April Foley.

8. Admit that at no time during your employment at Ex-Im Bank was your salary decreased.

RESPONSE: Plaintiff objects to this Request on the grounds that the term "salary" is overly broad, vague and confusing. Without waiving these objections, she admits this Request in part and denies it in part as follows.

Plaintiff admits that her regular base salary was not decreased during her employment with the agency. However, after Plaintiff accepted the offer of employment from the agency on August 5, 2004, the promised student loan repayment benefit that she also had been offered was rescinded by the agency. Assurance that she would receive that benefit was a significant factor in her decision to work for Ex-Im Bank versus accepting a competing higher salaried offer from another prospective employer. Plaintiff estimates that the withdrawn benefit effectively reduced the income expectations upon which she accepted the position at the agency by more than 15 percent.

9. Admit that at no time during your employment at Ex-Im Bank were you demoted.

RESPONSE: Plaintiff objects this Request on the grounds that it is overly broad, vague, and calls for a legal conclusion. Without waiving these objections, she admits this Request in part and denies it in part as follows.

Plaintiff admits that she was not demoted in grade or title during her employment with the agency. However, her duties, responsibilities and stature were lowered as a result of the discriminatory, retaliatory and hostile treatment by her management. Plaintiff's initial first-level supervisor, Ms. Kostic, treated Plaintiff as a professional and full member of the department. For example, Ms. Kostic included Plaintiff in all meetings which she was permitted to attend; openly shared information with Plaintiff about projects and plans; where possible, limited the secretarial duties the second-level supervisors assigned to Plaintiff; and prepared Plaintiff to assume responsibility for a few countries in Southeast and Central Europe. However, when Mr. O'Connor replaced Ms. Kostic and became Plaintiff's immediate supervisor, he rarely interacted with Plaintiff; largely excluded her from meetings and information; and assigned her significantly less duties (in quantity and level), which thereby decreased her ability to contribute valuable work and make her a visible representative of the agency. In short, Plaintiff contends that she went from performing the duties of a Business Development Specialist under Ms. Kostic, to being a rarely used Administrative Assistant under Mr. O'Connor, despite the fact that her performance and conduct remained at a high level. In an attempt to remain involved and to continue to learn about the IBD while her duties were decreased by Mr. O'Connor, Plaintiff sought and initiated projects, attended pertinent events, and read about the region, all on her own initiative.

10. Admit that at no time during your employment at Ex-Im Bank were you transferred to another position.

RESPONSE: Plaintiff objects this Request on the ground that the term "transferred" is overly broad, vague and calls for a legal conclusion. Without waiving these objections, she admits that she was not transferred from one position to a position with a different title while she was employed at the Bank.

11. Admit that at no time during your employment at Ex-Im Bank did you suffer a decrease in tangible employment benefits.

RESPONSE: Plaintiff objects this Request on the grounds that the term "tangible employment benefits" is overly broad, vague, and calls for a legal conclusion. Without waiving these objections, she admits this Request in part and denies it in part. Other than the student loan repayment benefit that was rescinded as referenced in Plaintiff's response to Request No. 8, she admits that she is presently unaware that she suffered any decrease in any other tangible (monetary) employment benefits.

12. Admit that when you allege in your complaint that you were "denied opportunities for career advancement," the "opportunities" you mean are limited to "participating in SECE meetings, being informed about SECE activities so you could knowledgeably reply to questions from Bank staff and actual and prospective clients, and traveling to the markets for which you were responsible for business development."

RESPONSE: Denied. The quoted passage above appears to have been taken directly from Plaintiff's rebuttal affidavit (page 7) that is included in Vol. I of the ROI at Exhibit D(17). That quoted passage was in the context of Plaintiff's rebuttal to a specific remark that was in Paragraph No. 12 of Mr. Forgione's EEO affidavit. In the complete context, Plaintiff stated:

> Mr. Forgione also acknowledged my complaint in our May 11th meeting that I was denied opportunities for career advancement that my three male colleagues

> had been given. He said he was unaware of this issue, but that he would talk to Mr. O'Connor, who indicated that I had not brought this complaint to him personally and that it was not at all accurate.
>
> When I referred to "career advancement" in my conversation with Mr. Forgione, I provided context by way of participating in SECE meetings, being informed about SECE activities so I could knowledgeably reply to questions from Bank staff and actual and prospective clients, and traveling to the markets for which I was responsible for business development. I requested the opportunities and consideration comparable to that provided to my peers both to Mr. Forgione and Mr. O'Connor. Although Mr. Forgione and Mr. O'Connor may have discussed this issue, it never improved for me.

Thus, Plaintiff provided the above information to Mr. Forgione as an example and context of lost career opportunities, but did not mean the examples to be exclusive of all of the career opportunities that she lost. This is further illustrated in Plaintiff's May 18, 2005 email to Mr. Forgione (and which was also forwarded to Mr. O'Connor (see ROI Vol. I, Exhibit D(1)(D)). In that email, she indicated that similar examples were "included" as her supervisors' failure to provide her with the "quality or quantity of opportunities at the Bank since the reorganization as have [her] male colleagues."

In addition to the above examples, Plaintiff contends that she was "denied opportunities for career advancement" in International Business Development division-wide activities. She found it curious when she heard her fellow Business Development Specialists reference meetings that they had all attended, but that she had not been included in or informed about. For example, Plaintiff was the only Business Development Specialist excluded from the May 11, 2005 meeting that had been arranged several weeks earlier. She learned about it only after the meeting was underway because Mr. O'Connor failed to appear and Mr. Forgione wanted have every geographic region represented. Less than a half hour after that meeting, she asked to meet with Mr. Forgione, via e-mail, to tell him that she had heard of other meetings that her three fellow

Business Development Specialists attended, but from which she had been excluded. Mr. Forgione acknowledged the disparate treatment, replying: "You're right; you're always so aggressive I can't believe it's taken you so long to say anything." Plaintiff was also denied the opportunity to participate as an employee of the Bank (she did so as a private citizen) on an all-expense paid information tour to Germany, which is not among the countries comprising Southeast and Central Europe. The information tour, which received approval from the U.S. State Department and the Bank's Ethics Department, was excellent and would have benefited her work. (The tour expanded to include Poland, but was exclusive to Germany when initially presented to Mr. Forgione.)

13. Admit that you do not allege Mr. Forgione discriminated against you prior to May 11, 2005.

RESPONSE: Denied. Plaintiff's formal EEO complaint, her two EEO affidavits, and her civil Complaint describe in detail her allegations that both Mr. Forgione and Mr. O'Connor subjected her to discrimination both prior to, and after, May 11, 2007.

14. Admit you allege that Mr. Forgione did not discriminate against you on the basis of sex and age after May 11, 2005.

RESPONSE: Denied. See Plaintiff's response to Request No. 13. Additionally, on May 11 and 19, 2005, Plaintiff verbally complained to Mr. Forgione that she believed that she had been subjected discrimination, and she reduced this complaint in writing to Mr. Forgione by email on May 18, 2005.

On this 12th day of October, 2007, I hereby declare under penalty of perjury that the foregoing Responses to Requests for Admission are true and correct to the best of my knowledge.

Sharon L. Nuskey

As to objections:

Diana J. Veilleux
D.C. Bar No. 418292
dveilleux@shawbransford.com
Lisa A. Bernstein
D.C. Bar No. 466215
lbernstein@shawbransford.com
Shaw, Bransford, Veilleux & Roth, P.C.
1100 Connecticut Avenue, N.W., Suite 900
Washington, D.C. 20036
Telephone: (202) 463-8400

CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Plaintiff's Responses to Defendant's Requests for Admissions** were sent via email and regular U.S. mail on this 12th day of October, 2007 to the following counsel for Defendant:

Alan Burch, Esq.
Assistant United States Attorney
Office of the U.S. Attorney for
the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Alan.Burch@usdoj.gov

Lisa A. Bernstein