# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHARON L. NUSKEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1573 (PLF/JMF) |
| | ) | |
| JAMES H. LAMBRIGHT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case was referred to me by Judge Paul F. Friedman for resolution of discovery disputes. Currently pending before me are <u>Defendant's Motion (1) for Order of Mental Examination and (2) to Compel Production of Medical Records and Supporting Memorandum</u> [#27] ("Def. Mot."), and <u>Plaintiff's Motion to Compel Defendant's Discovery Responses and Two Depositions in this Case</u> [#28] ("Pl. Mot."). For the reasons stated herein, both motions will be granted in part and denied in part.

**I.   Background**

Ms. Nuskey was hired by the Export-Import Bank of the United States ("Bank") on August 9, 2004, with a "Superior Qualifications" appointment to serve in the position of Business Development Specialist in the International Business Development Division ("IBD") of the Export Group. <u>Complaint</u> [#1] at ¶ 15. According to Ms. Nuskey, three "less experienced, younger males" (together, the "comparators") were also hired at that time as Business Development Specialists. <u>Id.</u> at ¶ 16. All four new employees were required to complete a one-year probationary period. <u>Id.</u>

Ms. Nuskey was assigned professional duties and responsibilities for Southeast and Central Europe, and was responsible for "attending various internal and external meetings with Bank management and other staff and Bank clients, as well for [sic] attending domestic and international trade shows and seminars." Id. at ¶ 17. She received a positive performance review on April 5, 2005. Id. at ¶ 18.

Craig O'Connor became her supervisor in February or March of 2005, and Ms. Nuskey alleges that she "began to be excluded from important meetings that her younger male colleagues and supervisors were invited to attend." Id. at ¶ 19. She alleges that this disparate treatment continued and included, for example, not being assigned international travel, being shielded from the Bank's Directors, and being denied career advancement – all slights to which the comparators were not subjected. Id.

She met with a supervisor, Michael Forgione, to report these and other incidents. Id. at ¶ 20. She claims that he agreed with her assessment that she was not being treated equally, id., but that he later spoke to her in an abusive manner and prevented her from attending an international conference. Id. at ¶ 27-29. She was terminated by Mr. Forgione only hours after she had initiated Equal Employment Opportunity ("EEO") counseling in response to these incidents. Id. at ¶ 33-34.

Ms. Nuskey brings claims of discrimination and harassment based on her age and sex, and reprisal for having engaged in protected EEO activity. The parties bring cross motions to compel, which are addressed in turn below.

## II.     The Bank's Motion

The Bank moves this Court for an order compelling Ms. Nuskey to submit to an independent mental examination ("IME") and to sign a waiver permitting it to obtain her medical records.

### A.     Independent Medical Examination

The Bank argues that it is entitled to submit Ms. Nuskey to an IME because she "has put her mental and physical condition in controversy." Def. Mot. at 2. Specifically, the Bank points to her claim for "compensatory damages up to $300,000," and her allegation that she "suffered humiliation, pain and embarrassment" as a result of the Bank's discrimination. Complaint at 18-19. Also cited by the Bank are claims by Ms. Nuskey that she "has been clinically depressed and has suffered loss of enjoyment of life as a result of her EEO complaint and her termination," and that she seeks compensation for the cost of "her therapy [for sessions in the past and the next two years] for the matters related to her EEO Complaint." Def. Mot. at 2-3 (internal citations omitted). The Bank seeks to challenge the "existence, extent, and cause of such alleged damages." Id. at 3.

Ms. Nuskey strenuously opposes the Bank's motion and argues that the requirements of Rule 35(a) of the Federal Rules of Civil Procedure are not present because she has not put her mental condition "in controversy," and that the Bank has not established "good cause" for issuance of such an order. Plaintiff's Opposition to Defendant's Motion to Compel an Independent Medical Examination and to Compel Production of Medical Records [#32] ("Pl. Opp.") at 5. More specifically, she argues:

> (1) Plaintiff has and continues to manage her depression through therapy and medication; (2) Plaintiff has not and

>       will not present an expert witness with respect to her claims
>       for non-pecuniary damages; (3) Plaintiff at no time asserted
>       any claim of intentional infliction of emotional distress; (4)
>       and Plaintiff has not conceded that her mental condition is
>       in controversy because she is not claiming more than
>       "garden variety" compensatory damages.  Further, no good
>       cause exists for ordering the IME as Defendant will have
>       the full opportunity to depose Plaintiff as well as her
>       treating physicians regarding her claims.

Id.  These arguments track the five-factor test set forth in Turner v. Imperial Stores, 161 F.R.D. 89, 98 (S.D. Cal. 1995) (indicating that an IME should not be ordered where the following factors are not present: (1) a claim for intentional or negligent infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is "in controversy.").

As Ms. Nuskey notes, I have addressed this issue on numerous occasions, and have taken an approach different from that in Turner.  See, e.g., Roberson v. Bair, 242 F.R.D. 130 (D.D.C 2007); Kalantar v. Lufthansa German Airlines, No. 01-644 (HHKJMF), 2007 WL 1098708 (D.D.C. April 11, 2007); Benham v. Rice, 238 F.R.D. 15 (D.D.C. 2006); Doe v. District of Columbia, 229 F.R.D. 24 (D.D.C. 2005); Smith v. Koplan, 215 F.R.D. 11 (D.D.C. 2003); Chiperas v. Rubin, No. CIV.A. 96-130 TPJ/JMF, 1998 WL 765126 (D.D.C. November 3, 1998).  In short, it has been my view that "an employee who seeks compensatory damages for emotional pain suffered as a result of employer's action has placed the existence and extent of their alleged mental injury in controversy, giving the employer good cause to seek examination."  Smith, 215 F.R.D. at 13 (internal citations omitted).

In Benham, I conceded that the approach taken in Turner is the majority view, but nevertheless persisted in my approach based on the following reasoning:

> To divide claims, as plaintiff would have me do, between those that only allege "garden variety" emotional distress and those that allege a specific or severe form of emotional distress is no more than a game of semantics and has nothing whatsoever to do with defendant's obligation to show good cause for the ordering of an IME. In other words, no matter what changes plaintiff makes to the wording of her two complaints, the underlying truth remains: plaintiff seeks compensatory damages for the emotional pain she claims to have suffered as a result of defendant's actions. Without the information obtained through a court-ordered IME, defendant would have no means to rebut plaintiff's claims. I cannot fairly deprive defendant of the opportunity to examine plaintiff's claims of emotional distress from a scientific vantage point. In other words, defendant has the right to challenge plaintiff's claim that she was harmed and that defendant was the source of that harm. To preclude defendant from being able to mount its defense in this manner would be to allow plaintiff to unilaterally determine which evidence will and which evidence will not be admissible. The defendant is no more bound by plaintiff's articulation of the issues in this case [than] it would be in any other case.

Benham, 238 F.R.D. at 28-29.

Ms. Nuskey acknowledges this reasoning, but makes two arguments that it should not be applied to her case. First, she correctly points out that Judge Henry H. Kennedy, Jr. reversed, in part, my decision in Benham. See Benham v. Rice, No. 03-CV-1127 (September 14, 2007) ("Kennedy Op."). Judge Kennedy, applying the Turner test, held that the plaintiff's claim was "for the same type of distress or humiliation attendant to any 'garden-variety' claim of discrimination," and therefore an IME was not warranted under Rule 35(a). Kennedy Op. at 4-5. Judge Kennedy's opinion in Benham is persuasive and well-reasoned, as are many of the other cases that have applied the Turner test.

Nevertheless, for the reasons stated in my opinions cited above, and in the absence of controlling authority to the contrary, I persist in my view that an IME is warranted where a defendant seeks compensatory damages for the emotional pain she claims to have suffered as a result of a defendant's actions, as Ms. Nuskey does here.

Ms. Nuskey also argues that her case is distinguishable from the cases in which I have ordered an IME because "the recurrent theme in each of [those] decisions is the plaintiff's proffer of an expert opinion, a claim of permanent mental injury, and / or a concession that the mental condition of plaintiff was in controversy." Pl. Opp. at 9.  The absence of these factors, which are elements of the Turner test, does not alter the critical fact that the Bank would be at a significant disadvantage if forced to defend itself against Nuskey's claims without the benefit of an IME.  Whether she has explicitly "conceded" that her mental condition is in controversy is of no matter because her complaint and discovery responses make clear that she is seeking to recover damages relating to her mental condition – which is, as a result, at issue.  That she is not claiming a permanent mental injury is also irrelevant; whether permanent or not, she is claiming compensatory damages of $300,000 – hardly a nominal amount – that consist of, amongst other things, several years of past and future therapy.  That the injury for which she seeks compensation is not "permanent" is a distinction without a difference.  Finally, her decision not to call an expert witness should have no bearing on the Bank's ability to test her theory of damages, especially where she intends to call a doctor to testify about her mental condition.  It is her claim of damages, not her presentation of evidence, that trigger's the Bank's interest in an IME.

For these reasons, the Bank's Motion will be granted insofar as it requests an order compelling Ms. Nuskey to submit to an IME.[1]

### B. Medical Records

The Bank has served discovery requests on Ms. Nuskey in which it seeks "information about her medical and psychiatric care," and a waiver permitting it to "make direct requests to all her health care providers 'in the last ten years' for their records of Plaintiff's care." Def. Mot. at 4 (internal citations omitted). In her response, Ms. Nuskey indicated that her production would be limited to those documents she receives from her health care providers that relate to her claims of "compensable physical or emotional damages as a consequence of any action by Defendant." Id. (internal citation omitted). The Bank argues that this restriction unfairly gives her the ability to "screen[] which medical records she thinks relate to her damages claim and which do not." Id. It also takes issue with her production, which it characterizes as consisting of "a few summary medical records from three of her four listed medical providers. Id. at 5.

Ms. Nuskey responds that she has supplemented her production on three occasions, continues to seek additional records, and "has produced all responsive medical records in her possession and is withholding only two pages of medical records that are wholly unrelated to Plaintiff's claims in this matter," which she has produced to the Court *in camera*. Pl. Opp. at 15-16. She objects to the Bank's request for a waiver, and for

---

[1] The Court notes that the Bank has proposed an alternative to an IME, consisting of various restrictions on Ms. Nuskey's claims and presentation of evidence. Defendant's Reply in Support of Motion (1) for Order of Mental Examination and (2) to Compel Production of Medical Records [#34] ("Def. Reply") at 4. The Court, having not heard from Ms. Nuskey in opposition, takes no position on this proposal. Nevertheless, nothing in this Memorandum Opinion and Order should be read to preclude the parties from reaching a mutually agreeable resolution of this matter.

records for the past ten years from third parties, as overbroad, unnecessary, and beyond the scope of the Federal Rules of Civil Procedure.  Id.

Courts regularly order plaintiffs to sign authorizations for the release of medical information from health care providers where, as here, those records are relevant to the plaintiff's claims; this procedure has been viewed as the most expeditious and efficient way for the opposing party to obtain pertinent medical records.[2]  The Court sees no reason to stray from this practice[3] and will grant the Bank's motion for such a release, with the caveat that it shall be limited in scope to records relating to Ms. Nuskey's claims for compensable physical or emotional damages allegedly cause by the Bank's actions.  Specifically, it shall authorize the release of all records that relate or pertain to symptoms, conditions or treatment of any emotional or mental condition.  The Bank does not provide any justification, however, for its request for records spanning the past ten years; it is the view of the Court that it is appropriate to limit the scope of the release to medical records from the past five years.

---

[2]  See, e.g., Blosser v. Gilbert, No. 07-14031, 2008 WL 927782, at *2 (E.D. Mich. Apr. 4, 2008); Roberson v. Bair, 242 F.R.D. 130, 136 (D.D.C. 2007); Tapp v. Tougas, No. 9:05-CV-1479, 2007 WL 1964675, at *1 (N.D.N.Y. July 2, 2007); Hann v. Michigan, No. 05-CV-71347, 2007 WL 4662061, at *4 (E.D. Mich. May 31, 2007); Bender v. Del Valle, No. 05 Civ. 6459, 2007 WL 313464, at *2 (S.D.N.Y. Jan. 31, 2007) ; Stoltey v. Clark, No. 05-CV-2159, 2006 WL 3743795, at *2 (C.D. Ill. Dec. 18, 2006); Gilson v. Evergreen at Talbot Road L.L.C., No. C04-02126C, 2005 WL 3841864, at *4 (W.D. Wash. Nov. 1, 2005) (ordering plaintiff to provide release for medical records); Brown v. Eli Lilly and Co., 131 F.R.D. 176, 178 (D. Neb. 1990).  But see Moody v. Honda of America Mfg., Inc., No. 2:05-cv-0880, 2006 WL 1785464, at *4-5 (S.D. Ohio June 26, 2006) (treating records held by medical providers as within the control of the plaintiff, and permitting plaintiff to "review the documents requested, to determine that certain documents are either not responsive, are irrelevant, or are privileged, and to withhold any documents falling into the latter two categories so long as it is made clear that documents have been withheld.").

[3]  Indeed, the alternative is what has happened here: a need for *in camera* review by the Court of records being withheld.  A narrowly drafted and conscientiously executed release significantly limits the risk that non-responsive records will be produced, and what risk remains is trumped by the need to conserve judicial resources.  Nevertheless, the bell cannot be unrung, and I have reviewed the medical records submitted *in camera* by Ms. Nuskey: they are not responsive and need not be produced.

No information has been provided by the Bank to refute Ms. Nuskey's proffer that she has adequately supplemented her production and, therefore, the Bank's motion will be denied insofar as it relates to the allegation that her production has been inadequate.

### III. Ms. Nuskey's Motion

Ms. Nuskey moves this Court to compel certain discovery responses and to compel two depositions.

#### A. Discovery Responses

##### 1. Time Frame

Ms. Nuskey was employed at the Bank from August 9, 2004, to May 20, 2005. Defendant's Opposition to Plaintiff's Motion to Compel Discovery [#33] ("Def. Opp.") at 6. Most of her discovery requests are limited in scope to the period of eight days preceding her employment to the present day; the documents she seeks relating to the conduct and performance of, and complaints against, four managers in her chain of command, are limited in scope to the period of two years preceding her employment to the present date. Pl. Mot. at 18-19. The Bank insists that the proper time period for all requests should be one month preceding her employment to one month after her termination. Def. Opp. at 7.

Plaintiffs in Title VII cases have been permitted a "very broad scope of discovery." Pleasants v. Allbaugh, 208 F.R.D. 7, 9 (D.D.C. 2002). Nevertheless, discovery "should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct." Hardrick v. Legal Services Corp., 96 F.R.D 618-19 (D.D.C.1983).

Ms. Nuskey offers the following justification for extending the applicable time period to the present day:

> [T]he information sought for the period following Plaintiff's termination through the present time may yield evidence about the claims in her EEO complaint and any evidence on motive for gender or age bias or EEO retaliation by her management. For example, there could be emails and other communications about Plaintiff that were exchanged between management, the EEO office, the Human Resources office, etc. about the removal action after she was terminated and up to the present time; any issues about her alleged performance and conduct leading up to the removal action, but which were documented or communicated about more than one month after she was removed; and discussions about her EEO activity, gender, age, EEO complaint and/or civil Complaint more than one month after she left the Bank, etc.

Pl. Mot. at 21-22.

This rationale is simply too speculative to justify extending the relevant time period to the present day. Indeed, in every case there "could be" relevant communications made years after an employee's termination. That alone cannot possibly be sufficient; if it were, there could never be an end point for discovery requests absent some cataclysmic event that foreclosed the ability of human interaction.

Nevertheless, Ms. Nuskey is entitled to conduct discovery over a reasonable time in order to probe whether a pattern of discrimination existed. Glenn v. Williams, 209 F.R.D. 279, 282 (D.D.C. 2002). Limiting this period to "a time frame which merely brackets the contested employment action would foreclose plaintiff from elucidating past practices or identifying a pattern." Jackson v. Harvard, 111 F.R.D. 472, 475 (D. Mass. 1986). As this Court has pointed out, it is impossible to make a lapidary judgment that five years is too long and one year is to short. See Pleasants, 208 F.R.D. at 10. It will

therefore be ordered that the period of discovery will be from the day of her employment to six months after her termination.

### 2. **Complaints and Grievances**

The Bank has been served with, and objects to, requests for information and documents relating to any complaints or grievances filed against four managers[4] in Ms. Nuskey's chain of command, and instances of counseling or admonishment of those managers. Pl. Mot. at 21-23; Def. Opp. 10-12.

As an initial matter, "[i]t has been established that comparative information concerning an employer's treatment of individuals is relevant evidence in an individual discrimination claim. Such evidence may be used to construct a *prima facie* case of discrimination." Glenn, 209 F.R.D. at 281 (citing Minority Employees at NASA (MEAN) v. Beggs, 723 F.2d 958, 962 (D.C. Cir. 1983)). See also McBride v. Seidman, No. 87-CV-1855, 1989 WL 39396, at *8 (D.D.C. April 7, 1989) ("Even in a single-plaintiff case of disparate treatment, the plaintiff is permitted to rely on evidence of the employer's treatment of others"). It is clear that Ms. Nuskey is entitled to probe, "to the extent that it is tied to the allegations in her complaint," whether similarly situated employees have made similar allegations of discrimination against the Bank. Pleasants, 208 F.R.D. at 15.

#### a. **John Emens and Jeffrey Miller**

---

[4] The Bank has proffered that no responsive information exists as to two of those managers, Craig O'Connor and Michael Forgione. Def. Opp. at 10. Ms. Nuskey, however, claims that "several other female Bank employees interviewed as part of the Bank's EEO investigation made complaints to the Human Resources office about Mr. Forgione." Plaintiff's Reply to Defendant's Opposition to her Motion to Compel Defendant's Discovery [#35] ("Pl. Reply") at 11. To the extent this is true, those records should be produced in accordance with the guidance set forth in this Memorandum Opinion.

First, the Bank objects to the applicability of these requests to John Emens and Jeffrey Miller, who they argue are not alleged to have engaged in discriminatory conduct. Def. Opp. at 11. Ms. Nuskey responds that Mr. Emens and Mr. Miller "had direct involvement in the hiring of Plaintiff and her termination at the Bank," that they approved the actions of Mr. O'Connor and Mr. Forgione, and that the requests are relevant for purposes of establishing a discriminatory culture and for impeachment. Pl. Reply at 10.

Mr. Emens was Mr. Forgione's direct supervisor, and Ms. Nuskey alleges that she conveyed her concerns to Mr. Emens but that he took no action. Complaint at ¶ 31. Ms. Nuskey is thereby implicitly accusing Mr. Emens of having contributed to an environment in which those below him need not take seriously an employee's claim of discrimination; it seems entirely appropriate to include him in these discovery requests. Mr. Miller, who is Mr. Emens' supervisor, may be a bridge too far: he is given only a fleeting reference in the Complaint, as one of several people who gave Ms. Nuskey positive feedback. Id. at ¶ 38. There is simply too much distance between Mr. Miller and the facts and actors in this case to warrant his inclusion unless responsive information exists that is directly connected to Ms. Nuskey.

### b.     Time Period

The Bank also objects to the scope of these requests, which begin two years prior to Ms. Nuskey's employment and extend to the present day, and notes that this period is considerably longer than the nine months of her employment. Def. Opp. at 11. This discovery period shall be limited to one year prior to her employment to one year after her termination.

### c. **Divisions**

Finally, the Bank objects to these requests insofar as they are overbroad because the managers were responsible for numerous divisions other than the division that employed Ms. Nuskey. Id. at 11-12. Mr. Emens and Mr. Miller, as Deputy Head and Senior Vice President, respectively, for Export Finance, "were responsible for the largest number of employees in the Bank and supervised a number of other managers apart from" Mr. Forgione and Mr. O'Connor. Id. at 12. Moreover, the division in which Ms. Nuskey was employed – International Business Development – is unique in that it is a "marketing Division, not an operational Division." Id. at 11. As this Court has previously held:

> [S]eeking information about all discrimination actions filed against an entire agency sweeps too broadly. Such a request involves cases which have nothing to do plaintiff's division or branch or the supervisors she accuses of discriminatory conduct and which are, therefore, irrelevant to plaintiff's action. However, to the extent that plaintiff seeks information to make her case that there was a persistent "pattern of discrimination" *within her division*, that discovery will be permitted to the extent it is relevant to the allegations in her complaint.

Childers v. Slater, No. 97-CV-853, 1998 WL 429849, at *4 (D.D.C. May 15, 1998) (emphasis in original). Accordingly, these requests must be limited in scope to incidents involving employees and managers within the International Business Development Division. See Glenn, 209 F.R.D. at 281 ("[D]iscovery in Title VII actions may appropriately be limited to employment units, departments, and sections in which there are employees who are similarly situated to the plaintiff.").

### 3. **Personnel Files**

The Bank has also objected to requests for her supervisors' personnel files on the grounds of privacy an relevance. Def. Op. at 12. See also Plaintiff's First Set of Requests for the Production of Documents, attached at [#28-4] to Pl. Mot. ("Doc. Req."), at Nos. 9, 20-21. As an initial matter, the parties have entered into a stipulated protective order and, as a result, "any privacy concerns are negligible." Marshall v. Dist. of Columbia Water & Sewage Auth., 214 F.R.D. 23, 27 (D.D.C. 2003). As to the relevancy grounds, the Bank argues that personnel files are sought of individuals who were not Ms. Nuskey's immediate supervisors, and that the files contain large amounts of nonresponsive information such as salary and compensation data. Def. Op. at 12. Ms. Nuskey has narrowed the request to information "in which any or all of those four managers were complimented or rewarded about their performance, or were counseled or disciplined for any misconduct." Pl. Mot. at 25.[5] Just as a personnel file need not be produced in its entirety if it contains nonresponsive information, responsive information cannot be withheld merely because it is contained within a personnel file. See Waters v. Capitol Police Bd., 216 F.R.D. 153, 164 (D.D.C. 2003) (plaintiff was not entitled to discovery of employees' entire personnel file and the court limited discovery to information in the files about prior bad acts indicating discriminatory intent). The Bank shall produce all responsive information regardless of whether it is part of a personnel file.

### B. **Depositions**

---

[5] Personnel files need not be produced in their entirety; instead, only responsive information within those files must be produced. See Byrd v. Reno, No. 96-CV-2375, 1998 WL 429676, at *15 (D.D.C. Feb. 12, 1998) (allowing limited discovery of personnel files based on relevance). See also Doc. Req. No. 21; Def. Opp. at 12.

Ms. Nuskey asks this Court to compel the depositions of April Foley, the former Vice Chair of the Bank and current Ambassador to Hungary, and Linda Conlin, the former Director and current Vice Chair of the Bank (together, the "Officials"). Ms. Nuskey argues that Ms. Conlin and Ambassador Foley "have relevant personal knowledge regarding the claims and issues in [her] EEO complaint." Pl. Mot. at 14. The Bank has objected on the basis that the Officials lack relevant knowledge, and because they are high-ranking government officials. Def. Opp. at 3-4.

The Court need not address the merits of this dispute because it is clear that Ms. Nuskey has not fulfilled the procedural requirements necessary to obtain the relief she seeks. Ms. Conlin, as a high-level employee[6] of the Bank, can not be compelled to testify at a deposition until she fails to appear after being served a "reasonable written notice . . . stat[ing] the time and place of the deposition." Fed. R. Civ. P. 30(b)(1). Ms. Nuskey did not serve such a notice;[7] as a result, her Motion will be denied as premature as it relates to Ms. Conlin.

Ambassador Finley is no longer employed by the Bank and, as a nonparty, can only be compelled to attend a deposition if served with a subpoena pursuant to Rule 45. See Fed. R. Civ. P. 30(a)(1); Seattle Times Co. v. Rhinehart, 467 U.S. 20, 30 n.16 (1984) ("Under Rules 30 and 31, a litigant may depose a third party by oral or written

---

[6] See Wright and Miller, 8A Fed. Prac. And Proc. Civ. 2d § 2103 (2008) ("[T]he corporation is responsible for producing its officers, managing agents, and directors if notice is given; a subpoena for their attendance is unnecessary, and sanctions may be imposed against the corporation if they fail to appear.").

[7] Ms. Nuskey attaches to her Motion a letter sent by her counsel to counsel for the Bank; this letter states that she "plan[s] to take a number of depositions," lists ten names (including the Officials), and requests three dates of availability for each witness. Pl. Mot. at [#28-5]. See Williams v. Johanns, No. 03-cv-2245, 2007 WL 1723662, at *3 (D.D.C. June 14, 2007) ("[I]t cannot be seriously argued that one lawyer telling another that he intends to take a deposition is 'service of a notice' of that deposition.").

examination. The litigant can compel the third party to be deposed and to produce tangible evidence at the deposition by serving the third party with a subpoena pursuant to Rule 45."); <u>Westmoreland v. CBS, Inc.</u>, 770 F.2d 1168, 1175 (D.C. Cir. 1985) ("To compel a [nonparty] witness to attend a deposition under Rule 30(a), a party must obtain a subpoena under Rule 45(d)."). Ms. Nuskey did not serve such a subpoena; as a result, her Motion will be denied as premature as it relates to Ambassador Foley.

## IV. <u>Conclusion</u>

For the reasons state above, both motions will be granted in part and denied in part.

Dated: June 10, 2008                             /S/
                                                JOHN M. FACCIOLA
                                                UNITED STATES MAGISTRATE JUDGE