UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
SHARON L. NUSKEY,                           )
                                            )
          Plaintiff,                        )
                                            )
     v.                                     )     Civil Action No. 06-1573 (PLF)
                                            )
                                            )
FRED P. HOCHBERG,                           )
  *Chairman, Export-Import Bank*            )
  *of the United States*,                   )
                                            )
          Defendant.[1]                     )
_____ )

OPINION

  This employment discrimination case is before the Court on defendant's motion

for summary judgment and plaintiff's motion to strike.  After careful consideration of the parties'

papers, the attached exhibits, the relevant statutes and the case law, the Court will grant

defendant's motion in part and deny it in part, and the Court will deny plaintiff's motion as

moot.[2]

_____

  [1]  The Court has substituted as defendant the current Chairman of the Export-Import Bank of the United States, Fred P. Hochberg, in the place of the former Chairman, James H. Lambright, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

  [2]  The following papers are relevant to these motions: the Complaint ("Compl."); Defendant's Motion for Summary Judgment ("Mot."); Defendant's Errata re Motion for Summary Judgment ("Errata Mot."); Plaintiff's Memorandum in Support of her Opposition to Defendant's Motion for Summary Judgment ("Opp."); Defendant's Reply in Support of Motion for Summary Judgment ("Rep."); Plaintiff's: (1) Motion to Strike Defendant's Timeliness Argument and Proffered Evidence in its Corrected/"Errata" Motion for Summary Judgment; and (2) Motion for Rule 37(c) Sanctions; Defendant's Opposition to Plaintiff's Motion to Strike and for Sanctions ("Opp. to Mot. to Strike"); Plaintiff's Reply to Defendant's Opposition to her Motion to Strike and for Rule 37(c) Sanctions.

I. BACKGROUND

Plaintiff Sharon L. Nuskey brought this action against her former employer, the Export-Import Bank of the United States, for age and sex discrimination and reprisal for engaging in protected activity. The Bank is the United States government's official export credit agency — it assists in financing the export of domestic goods and services to create jobs in the United States. See Mot., Memorandum in Support ("Def. Mem.") at 2.

The Bank hired plaintiff on August 9, 2004 as a GS-1101-11 junior Business Development Specialist ("BDS") in the International Business Development ("IBD") Division. See Mot. at 3. She chose to work in the Southeastern and Central Europe region ("SECE"). See Mot., Ex. 1, Deposition of Sharon Lynn Nuskey at 12. At the same time, the Bank also hired three younger men as junior BDSs to work in various regions. See Def. Mem. at 3. The junior BDSs, including plaintiff, were all supervised by different Regional Directors, and all of the Regional Directors reported to IBD Vice President C. Michael Forgione. See Def. Mem. at 3, Ex. 21 at 1. All four junior BDSs were hired as probationary employees for their first year. See Def. Mem. at 3; Ex. 8, Affidavit of Sharon Nuskey ("Nuskey Aff.") at 1. Plaintiff was originally supervised by Margaret Kostic. See Nuskey Dep. at 14. In February 2005, a realignment occurred and Craig O'Connor became the Regional Director for SECE and plaintiff's immediate supervisor. See Def. Mem. at 4, Nuskey Aff. at 1.

The events that immediately preceded plaintiff's termination began on May 10, 2005, when plaintiff requested permission from Mr. Forgione to travel to Germany for work. See Def. Mem. at 29, Ex. 26. Mr. Forgione responded that he did not think that the proposed trip would benefit IBD or the Bank. See id. On May 11, 2005, plaintiff complained to him that

2

while under Mr. O'Connor's supervision she was not being given the same work opportunities as her male colleagues, including international travel and invitations to meetings.  See Def. Mem. at 30, Ex. 9, Affidavit of Cosimo M. Forgione ("Forgione Aff.") ¶ 7.

Mr. Forgione and Mr. O'Connor had a meeting with plaintiff the following day to discuss the issue.  See Opp., Ex. 58, Deposition of Sharon Lynn Nuskey ("Nuskey Dep.") at 120-21.  At that meeting, plaintiff requested that she be allowed to travel to Serbia shortly after the Germany trip to attend a conference.  See Mot., Ex. 1, Deposition of Sharon Lynn Nuskey at 97, 103.  Although Serbia and Germany were both outside IBD's strategic business plan, Mr. Forgione and his supervisor, John Emens, granted permission to plaintiff to make these trips.  See Forgione Aff. ¶¶ 16-17.  Mr. Forgione states that he only did so because he was under the impression that the events plaintiff was attending in Germany and in Serbia were within a day of each other.  See id. at ¶ 17.

Mr. Forgione then realized that there were four days between the trips, days which plaintiff sought to take as paid leave.  See Forgione Aff. ¶ 17.  He states that he came to the conclusion that plaintiff's repeated requests to travel to non-target countries in a region of little strategic importance to the Bank, and what he saw as her excessive effort in organizing a trip of little value, indicated that plaintiff was not a good fit for the Bank.  See Def. Mem., Ex. 2, Deposition of Cosimo Michael Forgione ("Forgione Dep.") at 23, 24, 182.  Mr. Forgione sought advice from the Bank's Human Resources office and learned that because plaintiff was a probationary employee, he had wide latitude to terminate her employment.  See id. at 24.

On May 17, 2005, plaintiff contacted the Bank's EEO Director Patrease Jones-Brown regarding her concerns that she was being treated differently from her male probationary

3

colleagues, particularly with regard to travel.  See Mot., Defendant's Statement of Material Facts

Not in Genuine Dispute ("Def. Facts") ¶ 20; Opp., Plaintiff's Statement of Genuine Issues of

Material Fact ("Pl. Facts") ¶ 20.  On May 18, 2005, Ms. Jones-Brown contacted Jonathan

McMullen, then Chief of the Bank's Office of Administrative Services, and inquired about

whether plaintiff needed to use annual leave during the gap between the proposed Germany and

Serbia trips.  See Pl. Facts ¶ 20a.  Mr. McMullen called Mr. Forgione the same day to state that

plaintiff did not need to take annual leave for the four day gap.  See id.; Forgione Aff. ¶ 17.

Mr. Forgione, Mr. O'Connor and plaintiff all met on May 19, 2005 to attempt to

resolve the issue.  See Pl. Facts ¶ 21.  This meeting ended badly — with Mr. Forgione allegedly

remarking to plaintiff that she "seemed to think that [she] was much better educated and older

than [her] three male colleagues," but that they were all hired at the same level.  Mot., Ex. 8,

Affidavit of Sharon Nuskey at 3.  Mr. Forgione then terminated the meeting and said that he was

going to the Human Resources office.  See Pl. Facts ¶ 21.  Shortly thereafter, plaintiff returned to

the Bank's EEO Office to discuss the events with the Bank's EEO Director, Ms. Jones-Brown.

See Pl. Facts ¶ 21b.

On the afternoon of the same day, May 19, 2005, plaintiff met with Mr. Emens,

who was Mr. Forgione's immediate supervisor, and explained that Ms. Jones-Brown had

suggested that plaintiff meet with him to discuss the events.  See Pl. Facts ¶ 21b.[3]  Later that day,

Mr. Forgione met with Mr. Emens to discuss Mr. Forgione's decision to terminate plaintiff, a

---

[3]     Although Mr. Emens states that he does not recall plaintiff stating that she had met with Ms. Jones-Brown, he agrees that it is possible that she made such a statement.  See Opp., Deposition of John A. Emens at 96.  In any event, to the extent this is a disputed fact, it must be resolved in plaintiff's favor at this point.

decision with which Mr. Emens concurred.  <u>See</u> Pl. Facts ¶ 21c; Opp., Ex. 27.  On the evening of

May 19, 2005, plaintiff formally initiated EEO counseling with Ms. Jones-Brown.  <u>See</u> Pl. Facts

¶ 21d.  On May 20, 2005, the Bank terminated plaintiff, effective immediately.  <u>See</u> Def. Facts

¶ 22; Pl. Facts ¶ 22.

   After exhausting her administrative remedies before the EEOC, plaintiff filed suit

in this Court on September 8, 2006, alleging discrimination on the basis of her sex (female) and

age (then 45), and reprisal.  On May 30, 2007, the Court denied defendant's pre-discovery

motion for summary judgment, finding that defendant had not submitted competent evidence in

support of its timeliness defense.  <u>See</u> Memorandum Opinion and Order ("Timeliness Opinion"),

Dkt. 13 (D.D.C. 2007).  The parties engaged in discovery, and the matter is now ripe for

summary adjudication.

## II.  LEGAL STANDARDS

### A.  Summary Judgement

   Summary judgment may be granted if "the pleadings, the discovery and disclosure

materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986); <u>Holcomb v.</u>

<u>Powell</u>, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect

the outcome of a suit under the governing law; factual disputes that are 'irrelevant or

unnecessary' do not affect the summary judgment determination."  <u>Holcomb v. Powell</u>, 433 F.3d

at 895 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248).

An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.  When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence."  Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  She is required to provide evidence that would permit a reasonable jury to find in her favor.  Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  To defeat a motion for summary judgment, a plaintiff must have

6

more than "a scintilla of evidence to support [her] claims." Freedman v. MCI

Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

### B.  The Governing Law

Plaintiff brings suit under Title VII and the ADEA.  Title VII provides, in

pertinent part, that "[a]ll personnel actions affecting employees or applicants for employment . . .

in executive agencies . . . shall be made free from any discrimination based on race, color,

religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  Title VII also prohibits federal

agencies from retaliating against employees for asserting their rights.  See Holcomb v. Powell,

433 F.3d at 901.  The relevant part of the ADEA provides, in language parallel with Title VII,

that "[a]ll personnel actions affecting employees or applicants for employment who are at least

40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on

age."  29 U.S.C. § 633a(a).  As with Title VII, the ADEA prohibits federal agencies from

retaliating against employees for engaging in protected activity.  See Forman v. Small, 271 F.3d

285, 298-99 (D.C. Cir. 2001)

For both Title VII and the ADEA, when a plaintiff offers no direct evidence of

discrimination (or retaliation), her claims must be analyzed under the burden-shifting framework

of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Barnette v. Chertoff, 453 F.3d

513, 515 (D.C. Cir. 2006) (applying McDonnell Douglas framework to ADEA claim). Under that

framework, a plaintiff must first establish a *prima facie* case of discrimination or retaliation.

Doing so creates a rebuttable presumption of discrimination or retaliation and "triggers the

employer's burden to produce admissible evidence that, if believed, would establish that the

employer's action was motivated by a legitimate, nondiscriminatory reason." Teneyck v. Omni

Shoreham Hotel, 365 F.3d 1139, 1151 (D.C. Cir. 2004). If the employer meets this burden, then

all presumptions drop away and the Court must decide "whether intentional discrimination may

be inferred from all the evidence," including any evidence that the employer's asserted reason is

pretextual. Id.

As the D.C. Circuit has explained, however, "the district court need not — *and*

*should not* — decide whether the plaintiff actually made out a prima facie case under McDonnell

Douglas" at the summary judgment stage if (1) the plaintiff has suffered an adverse employment

action, and (2) the defendant has asserted a non-discriminatory reason for its behavior. Brady v.

Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original).

Rather, in those circumstances,

> the district court must resolve one central question: Has the
> employee produced sufficient evidence for a reasonable jury to find
> that the employer's asserted non-discriminatory reason was not the
> actual reason and that the employer intentionally discriminated
> against the employee on the basis of [sex or age]?

Id.  See also Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (applying Brady

framework to ADEA claim).

### III.  DISCUSSION

#### A.  Discrimination Claims

##### 1.  Alleged Pre-Termination Discrimination

Plaintiff alleges that she was discriminated against while supervised by Mr.

O'Connor because she was excluded from meetings relevant to her work; Mr. O'Connor and Mr.

Forgione failed to inform her about issues that fell within her area of program responsibility; and

her exposure to the Bank Directors was limited.  See Compl. ¶¶ 41-44 (Count One).  Defendant

contends that it should be granted summary judgment on this Count, because plaintiff's

allegations do not constitute adverse employment actions within the meaning of Title VII or the

ADEA.  While Brady directs the district court's focus to the employer's proffered non-

discriminatory reason, the Court still first must determine whether, drawing all reasonable

inferences in plaintiff's favor, plaintiff has proffered evidence that she suffered an adverse

employment action.  See Baloch v. Kempthorne, 550 F.3d at 1196.

      "An 'adverse employment action' [under Title VII] is 'a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing significant change in benefits.'"  Douglas v.

Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (citing Taylor v. Small, 350 F.3d 1286, 1293 (D.C.

Cir. 2003)).  To show that she suffered from an adverse employment action, "[a]n employee must

[have] 'experience[d] materially adverse consequences affecting the terms, conditions, or

privileges of employment or future employment opportunities such that a reasonable trier of fact

could find objectively tangible harm.'"  Id. (quoting Forkkio v. Powell, 306 F.3d 1127, 1131

(D.C. Cir. 2006)).  "[N]ot everything that makes an employee unhappy is an actionable adverse

action."  Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001).

      Plaintiff argues that the complained of actions constitute adverse actions under the

law because she was "deprived of opportunities for career advancement; development of

international business contacts; interaction with clients and other prominent members of the

international community; as well as the opportunity to be kept in the loop regarding work in her

region."  See Opp. at 16.  Plaintiff makes these allegations without any explanation of how the

complained of actions had a *tangible*, and not speculative, effect on the terms, conditions and privileges of her employment.  See Douglas v. Donovan, 559 F.3d at 552 ("a tangible employment action in most cases inflicts *direct* economic harm") (citations omitted) (emphasis in original); see also Holcomb v. Powell, 433 F.3d at 902 (to be actionable, alleged injuries must not be "purely subjective").  Because plaintiff has not alleged, much less provided competent evidence to show, that the complained of exclusion from meetings, and limitations on access to information and the Board of Directors had a tangible effect on the terms and conditions of her employment, the Court concludes that these actions were not adverse within the meaning of Title VII.  The Court will grant summary judgment for defendant on Count One.

### 2.  Termination Claim

Plaintiff also alleges that she was discriminated against on the basis of gender and age when defendant terminated her employment on May 20, 2005.  See Compl. ¶ 50 (Count Three).  It goes without saying that being fired from one's job is an adverse employment action; therefore the Court turns to defendant's proffered nondiscriminatory reason.  See Brady v. Office of the Sergeant at Arms, 520 F.3d at 494.

Defendant argues that it fired plaintiff because her second-level supervisor, Mr. Forgione, believed that she was not a good fit for the Bank, in large part based on what he perceived as her push for unjustified work travel.  See Rep. at 1.  Mr. Forgione testified:

> [I]n my opinion . . . Ms. Nuskey was more concerned with her
> personal gain through the EX-IM Bank than for — the good of
> Sharon instead of the good of the EX-IM Bank . . .  Sharon seemed
> to me to be totally focused on taking trips on behalf of the bank to
> overseas destinations. . . .  it was reflected in the amount of time
> she made to make sure that her trip was extended to — for as much
> time and [to as] many countries as possible. . . .  The main thing

> was she kept asking to go to different countries.  Whenever an
> objection would be to, say, Serbia or Croatia, I would tell her, "We
> are not open," or "that is not a target country," or "we are not going
> there," there would be a disagreement, and then [she would
> suggest] another country.

Forgione Dep. at 23, 25-27.  He also explained that after he received the phone call from Mr.

McMullen regarding whether plaintiff had to use vacation days for her proposed travel, he came

to the conclusion that she was

> [s]pending time trying to find out whether or not she has personal
> time coming versus doing the business of the bank. . . .  It's an
> indication of where her mind is.  Mind is, "Do I take vacation?
> . . . .  What can I get out of the EX-IM bank?"  Instead of, "What
> can I give to the EX-IM Bank?

Id. at 28-29.

Because defendant has offered a legitimate nondiscriminatory reason, "the burden

of production shifts back to the plaintiff, 'the McDonnell Douglas framework falls away, and

[the Court] must determine whether a reasonable jury 'could infer discrimination.'"  Royall v.

Nat'l Ass'n of Letter Carriers, 548 F.3d 137, 144 (D.C. Cir. 2008) (quoting Vickers v. Powell,

493 F.3d 186, 195) (D.C. Cir. 2007)).  A plaintiff may meet this burden by showing the

employer's proffered reason is pretext.  See Royall v. Nat'l Ass'n of Letter Carriers, 548 F.3d at

144.  In this case, plaintiff argues that the defendant's proffered reason for her termination is

pretext for a variety of reasons, including alleged statements made by Mr. Forgione referencing

her gender and age.

With regard to her gender discrimination claim, plaintiff relies on multiple alleged

statements by Mr. Forgione that she was a "strong woman" and an "aggressive woman."  See

Opp. at 35; see also Pl. Nuskey Dep. at 109, 117.  Such statements create a genuine question of

11

material fact as to whether Mr. Forgione was motivated, at least in part, by a discriminatory

animus based on gender stereotypes when he terminated plaintiff's employment.  See Hopkins v.

Price Waterhouse, 920 F.2d 967, 969 (D.C. Cir. 1990) (sexual stereotyping is a form of sex

discrimination under Title VII); Schroer v. Billington, 577 F. Supp. 2d 293, 303 (D.D.C. 2008)

("an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she

must not be, has acted on the basis of gender") (quoting Price Waterhouse v. Hopkins, 490 U.S.

228, 251 (1989)).  The Court will deny defendant's motion for summary judgment on plaintiff's

gender discrimination claim with regard to the termination of her employment.

   Plaintiff also argues that Mr. Forgione's statement allegedly made in their meeting

of May 19, 2005 — that "you seem to think that you are much better educated and older than

your three colleagues" — is evidence of his discriminatory animus with regard to plaintiff's age.

Mr. Forgione denies having made this comment, and he also adamantly denies that he knew that

plaintiff was over forty, assertions of fact which plaintiff disputes with competent evidence.  See

Pl. Facts ¶¶ 23c, 25.  Even assuming that Mr. Forgione made the comment and that he knew

plaintiff's age, as the Court must at this point, the Court cannot conclude that this comment alone

would permit a reasonable jury to find that the plaintiff was terminated based upon her age.

First, it is doubtful whether the comment was even meant as derogatory — as Mr. Forgione

grouped "older" with the generally positive "better educated."  Second, it is consistent with his

secondary legitimate explanation for terminating plaintiff — that she felt that she was

overqualified for the job and that this belief affected her work performance.  See Forgione Dep.

at 23.[4]  Finally, plaintiff points to no other statements or evidence of age bias (separable from her

allegations of gender bias) on the part of her supervisors at the Bank.  This alleged statement,

standing alone, does not show defendant's proffered reason to be pretext.

In order to bolster her age discrimination claim, plaintiff also attempts to offer

"evidence of more favorable treatment of similarly situated persons who are not members of the

protected class" in order to prove pretext.  Royall v. Nat'l Ass'n of Letter Carriers, 548 F.3d at

144.  Plaintiff argues that she was treated differently from the three younger men who were hired

as junior BDSs at the same time she was hired.  See Opp. at 23.[5]

To prove that she is similarly situated to the comparator employees, plaintiff must

show that "all of the relevant aspects of [her] employment situation were nearly identical" to

those of the comparators.  Udoh v. Trade Ctr. Mgmt. Assocs., 479 F. Supp. 2d 60, 64 (D.D.C.

2007) (quoting Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999)).  Defendant argues that

the three other probationary employees were not similarly situated because they had different

immediate supervisors and worked on different geographic regions.  Plaintiff points out,

however, that Mr. Forgione, the individual who made the decision to terminate plaintiff, was the

same *second level* supervisor for all of the junior BDSs, which suggests to the Court that the

---

[4]       Furthermore, even if this comment could be viewed as derogatory, in the context
of a supervisor's explanation at a deposition for a single stray negative remark about ethnicity or
age, at most the comment "appears to be an uninformed and insensitive statement rather than an
intentionally discriminatory statement."  Valles-Hall v. Ctr. for Nonprofit Advancement, 481 F.
Supp. 2d 118, 150 (D.D.C. 2007).

[5]       Although plaintiff presents this analysis in support of her *prima facie* case, under
the framework as clarified by Brady, it is more appropriate to consider it as an attempt to prove
that defendant's proffered reason is pretext.  See Brady v. Office of the Sergeant at Arms, 520
F.3d at 495.

difference in immediate supervisors is less relevant to her claim that she was terminated on the basis of age.  The same is true with respect to the fact that the comparators worked in different geographic regions — a fact that may be more relevant to the employees' respective opportunities for travel than to Mr. Forgione's decision to terminate plaintiff.  In sum, plaintiff and the other junior BDSs may have been similarly situated with regard to certain aspects of their employment situations.

Even if the Court treats plaintiff and the junior BDSs as similarly situated in certain respects, however, "the most significant variables in a case alleging discrimination in connection with disciplinary action . . . [are] the nature of the offenses committed and the nature of the punishments imposed."  Childs-Pierce v. Util. Workers Union of Am., 383 F. Supp. 2d 60, 70 (D.D.C. 2005) (citing Moore v. City of Charlotte, 754 F.2d 1100, 1105 (4th Cir. 1985)). Although plaintiff argues that the younger male junior BDS's were far from model employees, the incidents she cites in fact are different in nature and degree from what Mr. Forgione states he perceived as an effort by plaintiff to extract personal travel at the expense of the Bank.  None of the incidents plaintiff raises is akin to an employee attempting to take advantage of the employer's resources and programs for personal gain — the proffered reason for plaintiff's termination — a charge that would be of particular concern to any employer.  The proffered evidence with respect to the comparator employees does not show that plaintiff's age was a contributing factor in her termination.

Plaintiff also attempts to show that defendant's proffered reason for her termination is pretext because of the "hostile" way that she was terminated and Mr. Forgione's subsequent announcement of her termination to the staff.  See Opp. at 18-19.  At most, this

14

evidence suggests that Mr. Forgione was angry with plaintiff, a reasonable likelihood given his recent decision to fire her — but none of this evidence suggests a discriminatory motive for firing her on the basis of her age.

Finally, although plaintiff notes that a younger male was hired after she was terminated, albeit for a different position, she does not provide evidence that the man who actually assumed her former role as a BDS in the SECE region was younger than she was.  See Pl. Facts ¶¶ 30-31.  Even if the Court were to treat the latter hire as evidence that plaintiff was replaced with a younger individual, despite the fact that plaintiff's immediate replacement was not younger, this evidence does not show that defendant's proffered explanation is pretext as to her age.  See Howie v. Office of Eddie Bernice Johnson, 570 F. Supp. 2d 115, 123 (D.D.C. 2008) ("Because younger people often succeed to the jobs of older people for perfectly legitimate reasons, the mere fact that an older employee is replaced by a younger one does not permit an inference that the replacement was motivated by age discrimination.") (citing La Montagne v. Am. Convenience Products, Inc., 750 F.2d 1405 (7th Cir. 1984)).  The Court will grant defendant's motion for summary judgment on plaintiff's age discrimination claim with regard to the termination of her employment.

### B.  Retaliation

Counts Two and Four of plaintiff's complaint charge reprisal or retaliation based on her EEO activity.  In order to prevail on a claim of unlawful retaliation, an employee must show that "she engaged in protected activity, as a consequence of which her employer took a materially adverse action against her."  Taylor v. Solis, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (quotation omitted); see also id. (general ban on retaliation in Section 2000e-3(a) applies to

federal employers through Section 2000e-16).  As described above, the same analytical

framework set forth in Brady for discrimination claims applies to retaliation claims.  See id. at

1320 n.12.

   With regard to whether plaintiff engaged in protected activity, "the Title VII anti-

retaliation provision has two clauses, making it 'an unlawful employment practice for an

employer to discriminate against any of his employees . . . [1] because [s]he has opposed any

practice made an unlawful employment practice by this subchapter, [the "opposition clause"] or

[2] because [s]he has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this subchapter,'" the "participation clause."  See

Crawford v. Metro. Gov't of Nashville & Davidson County, 129 S. Ct. 846, 850 (2009) (quoting

42 U.S.C. § 2000e-3(a)).  Plaintiff accuses defendant of violating both.  She argues that she

engaged in protected activity when she "opposed" defendant's allegedly discriminatory conduct

in the meeting on May 11, 2005 and when she "participated" in EEO counseling on May 19,

2005.  She was terminated on May 20, 2005.

   Defendant challenges plaintiff's claim that she engaged in opposition activity

protected under Title VII on the ground that no reasonable person could have believed that the

incidents she raised in the May 11, 2005 meeting — her failure to be invited to certain meetings,

her failure to be given work assignments comparable to those given to her male colleagues, and

decisions made with respect to her proposed travel — were discriminatory.  See Clark County

Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001).  In the District of Columbia Circuit, an

employee seeking protection of the opposition clause must demonstrate "a good faith, reasonable

belief that the challenged practice violates Title VII."  George v. Leavitt, 407 F.3d 405, 417 (D.C.

16

Cir. 2005).  Thus, an employee will be protected even if the employer's conduct ultimately

proves to be lawful, so long as the employee's opposition is based on a good faith belief that

Title VII was violated.  See Parker v. B & O R.R., 652 F.2d 1012, 1019 (D.C. Cir. 1981).

Here plaintiff alleges that when she met with Mr. Forgione on May 11, 2005, she

told him that she felt she was being treated differently from her male colleagues with regard to

inclusion in meetings and department activities, see Nuskey Dep. at 120-21, 123.  She also told

him that, "I had just taken EEO training that was required online that said if women are being

treated differently with access to information, participation in meetings and so forth, that that's

discriminatory."  See id. at 121.  If plaintiff relied on an EEO training to conclude that Title VII

had been violated, her belief was in good faith and was not unreasonable — even if her

conclusion ultimately proved to be incorrect.  Her statements to Mr. Forgione were not the sort of

"malicious accusations and frivolous claims" that the reasonableness requirement is meant to

protect against.  See Burton v. Batista, 339 F. Supp. 2d 97, 114 (D.D.C. 2004) (quoting Parker v.

B & O R.R., 652 F.2d at 1020); see also Crawford v. Metro. Gov't of Nashville & Davidson

County, 129 S. Ct. at 851 (2009) ("When an employee communicates to her employer a belief

that the employer has engaged in . . . a form of employment discrimination, that communication

'virtually always' constitutes the employee's *opposition* to the activity.") (emphasis in original).

With regard to plaintiff's participation in EEO counseling, defendant argues that

there is no evidence that Mr. Emens or Mr. Forgione knew that plaintiff had approached the

Bank's EEO office at the time they decided to terminate her employment.  In light of plaintiff's

statement that on May 19, 2005, she told Mr. Emens that she had spoken with Ms. Jones-Brown,

and that the same afternoon Mr. Emens met with Mr. Forgione to discuss plaintiff's termination,

and that plaintiff was terminated the following day with Mr. Emens's approval, there is a genuine issue of material fact as to whether Mr. Emens knew that plaintiff had contacted the EEO office at the time she was terminated.  Furthermore, regardless of what other knowledge he had, Mr. Forgione, of course, knew that plaintiff had "opposed" employment practices that she perceived as unlawful by raising them in the meeting with him on May 11, 2005.

Turning next to the question of whether defendant took a "materially adverse" action against plaintiff in response to this protected activity, see Taylor v. Solis, 571 F.3d at 1320, there can be no doubt that the termination of plaintiff's employment was a materially adverse action.  Plaintiff also argues, however, that in the week following her May 11, 2005 meeting with Mr. Forgione, and leading up to her termination on May 20, 2005, she was subjected to an arbitrary limit on the cost of her travel, subsequent denial of her travel plans, and increased hostility from Mr. Forgione.  While, if evaluated in isolation, any of these actions might not be considered "materially adverse," taken as a whole, and considering the fact that they all occurred within the space of a week — a week which culminated in plaintiff being fired — the Court concludes that such actions could dissuade a reasonable worker from pursuing charges of discrimination.  See Hill v. Kempthorne, 577 F. Supp. 2d 58, 67 (D.D.C. 2008) ("the denial of travel opportunities asserted in Count 2, especially in connection with the other two claims . . . could dissuade a reasonable worker from pursuing charges of discrimination.").

While defendant has proffered nonretaliatory explanations for the actions, see Rep. at 13-17, the temporal proximity between plaintiff's protected activity and the alleged retaliation is too close for defendant to escape the inference of a retaliatory motive at the summary judgment stage.  Only nine days elapsed from the date plaintiff first complained of

perceived discrimination to Mr. Forgione until her termination; even more compelling, plaintiff

was fired within twenty-four hours of initiating EEO counseling and of informing Mr. Emens

that she had spoken with Ms. Jones-Brown.  See Cones v. Shalala, 199 F.3d 512, 521 (D.C. Cir.

2000) ("the close temporal proximity of [plaintiff's] discrimination complaints to the [adverse

action] is sufficient to establish a causal connection."); Glenn v. Bair, Civil Action No. 07-2195,

2009 U.S. Dist. LEXIS 69876 at *56 (D.D.C. Aug. 10, 2009) ("Even absent direct evidence,

however, temporal proximity can support an inference of causation if the interval between the

protected activity and the adverse personnel action is 'very close.'") (quoting Clark County Sch.

Dist., 532 U.S. at 271).  The Court will deny defendant's motion for summary judgment on

plaintiff's retaliation claims.

### C.  Hostile Work Environment

Plaintiff alleges that she was subject to harassment on the basis of her sex and age

and as reprisal for engaging in protected activity.  See Compl. ¶¶ 47, 51, 52, 54, 55 (Counts Two

and Four).  Both defendant and plaintiff treat these allegations as a hostile work environment

claim.  To make out a *prima facie* case of hostile work environment, plaintiff must show that the

alleged harassment was based on her membership in a protected class, and that her employer

knew or should have known of the harassment and failed to take any remedial action.  See

Rattigan v. Gonzales, 503 F. Supp. 2d 56, 78 (D.D.C. 2007) (quoting Davis v. Coastal Int'l Sec.

Inc., 275 F. 3d 1119, 1122-23 (D.C. Cir. 2007)).  She must also show that the workplace was

permeated with "discriminatory intimidation, ridicule of such severity or pervasiveness as to alter

the conditions of [her] employment and create an abusive working environment."  Hussain v.

Nicholson, 435 F.3d 359, 366 (D.C. Cir. 2006) (internal quoations omitted); see also Harris v.

19

Forklift Sys. Inc., 510 U.S. 17, 21-22 (1993).  To determine whether the level of hostility in an environment is sufficient to support a claim, a court must look at all the circumstances with the perspective that "not all abusive behavior, even when it is motivated by discriminatory animus, is actionable."  Barbour v. Browner, 181 F.3d 1342, 1347 (D.C. Cir. 1999).  The standard established to show a hostile work environment is designed to be "sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"  Rattigan v. Gonzales, 503 F.Supp 2d at 78 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998)).

In support of her claim, plaintiff relies on the alleged discriminatory statement made by Mr. Forgione that she seemed to think that she was better educated and older than her colleagues and his reference to her as a "strong woman" or "aggressive woman."  See Pl. Nuskey Dep. at 117.  She also relies on allegedly abusive statements, none of which relate to gender or age, made by him leading up to and after her termination, such as calling her a liar and convening a meeting to explain her termination to the other Bank employees in allegedly disparaging terms. While Mr. Forgione's statements may have been offensive to plaintiff, Title VII does not redress "the ordinary tribulations of the workplace, such as sporadic use of abusive language . . .  a few isolated incidents of offensive conduct do not amount to actionable harassment."  Rattigan v. Gonzales, 503 F. Supp. 2d at 80 (quotations omitted).   In addition, there is undisputed evidence that Mr. Forgione also yelled at male Bank employees.  See Rep. at 23.

Finally, plaintiff contends that two other female Bank employees were subjected to Mr. Forgione's "leering" and "frequent, harassing comments" about their wardrobe.  See Pl. Facts ¶¶ 53-54.  She also proffers certain other evidence under seal that the Court has considered in connection with this argument.  See id. ¶ 55.  Plaintiff never states that she had any personal

exposure to this alleged behavior or that it affected her directly.  She does not raise facts to show

that the alleged behavior was sufficiently "severe or pervasive to alter the conditions of the [her]

employment."  Rattigan v. Gonzalez, 503 F. Supp. 2d at 78 (quoting Onacle v. Sundowner

Offshore Services, Inc., 523 U.S. 75, 78 (1998)).  The Court will grant summary judgment for

defendant on plaintiff's hostile work environment claim.


### IV. TIMELINESS AND MOTION TO STRIKE

Defendant again raises the timeliness argument previously considered by the

Court.  See Timeliness Opinion.  This argument relies on defendant's assertion that the Final

Agency Decision ("FAD") was delivered to plaintiff's residence on June 9, 2006.  See Errata

Mot., Defendant's Memorandum in Support of Corrected Motion for Summary Judgment at 38.[6]

Plaintiff filed her complaint on September 8, 2006, which, if the statutory time period is

measured from June 9, 2006, was one day later than the 90 days allotted.[7]  Defendant bases its

assertion as to the date of delivery on a United States Postal Service "Track & Confirm" receipt

in support of this proposition.  See Errata Mot., Corrected Declaration of Stephen G. Swimm

---

[6]     Defendant's Errata re Motion for Summary Judgment changes only its arguments
and exhibits as to the statute of limitations defense.

[7]     As the Court previously stated: "An employment discrimination action against the
federal government may only be filed after the complainant has exhausted administrative
remedies.  Furthermore, under Title VII's time limitations, the complainant must file the civil
action within 90 days of receipt of notice of the final agency action on his or her administrative
complaint.  42 U.S.C. § 2000e-16(c) provides: 'Within 90 days of receipt of notice of final action
taken by a[n] . . . agency . . . an employee or applicant for employment, if aggrieved by the final
disposition of his complaint, or by the failure to take final action on his complaint, may file a
civil action . . . .'  42 U.S.C § 2000e-16(c).  The 90-day time limit is not jurisdictional, but is akin
to an affirmative statute of limitations defense.  See Colbert v. Potter, 471 F.3d 158, 165 (D.C.
Cir. 2006).   Failure to file within the limitations period generally results in a loss of the right to
sue."  Timeliness Opinion at 2.

("Swimm Decl") ¶ 7.  Plaintiff states, however, that she did not receive the FAD until June 12,

2006.  See Opp., Ex. 68, Declaration of Sharon L. Nuskey ("Nuskey Decl.") ¶ 3.  The Court

previously rejected defendant's argument and accepted plaintiff's, concluding:

> Despite defendant's "Track & Confirm" printout, no one at
> plaintiff's residence ever signed and returned the return receipt
> indicating when the certified mail delivery of the FAD was
> received.  See Declaration of Sharon L. Nuskey ¶ 4.  As such,
> defendant does not have evidence — the actual signed certified
> mail receipt — to be able to *prove* when plaintiff received the
> FAD, which is its burden to do.  See Colbert v. Potter, 471 F.3d at
> 165 (requiring appellate record to be supplemented with the
> original signed post office Domestic Return Receipt with both the
> front and back sides of the form showing before affirming grant of
> summary judgment for defendant); see also Woodruff v. Peters,
> 482 F.3d 521, 525 (D.C. Cir. 2007) (defendant's affirmative
> defense of untimely filing fails when defendant fails to submit
> "hard proof" of the date of receipt of notice).

Timeliness Opinion at 3.

Defendant argues that the date of delivery and not the date of receipt should

control.  Even if the Court were to reach that conclusion, however, it would not help the

defendant in this case, because defendant has not provided competent evidence that the FAD was

properly *delivered* on June 9, 2006.  Without a signature on the return receipt card, or any

evidence of where, or with whom, the mail carrier left the package, and in light of plaintiff's

statement that she did not see the package in the mail room when she retrieved her mail on June

11, 2006, see Nuskey Decl. ¶ 2, the Court cannot conclude that the package was properly

delivered such that plaintiff could have discovered it on June 9, 2006.  Nothing in the

supplemental evidence submitted by defendant changes the Court's conclusion in this regard.

In order to bolster its argument that the complaint was untimely, defendant

provides declarations from Stephen G. Swimm, a USPS Customer Service Analyst, and Drew A.

Mitchum, a USPS economist, both of whom describe the USPS Certified Mail service, and state that failure to obtain a signature on the return receipt card does not affect the delivery of a Certified Mail item.  <u>See</u> Swimm Decl. ¶¶ 3-4; Errata Mot., Declaration of Drew A. Mitchum ¶¶ 3-4.  Neither of these individuals states that he ever had any personal knowledge of the date or method of delivery in this case.  Mr. Mitchum also attaches to his declaration a copy of a "delivery letter" from USPS, which indicates the date, but not the location of delivery.  <u>See</u> Errata Mot., Ex. 40 at 5.  This additional information does not change the Court's prior conclusion that in the absence of competent evidence, it will presume that the date of receipt of an EEOC decision or notice is three days after its issuance.  <u>See</u> Timeliness Opinion at 3 (quoting <u>Baldwin County Welcome Center v. Brown</u>, 466 U.S. 147, 148 n.1 (1984) (per curiam) (citing Fed. R. Civ. P. 6(e)); <u>Powell v. Washington Metropolitan Area Transit Authority</u>, 238 F. Supp. 2d 160, 163 n.3 (D.D.C. 2002)).  The Court will not grant judgment for defendant on the ground of timeliness.

In light of this conclusion, plaintiff's motion to strike defendant's timeliness argument and evidence in support is moot as to the request to strike.  In the same motion, plaintiff also moved for sanctions under Rule 37(c) of the Federal Rules of Civil Procedure on the ground that defendant failed to disclose evidence — specifically the existence of Mr. Mitchum as a witness — during discovery.  The primary sanction sought by plaintiff, exclusion of the new timeliness evidence, has been mooted by the Court's conclusion that even with Mr. Mitchum's evidence, defendant does not succeed on its timeliness argument.  Plaintiff also seeks attorneys' fees for the time spent litigating the issue in the current round of briefing under Rule 37(c) of the Federal Rules of Civil Procedure.  In its discretion, the Court will not award

attorneys' fees.  By providing additional evidence this time around, defendant was attempting to

address the Court's conclusion that it had not supported the timeliness argument with adequate

evidence.  Inasmuch as defendant states that it did not know of the existence of Mr. Mitchum

until December 2008, around the same time that it filed its corrected motion for summary

judgment, the Court concludes that defendant acted in good faith by raising the issue again.  See

Opp. to Mot. to Strike at 4-5, 12.  But now it is time for the parties to put this issue behind them

and move forward to the merits of plaintiff's remaining claims.


## V.  CONCLUSION

For the reasons explained above, the Court will grant defendant's motion for

summary judgment as to Count One, and as to her claims under the ADEA and her hostile work

environment claims.  It will deny the motion as to plaintiff's claims of gender discrimination

with regard to the termination of her employment and retaliation.  An Order consistent with this

Opinion will issue this same day.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 25, 2009